UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18 CR 278 |
| v. | ) | |
| | ) | Judge Harry T. Leinenweber |
| ERNESTO GODINEZ | ) | |

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The UNITED STATES OF AMERICA, by its attorney, JOHN. R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the following consolidated motions *in limine*.[1]

## I.   BACKGROUND

The superseding indictment in this case charges defendant with forcibly assaulting an ATF agent with a deadly weapon, as well as using and discharging a firearm during and in relation to a crime of violence.

The government expects that the evidence at trial will show that defendant Ernesto Godinez shot an undercover ATF agent in the head at 3:18 a.m. on May 4, 2018 at 44th St. and Hermitage Ave. in Chicago. The agent was part of a team of law enforcement officers in the neighborhood to covertly replace a tracking device on a car parked on Hermitage Ave. between 43rd and 44th Streets. He and his colleagues were in plain clothes and driving unmarked cars. The victim ATF agent was wearing

---

[1] For ease of reference and to avoid repetition, the government consolidated its motions *in limine* into a single filing that exceeds the 15-page limit in Local Rule 7.1. To the extent the Court or defendant takes issue with length of this filing, the government would respectfully seek leave to exceed the page limit set forth in Rule 7.1.

a hooded sweatshirt with the hood up. There is no evidence that defendant knew the victim was a federal law enforcement agent at the time. Instead, the evidence shows – and the government intends to argue – that defendant mistook the agent and his colleagues for rival gang members when defendant fired five quick shots at them from behind.

There were at least five surveillance cameras that captured parts of the shooting and the surrounding scene. Key locations from the scene are shown below:



There is no footage of defendant actually firing the gun, and to date, law enforcement have not found the gun. But the footage from the five cameras and other evidence shows the following sequence of events:

2

### A.      Defendant Notices the Undercover Agents

At about 3:00 a.m., defendant came out of his house at 4345 S. Wood St. and got into a white Kia SUV. Between about 3:02 a.m. and 3:06 a.m., defendant drove the Kia SUV around his block and adjacent blocks before turning south onto Wood from 44th Street. Those blocks were controlled by the 45th and Wood faction of the Latin Saints street gang. Defendant was a high-ranking member of that Saints faction.

At about 3:08 a.m., defendant texted Friend A that he was at "44Wood," meaning the intersection of 44th and S. Wood, which is the area where defendant was driving the Kia moments earlier. Friend A lived one block south and east of there, on the 4400 block of S. Hermitage – the same block where the undercover agents planned to replace the vehicle tracker.

At about 3:14 a.m., an advance team of law enforcement officers drove north through the intersection of 44th and Wood and then past defendant's house. They were surveilling the area to make sure it was clear of people, so that a second team (the team that included the victim) could replace the vehicle tracker without being noticed. The advance team was driving an unmarked sedan and dressed in street clothes. The advance team continued north on Wood, turned right (east) on 43rd, and then right again (south) down Hermitage – almost squaring defendant's block.

A minute later, at about 3:15 a.m., defendant, having apparently just seen the agents' sedan drive up S. Wood St., ran north on S. Wood St. from his location on the 4400 block. He ran north across 44th Street and into his house at 4345 S. Wood St. A minute later, at about 3:16 a.m., defendant came out of his house and walked north

a few houses before turning right (east) into a gangway. Defendant continued east down the gangway, crossed the alley, and walked into the gangway between the houses at 4332 S. Hermitage Ave. and 4336 S. Hermitage Ave. The gangway was tagged with Latin Saints graffiti, including Saints symbols and slogans. Defendant was wearing black shorts and a gray/black tee-shirt. Saints gang colors are black and baby blue.

### B.    The Shooting

About or just before 3:18 a.m., a different team of four plainclothes agents drove south in an unmarked sedan down the 4300 block of S. Hermitage. This was the team of agents who planned to replace the tracker on the car parked on the 4400 block of S. Hermitage.  Defendant was in the gangway on the team's right as they drove by him down the 4300 block, but the team did not see him. They parked on the south end of the block, about 250 feet south of defendant in the gangway. Three agents – two of whom had their hoods up – got out. The victim agent began walking south, away from defendant's location, down the west crosswalk of S. Hermitage at 44th Street. His hood was up. The other two agents crossed to the east side of S. Hermitage and also began walking south. All three agents had their back turned to defendant and were walking away from defendant's location in the gangway at 4332 S. Hermitage.

