**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**ERNESTO GODINEZ,**<br><br>    **Defendant.** | **Case No. 18 CR 278**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In the early morning hours of May 4, 2018, on the 4300 block of S. Hermitage Avenue in Chicago, several shots were fired, one of which hit ATF agent Kevin Crump in the head, seriously injuring him. Several months later a grand jury returned a superseding indictment charging Defendant with forcible assault on an AFT agent with a deadly and dangerous weapon and discharging a firearm during a forcible assault. On June 19, 2019, after a five-day trial, a jury returned a verdict of guilty on both counts. Defendant now moves for a judgment of acquittal or, in the alternative, a new trial.

### II. RULE 29 MOTION

Under Rule 29 of the Federal Rules of Criminal Procedure, a motion for a judgment of acquittal is appropriate if "the evidence is insufficient to sustain a conviction." A court must "uphold the jury's verdict if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *United States v. Miller*, 782 F.3d 793, 797 (7th Cir. 2015). The court does not weigh the evidence and does not assess credibility. Since the ATF agent was indisputably shot by dangerous weapon while on duty, the sole factual issue for the jury was the identity of the shooter. The evidence submitted by the Government that tended to show that the Defendant was the shooter consisted of videos from five separate law enforcement and private surveillance cameras; audio recordings of five gunshots coming from the north of where Crump was shot; five cartridge cases recovered from a gangway approximately one half a block north of where Crump was shot and two bullets found near where Crump was shot, all of which were fired from the same type of weapon and one of which contained Crump's DNA; gunshot location evidence from the ShotSpotter system (a proprietary method of locating the approximate source of gunshots based on a form of triangulation methodology); evidence from law enforcement individuals on the scene at the time of the shooting; and testimony of Defendant's girlfriend who identified Defendant as being at the scene at the time of the shooting and heard him saying "Fuck the Flakes," a reference to rival gang members.

Specifically, the cameras showed the Defendant holding the side of his pants (which the Government argues was evidence of his having a gun on his person) while running out of the gangway where the cartridge casings were found seconds after the shooting. The Government also submitted evidence from a member of Defendant's gang who testified the shooting occurred in the territory of the Latin Saints street gang of which Defendant was a member and that he was a gang "block chief," *i.e.*,

leader of the specific block where the shooting occurred. Moreover, the surveillance cameras showed that eighteen minutes prior to the shooting, the Defendant left his residence, which was one block to the west of S. Hermitage and circled the blocks near his home in his automobile. The evidence further showed that Crump together with several other members of a task force, all attired in plain clothes, were in the process of replacing tracking devices on cars parked near the 4300 block of Hermitage which were thought to be used in drug trafficking.

The chief argument made by the Defendant for a judgment of acquittal is that the Government's case was weak because it relied upon "uncorroborated and devastatingly impeached" testimony concerning gang membership, the failure of the Government to recover a gun from him, and that the Government's cartridge evidence should have been refused for failure to establish a proper chain of custody.

However, to accept the Defendant's argument for an acquittal would require the Court to weigh and perform a credibility analysis of the Government's evidence. To summarize, for the jury to find the Defendant guilty of Count 1, it had to find beyond a reasonable doubt that a government agent was shot with a dangerous weapon and that Defendant fired it. Here there was no doubt that Crump was an ATF agent, was on duty, and was shot. There was sufficient evidence, if believed by the jury, to have proved that Defendant was the shooter. There was evidence that the Defendant was present at or near the scene of the shooting both immediately before and after the shooting took place, and cartridges were found where Defendant had been positioned before and after the shots were heard and had been fired by the same type gun that fired the bullet

that hit agent Crump. The Government also proved motive: to rid the neighborhood of rival gang members. The evidence was enough to justify the conclusion of a rational jury that the shooter was the Defendant. Thus, the Motion for a Judgment of Acquittal is denied.

### III. THE RULE 33 MOTION

Rule 33 permits a court to vacate the judgment and grant a new trial "if the interests of justice so requires." To justify a new trial a defendant must show that "there was a reasonable possibility that a trial error had a prejudicial effect on the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). This Motion then requires that the Court find first that errors occurred during the trial, and, second, that the errors were sufficiently prejudicial to affect the jury's verdict. *United States v. Balistrieri*, 577 F.Supp. 1532 (E.D. Wis. 1984). The Defendant alleges three errors: first, the court admission into evidence of the cartridges; second, the admission of the ShotSpotter testimony; and third, the admission of the gang testimony by gang member Hector Ruiz. He also argues if these errors individually were insufficient to warrant a new trial, that these errors cumulatively denied him a fair trial.