At about 3:18 a.m., five shots rang out from the area of the gangway defendant just entered. One bullet struck the victim agent, exited the victim, and came to rest in front of the house at 4416 S. Hermitage Ave., just south of where the victim fell. The two agents on the opposite side of the street immediately turned around, with

one of the agents – a Chicago police officer – seeing muzzle flashes by the west sidewalk on the 4300 block on Hermitage (the same side of the street as the gangway). The officer fired his gun twice towards the muzzle flashes he saw on the 4300 block of Hermitage. Police later found five shell casings at the mouth of the gangway between the houses at 4332 S. Hermitage Ave. and 4336 S. Hermitage Ave., the same gangway defendant walked into minutes before the shooting.

Seconds after the shooting, surveillance video shows that defendant ran back out of the same gangway and back (west) across the alley. That video also shows that defendant was the only person to go in or out of that gangway around the time of the shooting.

After running back west across the alley, defendant ran through the unlocked gangway adjacent to his brother's home at 4333 S. Wood St. and continued on to the east sidewalk of S. Wood St., where he turned left (south) and ran back into his house.

### C. Defendant's Flight from the Scene

A few minute later, at about 3:22 a.m., defendant stepped out of his house and wiped his face with his shirt. He messaged Friend A (who lived a block south of defendant) to pick him up at his house. A minute later, at about 3:23 a.m., Friend A pulled into a driveway next to defendant's house and turned the headlights off. About a minute later, defendant emerged from the gangway by defendant's brother's house (defendant's brother was also a high-ranking member of the 45th and Wood Saints' faction) before getting into the passenger seat of Friend A's car. When defendant got into the car, he was sweating and said, "I feel good," and something like 'fuck that flake' or 'fuck those flakes,' with 'flakes' meaning rival gang members.

Friend A drove defendant out of the neighborhood. As they were driving, defendant used a police scanner application on his phone to listen to scanner traffic. At one point Friend A and defendant stopped at a gas station, where defendant bought a white tee-shirt and put it on over the black tee shirt he was wearing at the time of the shooting. He also took off the black baseball hat he was wearing.

More than an hour and a half later, around 5:00 a.m., defendant asked to be dropped off at Honore Ave just south of 43rd, which was more than a block away from defendant's house. He got out of the car wearing the white tee-shirt. Law enforcement could not locate defendant until several days later when he agreed to surrender at a police station.

## II. MOTION TO ADMIT EVIDENCE OF DEFENDANT'S MEMBERSHIP IN THE LATIN SAINTS AND SAINTS' RULES REGARDING PROTECTING SAINTS TERRITORY

The government expects that identity and motive will be the main disputed issues at trial. Defendant is likely to argue that someone else shot the agent, or that at a minimum, the evidence does not prove beyond a reasonable doubt that he was the shooter. In support, defendant will likely point to the fact that no gun was recovered, the videos do not show the shooting itself, and the neighborhood was prone to shootings (hence the agents' presence in the neighborhood in the first place). Defendant also will likely argue that he had no motive. He may argue that he was awake at the time of the shooing to drive a friend to the airport for an early flight, and that defendant had never met the victim before, much less knew that plainclothes federal agents would be conducting an operation near his house.

The government submits that defendant shot at the agents because he mistook them for rival gang members trespassing in the heart of the territory of the Latin Saints. Defendant had been patrolling Saints' territory in the white Kia when he spotted what looked to him like rival gang members driving up and down his block at three in the morning. So defendant ran to his house to get a gun and then stationed himself in a nearby gangway. Not just any gangway, but one used by the Saints as a lookout. Moments later, at the mouth of that gangway, defendant ambushed a second team of plainclothes agents from behind.

The government thus seeks to admit evidence of defendant's membership in the Saints, as well as evidence of gang rules requiring members tasked with standing guard over Saints' territory to chase and shoot at rivals, and to have ready access to a firearm. This evidence is therefore admissible as direct evidence of the charged crimes, or alternatively, as "other act" evidence under Rule 404(b) and the Seventh Circuit's opinion in *Gomez*.