#### A. The Admission of the Cartridge Evidence

Defendant's main complaint against the admission of the cartridge evidence is what he contends to be the failure of the Government to maintain a proper chain of custody of this evidence. However, Officer Presnell, who oversaw the collection of evidence, testified that when he arrived at the gangway where the cartridges were found, four of them had already been located and marked by the Chicago police. Sometime

later, after he returned to the gangway, he found a fifth cartridge, the location of which he personally marked. He also photographed the gangway and the location of the cartridges. The cartridges and bullets were then gathered by an ATF agent and taken to an ATF facility for safekeeping and analysis. At trial the ATF toolmark expert testified that all five cartridges had been fired from the same gun as well as the two bullets that were recovered from the area where Crump was shot, including the one that had Crump's DNA evidence on it. While the person who originally discovered the four cartridges did not testify at the trial, nevertheless the ballistic evidence that linked the five cartridges to each other and the two bullets discovered near Agent Crump, one of which contained his DNA, is powerful circumstantial evidence that the cartridges are what they were purported to be. In any case, gaps in the evidentiary chain of custody go to weight and not admissibility. *United States v. Olson*, 846 F.2d 1103, 1116 (7th Cir. 1988). The Government need not exclude all possibilities of tampering in order to establish a sufficient chain of evidence. It need only show that it took reasonable precautions. *United States v. Aviles*, 623 F.2d 1192, 1198 (7th Cir. 1980). Moreover, there is no evidence that any tampering, in fact, took place. The Defendant merely argues that it could have occurred. As pointed out in *Olson*, the nature of the article is a consideration. Here, we have bullets and cartridges which were inspected by an expert and were linked together having been fired by the same weapon. The expert testified at trial and was subject to cross examination. Therefore, there was no error in the admission of the five cartridges.

### B. ShotSpotter Expert Testimony

Prior to trial the Defendant filed a motion in limine to exclude the ShotSpotter evidence and the expert testimony of the proposed expert, Paul Greene. The Court denied the motion and declined the request to have a full *Daubert* hearing. Defendant now contends that the denial of the hearing was error. However, as the Court then noted, ShotSpotter evidence had been found reliable and, specifically Greene had been found qualified to give expert testimony in the design, installation, and function of the ShotSpotter system by the Supreme Court of Nebraska in *State v. Hill*, 288 Neb. 767, 792 (Neb. 2014). In addition, the ShotSpotter evidence did not include a specific location of the origin of the shootings, rather it gave only a general location where the shots originated. The testimony was by and large cumulative insofar as the ATF agents testified generally that the shots came from the north where the cartridges had been found. Thus, there was no error in the admission of the ShotSpotter evidence and Greene's testimony, which as we have seen was generally harmless.

### C. Latin Saints Evidence

The Government called Hector Ruiz, a fellow member of the Latin Saints street gang, to testify as to a possible motive for Defendant to have shot Crump. He testified that Defendant was a member of the Latin Saints street gang which had a cardinal rule that the membership needed to protect their territory by shooting at rival gang members who were trespassing. He further testified that Defendant was a "chief" of his block area and had an obligation to patrol the area to keep trespassers

out. The Defendant objects to this evidence on two grounds: first, the evidence of gang membership is highly inflammatory and prejudicial, and, second, Ruiz had received many valuable benefits in order to induce him to testify, not the least of which as a deportable alien he was to be allowed to remain in the country. While Defendant is correct that the admission of evidence of gang membership is prejudicial, it nevertheless is admissible if necessary, to prove one of the essential elements of the indictment. Here the testimony provided a motive, *i.e.*, why Defendant would have a reason or motive to shoot at Crump and why he would have been in the vicinity of the shooting at the 3:00 a.m. hour. Crump and the other agents were attired in hoodies and other clothing that tended to hide the fact that they were law enforcement agents. While such evidence is prejudicial, the risk of prejudice does not make it automatically inadmissible. *United States v. Santiago*, 643 F.3d. 1007, 1011 (7th Cir. 2011). It was not error to allow the Ruiz testimony and the evidence of Defendant's gang membership.

### IV. THE CUMMULATIVE EFFECT OF THE EVIDENCE

Lastly Defendant argues that the above errors together with his other contentions regarding the alleged uncorroborated testimony, the impeachments, and the fact that no gun was recovered, made the trial unfair and therefore entitle him to a new trial. However, as we have seen, there were no errors committed during the trial. While there was impeachment, the Defendant, through cross examination and argument, was able to make his positions clear to the jury. The resulting verdict against him was a result of the jury making its own determination of the adequacy of and the believability of the Government's evidence and its

witnesses. All in all, the Defendant received a fair trial so there is no need for a new one. The Motion for a New Trial is denied.

## V. CONCLUSION

For the reasons stated herein, Defendant's Motions for a Judgment of Acquittal, or in the Alternative, for a New Trial are denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　United States District Court

Dated: 10/02/2019