This gang evidence is highly probative of identity, motive, and intent – the key issues at trial. Gang evidence is no doubt prejudicial to some degree and should be treated cautiously by the Court. But here its probative value greatly outweighs any prejudice. It explains why defendant was circling the blocks around his house at 3:00 a.m., why he ran into his house and then right back out after seeing strangers circling his block, and why he ran from there into a gangway with Saints graffiti. More importantly, it explains why defendant fired five shots down the block at a group of

young men in hoodies with their backs turned, and why minutes later, a sweaty defendant told Friend A 'Fuck that flake.'

### A.     The Expected Trial Testimony

The government expects Friend A, who has known defendant for several years, to testify that defendant was a member of the Saints and that the Saints were the main gang in Friend A's neighborhood (Friend A lived a half block from where the shooting happened).

The government also expects to call a current Saints member ("Member A") who lives in Saints territory and has known many Saints members, including defendant, since childhood. Member A is expected to testify that the Saints control the blocks where the shooting and related events took place, and that defendant – along with one of his surviving brothers – was a "chief" of the 45th and Wood faction of the Saints. Member A will also testify that Saints operate according to several rules, one of which is that members are required to protect their territory from rival gang members, including chasing and shooting at rival gang members, by standing "post" for five or six hour shifts. While on post, the member must have ready access to a firearm.

Member A or Friend A may also testify that one of defendant's brothers, also a Saints member, was shot and killed near defendant's house in late 2017, and that defendant and others believed a rival gang was responsible for the murder.

### B.     The Evidence Is Admissible as Direct Evidence

Relevant evidence is admissible. Fed. R. Evid. 402. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. In other words, evidence must be probative and "material" to be relevant. *See United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (*en banc*).

Moreover, as the Seventh Circuit has made clear, direct evidence – evidence directly pertaining to the defendant's participation in the charged offense – does not fall within the Rule 404(b) prohibition on propensity evidence. *See, e.g.*, *Gomez*, 763 F.3d 845 (explaining that Rule 404(b) does not prohibit the introduction of evidence directly pertaining to the defendant's participation in a charged conspiracy); *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009) ("Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged.") (internal quotation omitted). Like all evidence, direct evidence is still subject to Rule 403. *United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011).

Here, the proffered gang evidence here is direct and highly relevant evidence of the forcible assault with a deadly weapon charged in the indictment. It is admissible under Rule 401 because it make facts of consequence – namely, defendant's identity as the shooter, his intent to forcibly assault the victim, and his motive to do so – much more probable. Defendant was patrolling Saints territory when he spotted possible rivals cruising up and down his block. He stalked and then attacked them from a gangway covered in Saints graffiti. He did so to protect Saints territory and carry out his duties as a Saints member on "post." Defendant was especially vigilant on post because it was only six months earlier that rival gang

members had come into Saints territory and gunned down his brother. The proffered evidence shows why it was that defendant did all those things, in other words, his intent, plan, and motive at the time of the charged crimes. The evidence likewise makes it much more probable that defendant was the shooter as opposed to someone who just happened to be nearby when the shooting happened at 3:18 a.m. In short, the gang evidence supplies the context for the entire crime.

That still leaves rule 403. To be sure, most gang evidence is inherently prejudicial to some degree. The Seventh Circuit has noted the "powerful nature of gang related evidence," and cautioned that "[e]vidence of gang involvement must be considered carefully to avoid undue prejudice." *United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004) (upholding admission of evidence of gang evidence to prove motive where defendant confessed to possessing the gun, admitted his gang membership, and stated he needed the gun for protection from rival gang members). But "the risk of prejudice associated with gang evidence does not render it automatically inadmissible." *United States v. Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011).

The Seventh Circuit has likewise made clear that "under appropriate circumstances, gang evidence has probative value warranting its admission over claims of prejudice." *Id.* (citing *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996); *United States v. Sargent*, 98 F.3d 325, 328-29 (7th Cir. 1996); *United States v. Lloyd*, 71 F.3d 1256, 1265-66 (7th Cir. 1995); *United States v. Butler*, 71 F.3d 243, 251 n.6

10

(7th 1995)).[2] This case presents such appropriate circumstances, and the admission of the proffered gang evidence does not result in *unfair* prejudice, which is the standard set by Rule 403.

Evidence of gang affiliation is admissible if, as here, it tends to prove an issue in contention. *See United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996); *United States v. Butler*, 71 F.3d 243, 251-52 (7th Cir. 1995). Indeed, the Seventh Circuit has noted that "gang membership can be key to establishing criminal intent . . . ." *Sargent*, 98 F.3d at 328 (gang evidence properly admitted to rebut defendant's claim of coercion and to explain defendant's illegal behavior). Thus, the Seventh Circuit has upheld the admission of gang evidence to establish motive, *see United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004), to prove the existence of a conspiracy, *see United States v. King*, 627 F.3d 641, 649 (7th Cir. 2010), and to explain a witness's fear of retaliation, *see United States ex rel. Garcia v. Lane*, 698 F.2d 900 (7th Cir.1983).

In sum, the proffered gang evidence is highly relevant, direct evidence of the charged assault with a deadly weapon. And its admission does not create an unfair

---

[2] *See also United States v. Butler*, 71 F.3d 243, 251 (7th Cir. 1995 ) (gang evidence properly admitted in felon in possession case because "[a]lthough [defendant] is correct in arguing that the government does not have to prove why he possessed the gun, the fact that they can explain his possession does make it more likely that he actually did possess it and knowingly possessed it, [and] . . . the evidence was not irrelevant, but was probative of the elements of the crime he was charged with."); *United States v. Thomas*, 86 F.3d 647, 652-53 (7th Cir. 1996) (gang evidence properly admitted to prove the existence of a drug conspiracy); *United States v. Rodriguez*, 925 F.2d 1049, 1053-54 (7th Cir. 1990) (gang evidence properly admitted in postal robbery case to prove defendant's motive for committing the crime charged); and *United States v. Lewis*, 910 F.2d 1367, 1372-74 (7th Cir. 1990) (gang evidence properly admitted in felon in possession case to prove a joint venture between two co-defendants and constructive possession of a firearm located in a vehicle).

risk of prejudice under Rule 403, much less a risk that substantially outweighs its very high probative value. The proffered gang evidence explains virtually all of defendant's actions before, during, and after the shooting. Without it, the jury will be left to wonder why, among other things, defendant would stalk a group of strangers in the predawn hours and shoot at them from behind as they were walking away from defendant's block. With it, and subject to what the government expects to be vigorous cross examination by defendant, the jury will be in the best positon to understand whether defendant committed the crimes with which he's charged.

Finally, the proffered gang evidence is not so-called "other act" evidence under Rule 404(b). First, the government is not seeking to introduce evidence of defendant's "other acts," that is, acts beyond those he did on the day of the crime or its immediate aftermath. The lone exception is defendant's affiliation with the Saints, which as explained above, is direct evidence of that crime and therefore outside the purview of Rule 404(b).

### C. Alternatively, the Proffered Evidence Is Admissible under Rule 404(b)

Even if the Court finds that the proffered gang evidence is so-called "other-act" evidence governed by Rule 404(b), it is still admissible under the Seventh Circuit's Rule 404(b) test, as articulated in *United States v. Gomez.* 763 F.3d at 856.[3] The evidence is highly probative of identity, intent, and motive – all permissible Rule

---

[3] In *Gomez*, the Seventh Circuit did away with the four-part test the Court had historically used for evaluating the admissibility of other-act evidence, crafting instead a "more straightforward rules-based approach." 763 F.3d at 860 ("Our four-part test … has ceased to be useful.").

404(b) uses – without relying solely on the forbidden "propensity" inference, namely, that defendant must have committed the crime because of his propensity to affiliate with a street gang.

Rule 404(b) prohibits the use of other-act evidence as "proof of a person's propensity to commit the charged offense, but allows such evidence for other purposes, including (but not limited to) motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *United States v. Lee*, 724 F.3d 968, 975 (7th Cir. 2013) (citing Fed. R. Evid. 404(b)). "Rule 404(b) is not just concerned with the ultimate conclusion, but also with the chain of reasoning that supports the non-propensity purpose for admitting the evidence." *Gomez*, 763 F.3d at 856 (citing *United States v. Reed*, 744 F.3d 519, 524-25 (7th Cir. 2014)). "In other words, the rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." *Gomez*, 763 F.3d at 856. However, other-act evidence need not be excluded whenever a propensity inference may be drawn. *Id*.

Accordingly, under *Gomez*, the "district court should not just ask whether the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose – or more specifically, how the evidence is relevant without relying on a propensity inference." *Id*. Even if the proponent can "make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk

13

is too great." *Id.* at 860. "The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Id.*

Put another way, "[t]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (quoting *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008) (pre-*Gomez* cases). Moreover, the risk of prejudice can be ameliorated by instructions to the jury, if the defendant so requests, including a specific instruction that the jury "must not use the 404(b) evidence to infer that the defendant has a certain character and acted 'in character' in the present case because it does not follow from the defendant's past acts that he committed the particular crime charged in the case." *Id.* at 861.

Here, the proffered gang evidence is highly probative on the key disputed elements. There will likely be little dispute at trial that a federal agent was assaulted with a deadly weapon. The main issues will be who shot the victim and why, that is, identity, intent, motive. The proffered gang evidence helps answer both questions. The Saints rules about how to stand "post" on the street explain why defendant was circling the block in a Kia wearing all black (on patrol for the Saints), ran to his house (to get a gun), shot at the victim and his colleagues (he took them for rivals trespassing on his watch, and defendant was especially vigilant given the recent murder of his brother in the area just months earlier), and said 'fuck that flake' right

14

after the shooting (he thought he had shot at rival gang members). These inferences persuasively tie defendant to the crime and establish his identity as the shooter. More importantly, they do so without relying solely on the forbidden propensity evidence – that defendant must have committed the crime because of his propensity to affiliate with street gangs.

Furthermore, the fact that the proffered gang evidence may give rise to a propensity inference does not mean it must be excluded. As the Seventh Circuit made clear in *Gomez*, other-act evidence need not "be excluded whenever a propensity inference may be drawn; rather; Rule 404(b) excludes the evidence if its relevance to [identity, motive, or intent] is established only through the forbidden propensity inference." *Id.*

Finally, as explained in the previous section, Rule 403 does not bar the proffered gang evidence because the risk of prejudice does not substantially outweigh the evidence's high probative value. In addition, because identity and motive will be the key disputed issues at trial, *Gomez* counsels that the Court, when assessing the other-act evidence, should put a finger on the admissibility side of the scale for purposes of Rule 403 balancing. *See id.* ("Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case."). Plus, the risk of prejudice here is lower than in other Rule 404(b) scenarios because the proffered other-act evidence does not involve acts or conduct similar to the type of crime defendant's charged with, *i.e.*, evidence that he

previously shot at someone or used a firearm. The propensity risk is those types of scenarios is plainly much higher..

A limiting instruction could further ameliorate the risk of prejudice. As the Seventh Circuit explained in *Gomez*, defendant can ask for a jury instruction that may serve to "reduce the risk of unfair prejudice inherent in other-act evidence." 763 F. 3d at 860.[4] The instruction should be "customized to the case rather than boilerplate" and should tell the jury "in plain language the specific purpose for which the [other-act] evidence is offered and that they should not draw any conclusions about the defendant's character or infer that on a particular occasion the defendant acted in accordance with a character trait." *Id.*

## III. MOTION TO ADMIT EVIDENCE OF DEFENDANT'S FLIGHT AND CONCEALMENT

Despite a citywide manhunt and a warrant for his arrest, defendant evaded capture for several days following the shooting. He did so by, among things, ceasing the use of one of his cell phones, switching clothes, switching vehicles, hiding out at a friend's on Chicago's north side, and hiding his white Kia in the friend's garage. The government seeks to admit evidence of defendant's flight and related acts of concealment to show both his consciousness of guilt and guilt itself.

The government expects to elicit flight and concealment evidence at trial, including evidence from the day of the shooting that defendant:

- Drove with Friend A out of the neighborhood minutes after the shooting.

---

[4] As the Court noted in *Gomez*, defendants often do not ask for such an instruction on the theory that it draws more attention to the other-act evidence. *Id.* at 859.

- Used a police scanner application to monitor the response to the shooting as he and Friend A drove around.
- Stopped at a gas station with Friend A, bought a white tee-shirt, and put it on over the black tee-shirt he was wearing during the shooting.
- Took off the black baseball hat he was wearing during the shooting.
- Had Friend A drop him off around 5 a.m. more than a block away from his house and the shooting scene, still wearing the white tee-shirt.
- Driving the Kia several hours later, arranged to drop Friend A off at a parking lot a mile away from the shooting scene, even though Friend A's car was just a few blocks away from the shooting scene.
- Drove the white Kia to an associate's house on the north side and parked it in the associate's garage, where it was found days later.
- Returned to the neighborhood in a different vehicle to pick up his girlfriend, telling her that the 'hood was hot' and that he didn't want to be seen driving around.
- Returned with his girlfriend to the associate's north side house, telling her 'I'm sorry' after she saw a wanted posted for defendant on social media, and then fleeing the associate's house.
- Switched off and/or stopped using at least one of his cell phones.

It is well established that "[e]vidence of flight and concealment may be admissible to show consciousness of guilt, as well as guilt itself." *United States v. Skoczen*, 405 F.3d 537, 548 (7th Cir. 2005). The admissibility of flight evidence depends on:

the degree of confidence with which four inferences can be drawn: (1) from behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*United States v. Vasquez*, 635 F.3d 889, 902-903 (7th Cir. 2011) (quotation omitted). "Where a defendant flees in the immediate aftermath of a crime or shortly after he is accused of committing the crime, the inference that he is fleeing to escape capture and prosecution is strong." *United States v. Russell*, 662 F.3d 831, 850 (7th Cir. 2011); *see also United States v. Solomon*, 688 F.2d 1171, 1177 (7th Cir. 1982)

17

(stating that "courts place great weight on the proximity in time between the crime charged and the defendant's flight."). Additionally, a defendant may not flee immediately when they become aware they are under investigation, but may wait until "developments [that] may signal that things are about to change, and in conveying that message give the defendant greater reason to flee than [s]he had earlier." *Russell,* 662 F.2d at 852.

Here, the proffered flight and concealment evidence creates two strong inferences: that defendant shot the ATF agent and then tried to avoid capture for that crime. Why else would defendant flee the neighborhood minutes after the shooting, listen to the scanner, and then take several steps to change his appearance? Defendant, through calls and reports from friends and family, soon understood that law enforcement had likely connected him to the shooting. His responded by hiding his white Kia, avoiding the scene of the shooting, holing up at an associate's on the other side of the city, switching off his cell phone, and then apologizing to his crying girlfriend before fleeing the associate's house. Taken as a whole, this is persuasive evidence that defendant knew that he had shot the ATF agent.

## IV. MOTION TO IMPEACH DEFENDANT WITH PRIOR FELONY CONVICTIONS SHOULD HE TESTIFY

Defendant has two felony convictions for which he was released from prison in the last 10 years:

- Defendant was sentenced on or about March 5, 2015, to 4 years' imprisonment as a result of his conviction in the Circuit Court of Cook County (Case No. 11 CR 10719) for aggravated discharge of a firearm into an occupied vehicle.

- Defendant was sentenced on or about March 5, 2015, to 1 year' imprisonment as a result of his conviction in the Circuit Court of Cook County (Case No. 12 CR 07628) for aggravated unlawful use of a weapon.

The government seeks to use these convictions to impeach defendant should he testify at trial. The probative value of defendant's prior convictions outweighs any possible prejudicial effect to the defendant. Defendant's credibility will be a critical issue at trial should he testify. For example, he may deny that he was the individual in the gangway, claim someone else was the shooter, or deny making inculpatory statements to Friend A. Given the importance of defendant's credibility to the jury's assessment of the evidence, the probative value of the two convictions outweighs any prejudice. As such, evidence of each conviction "must be admitted" under Rule 609(a)(1)(B).

## A. Legal Standard

The Federal Rules of Evidence generally bar the use of extrinsic evidence to attack a witness's character for truthfulness. Rule 609(a) carves out one exception for evidence of certain criminal convictions. Where, as here, the witness is the defendant, evidence of the defendants' past felony convictions must be admitted (1) if the court determines that the probative value of the evidence outweighs its prejudicial effect to the defendant and (2) the conviction is less than 10-years old. The 10-year clock starts at the "witness's release from any physical confinement, or in the absence of confinement, the date of conviction," and it ends upon "the start of the trial at which the witness is testifying." *United States v. Rogers*, 542 F.3d 197, 201 (7th Cir. 2008).

Courts in this circuit use a five-part balancing test to determine whether the probative value of a conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *See, e.g., United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004) (citing *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir. 1976)). These factors are merely a guide to the trial court's exercise of its wide discretion. *Montgomery*, 390 F.3d at 1015; *United States v. Hernandez*, 106 F.3d 737, 739-40 (7th Cir. 1997).

### B. The Probative Value of the Convictions Outweighs the Prejudice to Defendant

The fourth and fifth factors strongly favor admission because defendant's credibility will be the central issue at trial should he testify. The government's main evidence will be circumstantial video evidence and the testimony of Friend A, who initially denied that s/he had picked defendant up right after the shooting. There is no video footage of defendant actually firing or holding the gun, nor has the gun been recovered. If defendant takes the stand and denies that he was the shooter (or even that he was in the gangway where the shell casings were recovered), or denies making the inculpatory statements to Friend A, the trial will essentially be his word against other witnesses and evidence.

The Seventh Circuit has repeatedly affirmed the use of impeachment by prior convictions in firearms cases like this. In doing so, the court focused on the

importance and centrality of the defendant's credibility in such cases. *See, e.g., Montgomery*, 390 F.3d at 1015-16 (finding no abuse of discretion where defendant impeached on prior drug possession convictions, in part because credibility was "crux of the case in light of conflicting testimony about" defendant's post-arrest statements about the gun); *United States v. Gant*, 396 F.3d 906, 909-10 (7th Cir. 2005) (holding that given defendant's theory that he possessed a pipe, not a gun, his credibility was crucial and therefore, impeachment with 8-year-old drug conviction was proper); *United States v. Nurudin*, 8 F.3d 1187, 1192 (7th Cir. 1993) (similar).

The first and second factors likewise favor admission because defendant's convictions have impeachment value, are easily proven via certified court records, and occurred fairly recently. The government recognizes that defendant's prior firearms convictions did not on their face involve a dishonest act or false statement (and if they did, they would be presumptively admissible under Rule 609(a)(2)). But that does not mean they have no impeachment value. Rule 609(a) is premised on the idea that recent felony convictions are relevant to credibility, and the Seventh Circuit has observed that *any* prior felony conviction diminishes a witness's credibility:

> The rationale for . . . allowing a prior crime to be used to undermine testimony is that a person who has committed a serious crime is more likely than a law-abiding person to lie on the stand even if the case in which he is testifying has nothing to do with that crime. The rationale is underinclusive, since many people who have committed a felony have not been caught or if caught have not been convicted, because of the prosecution's heavy burden of proof. Moreover, every judge is aware that many people who do not have a criminal record will lie in a trial when it is to their advantage.

*Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627-28 (7th Cir. 2009).

21

Defendant's two convictions thus have some impeachment value. Each conviction falls within the last 10-year period set forth in Rule 609(b). Indeed, defendant was released from prison on the aggravated discharge case in 2016 and put on parole. While on parole, defendant was convicted of street gang contact while on parole (a misdemeanor) in 2016, and arrested twice for the same offense in 2017. In other words, the two convictions are not remote in time from the trial, and there is nothing about defendant's "subsequent history" after the convictions suggesting that the convictions are no longer relevant to his credibility today. *Mahone*, 537 F.2d at 929; *see also Gant*, 396 F.3d at 909-10 (finding no abuse of discretion where defendant in felon-in-possession case impeached with 8-year-old drug conviction).

The third factor, on the other hand, likely weights against admission because the two prior felonies – particularly the aggravated discharge conviction – involved the use of firearms. The third factor guards against an improper propensity inference, or, as the Seventh Circuit put it succinctly, the inference that "[o]nce a drug dealer always a drug dealer." *United States v. Gomez*, 763 F.3d 845, 862-63 (7th Cir. 2014). There is thus a risk that the evidence of the convictions will suggest to the jury that defendant has a propensity to use firearms.

To mitigate the propensity risk, however, the government would propose limiting the impeachment to the fact that defendant was convicted of two felonies, but not eliciting the name of the offense. The government would further propose a limiting instruction directing the jury to only consider the convictions in deciding the

22

believability of defendant's testimony, and not to consider them as evidence of the charged crime or for any other purpose.

## V.    MOTION TO EXCLUDE ARGUMENT OR EVIDENCE DESIGNED TO ELICIT JURY NULLIFICATION

The government moves to preclude defendant from arguing at trial that the jury should disregard the Court's instructions on the law or presenting evidence or pursuing lines of inquiry designed to invite jury nullification. The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g., United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (quotation omitted); *United States v. Laguna*, 693 F.3d 727, 730-31 (7th Cir. 2012) (district court properly excluded evidence because, among other reasons, it had the potential to invite nullification).

The government cannot anticipate each form of potential jury nullification argument or evidence. The government moves to exclude the potential areas noted below, all of which are irrelevant to the elements of the crime charged, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983) (citation omitted).

### A.    Penalties Faced by the Defendant if Convicted

The Seventh Circuit has made clear that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997),

*overturned on other grounds*, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579, 114 S. Ct. 2419, 2424 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quotation omitted); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000) (same).[5] Mention of the potential penalties faced by defendant – including possible imprisonment or fines – would serve only the improper purpose of inviting the jury to consider the penal consequences of a conviction and, ultimately, nullification.

Here, count two carries a maximum term of life in prison and a mandatory minimum term of 10 years consecutive to any sentence on count one. The government added count two in a superseding indictment returned several months after the shooting. Defendant could conceivably try to argue at trial that the government was somehow trying to penalize defendant for not pleading guilty. The penalties defendant faces and the government's choice of charges are simply irrelevant to the guilt determination. Defendant should be barred from raising either at trial.

---

[5]    Pattern Jury Instruction 4.08 (2012) is consistent with this case law.

24

### B. The Government's Motivations for Investigating and Prosecuting this Case

This victim in this case is a federal law enforcement agent. Defendant could conceivably argue at trial that the government only charged or brought this case because of the victim's status, or that the government somehow felt pressure to charge someone for a crime targeting one of its own agents. The government has no current reason to believe defendant plans to make any such argument, but to the extent he does, such argument should be barred.

Evidence bearing on the government's decision to prosecute is "extraneous and collateral." *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). More specifically, evidence concerning whether and why certain individuals were charged or not charged is irrelevant to the question of defendant's guilt. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (where defendant claimed he did not knowingly participate in drug transaction, "[w]hether or not [co-arrestee] was criminally charged does not make the facts relating to [defendant's] knowledge and participation in the attempted purchase more or less probable") (citing Fed. R. Evid. 401).

In addition, inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. Thus, the government also moves to preclude the defendant from arguing or eliciting evidence regarding the mental states, subjective intentions, or

25

motivations of the investigating officers.[6] It is settled law that such matters are irrelevant to determining the factual guilt or innocence of a defendant. *United States v. Henderson*, 2012 WL 698796, at *1 (N.D. Ill. Mar. 1, 2012) (granting government's motion *in limine* to preclude inquire regarding "[t]he subjective intentions or motivations of the agents involved in this case"); *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant").

For all of these reasons, the Court should preclude evidence or argument concerning the government's charging decisions and motivations for investigating.

## VI. MOTION TO EXCLUDE ARGUMENT OR EVIDENCE OF LAWFULNESS

The government moves to preclude defendant from presenting evidence of, or making reference to, his lawfulness, non-corrupt conduct, and prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with Rule 405(a).[7]

---

[6]     Defendant is of course free to try to impeach the government witnesses by appropriate means, provided that defendant has a good faith basis for questions aimed at impeachment.

[7] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

In an effort to distract the jury from the charges at issue, defendant may seek to admit evidence and testimony that, on prior occasions, he acted in a lawful manner.

"Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012). Similarly, evidence that a defendant committed specific instances of good conduct is not proof that he did not commit the charged offense. Thus, any evidence or argument regarding defendant's alleged good acts or non-corrupt conduct is irrelevant and should be excluded.

## VII. MOTION TO PRECLUDE DEFENSES OF ALIBI OR UNAVAILABILITY AND MENTAL DEFECT

Rules 12.1 and 12.2 of the Federal Rules of Criminal Procedure require that a defendant provide the government with notice of the following defenses: (1) any alibi or similar defense that defendants intend to raise, including any defense asserting the defendants' unavailability on or near the dates named in the indictment (Rule 12.1); and (2) notice of any defense to be raised of a mental defect inconsistent with the state of mind required for the offense charged (Rule 12.2). As a part of the government's discovery production on or about January 8, 2018, the government sent a letter to the defendant requesting notice pursuant to Rules 12.1 and 12.2, and 12.3 of each of these defenses. The defendant has not notified the government of his intent to raise any such defense. The government thus requests that the defendant be prohibited from introducing evidence or argument relating to such defenses at trial.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant each of its consolidated motions *in limine*.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Nicholas J. Eichenseer*
  KAVITHA J. BABU
  NICHOLAS J. EICHENSEER
  Assistant United States Attorneys
  219 South Dearborn Street, 5th Floor
  Chicago, Illinois 60604
  (312) 353-5300