1      IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2        EASTERN DIVISION

3  UNITED STATES OF AMERICA,   ) Docket No. 18 CR 00278
              )
4      Plaintiff,   ) Chicago, Illinois
              ) June 10, 2019
5      v.      ) 10:04 a.m.
              )
6  ERNESTO GODINEZ,      )
              )
7      DEFENDANT.   )

8         VOLUME 1-A
     TRANSCRIPT OF PROCEEDINGS - Trial
9   BEFORE THE HONORABLE HARRY D. LEINENWEBER, and a Jury

10  APPEARANCES:

11  For the Government:  HON. JOHN R. LAUSCH, JR.
          United States Attorney, by
12         MS. KAVITHA J. BABU
          MR. NICHOLAS J. EICHENSEER
13         5th Floor
          Chicago, IL 60604
14

  For the Defendant:  MR. LAWRENCE H. HYMAN
15         111 West Washington Street
          Suite 1025
16         Chicago, IL 60602

17          and

18         PISSETZKY & BERLINER
          MR. GAL PISSETZKY
19         35 West Wacker Drive
          Suite 1980
20         Chicago, IL 60601

21  Also Present:    MR. BEAU JACOBSEN, ATF Agent
          MS. MARTA KASCUBA
22

  Court Reporter:   LISA H. BREITER, CSR, RMR, CRR
23         Official Court Reporter
          219 South Dearborn Street, Room 2118
24         Chicago, IL 60604
          (312) 702-8865
25         judith_walsh@ilnd.uscourts.gov

1      (In open court.)

2           THE CLERK:  18 CR 278, United States vs. Godinez.

3           MR. HYMAN:  May it please the Court, Larry Hyman and

4    Gal Pissetzky for Mr. Godinez.

5           MS. BABU:  Kavitha Babu and Nicholas Eichenseer on

6    behalf of the United States.

7           THE COURT:  All right.  Let's see.  Here for trial; is

8    that right?

9           MR. HYMAN:  Yes.  We're ready.

10          THE COURT:  Ready for trial.  Is it Eichenseer?

11          MR. EICHENSEER:  Correct, Your Honor.

12          THE COURT:  That's how you pronounce it?

13          MR. EICHENSEER:  Exactly.

14          THE COURT:  It sounds German.

15          MR. EICHENSEER:  I think it is.

16          THE COURT:  So does Leinenweber, though, I guess.

17          MR. PISSETZKY:  I'm not sure what Pissetzky is.

18          THE COURT:  Pardon?

19          MR. PISSETZKY:  I'm not sure what Pissetzky is.

20          THE COURT:  If I remember right, you're Israeli, right?

21   Or your family.  I remember we had -- I gave you the weekend off

22   to go to Israel for a funeral.

23          MR. PISSETZKY:  My grandfather, right.

24          MR. HYMAN:  And Hyman, I think we -- they just

25   chased -- the Cossacks chased us out, Judge.

1          THE COURT:  Okay.  We're here for a trial.  I've ruled

2     on the motions in limine.  There's two matters that have been

3     raised since.  One is the motion to visit the scene.

4          What's the government's position in that?

5          MS. BABU:  Your Honor, we don't think that that's

6     necessary in this case.  The scene of the alleged crime here is

7     a neighborhood here in Chicago.  The government intends to

8     introduce multiple maps as demonstratives.

9          There's multiple views of footage from surveillance

10     cameras surrounding the neighborhood.  The eyewitnesses who were

11     there that morning will testify.  There are approximately 50, if

12     not more, photographs of the scene.

13          We think that the jury will more than understand the

14     scene here, and it's also not a complicated scene.  It's a

15     typical neighborhood with houses, streets, alleys.  There's no

16     reason for the jury to have to schlep -- and shlep all the way

17     to the Back of the Yards.

18          THE COURT:  Anything further?

19          MR. HYMAN:  Your Honor, the whole purpose is not to

20     give the jury a sense of -- and I'm sure all these -- the

21     photographs that were taken by the evidence technician from the

22     Chicago Police Department gives some idea of what -- what it may

23     have looked like.

24          But I think until this jury understands the position of

25     Agent Spratte and what he saw and what he could see when he

fired his weapon to where he said there was the muzzle flashes. It makes a big difference because the photos just don't give it its due justice as to what he could have seen that morning.

THE COURT: But how are you going to establish that at the scene? You know, that I would -- my only knowledge of visiting the scene goes back to my trial practice when I did a lot of work on condemnation cases. And by Illinois law, the landowner had the right to have the property viewed, and we would take -- put the jury on a bus, take them down, let them look at the property, and then take them back without anybody saying anything.

I just -- I'm not -- it seems to me that the only way it would really be effective would be if you conducted the examination down at the scene, and we're not about to do that.

MR. HYMAN: No.

MR. PISSETZKY: No, your Honor.

THE COURT: Just, you know, that, okay, what are they seeing and, you know, who's to say where he is at this particular time, it would seem to me that would be confusing to the jury. So to bring the matter to a close, I'm going to deny the motion to visit the scene.

A couple of things till we start out. How long is this case going to take?

MS. BABU: Your Honor, the government expects that its case will take approximately the week.

1          THE COURT:  And then defense -- so it will go over into

2    the next week then in all probability.  So a week and a half

3    probably?

4          MR. HYMAN:  Well, yeah, to be safe, Judge, eight, maybe

5    eight --

6          THE COURT:  I always like to tell them.

7          MR. HYMAN:  Working days, 8 to 10 working days.

8          THE COURT:  I always like to tell the jury.  So I'll

9    tell them it won't be more than two weeks --

10          MR. HYMAN:  No.

11          THE COURT:  -- but probably somewhat less?

12          MR. HYMAN:  Less, yes.

13          THE COURT:  All right.  The government proposed a

14    statement of the case.  I take it you guys have seen it?

15          MR. PISSETZKY:  Yes.

16          THE COURT:  Is that okay?

17          MR. HYMAN:  Yes, that's fine.

18          THE COURT:  All right.  As far as the voir dire is

19    concerned, both sides have submitted proposed questions.  The

20    one question that  -- the one area that the government didn't

21    submit any suggestions on, and you guys, the defense did

22    concerning how to handle gangs.

23          And you had two questions, they're 37 and 38, "Do you

24    have a strong opinion about gangs?  Do you or anyone you know

25    ever been affected by gang violence?"

1    MR. HYMAN:  Yes.

2    THE COURT:  I had -- till I had read yours, I had been

3    fooling around with a proposed question, which would have a

4    statement and ask a question.

5    And my proposal was -- and I would ask your view.  You

6    know, if you guys don't want it, then I would certainly not give

7    it.  "There may be evidence introduced in the case that the

8    defendant may be a member of a group that can be classified as a

9    gang.  The Constitution gives us the right to associate with

10   others.  There is nothing inherently illegal or wrongful in

11   associating with a gang. You should not decide any issue of fact

12   solely due to alleged gang membership.  Can you do this?"

13   MR. PISSETZKY:  Yeah, we would like that question to be

14   read.  But in conjunction as well, I think the two question we

15   proposed --

16   THE COURT:  How about have you ever been affected by --

17   what was your question?  Let's see.  Affected by gang violence.

18   MR. HYMAN:  Right.  You or anyone you know.

19   THE COURT:  All right.

20   MS. BABU:  And, Your Honor, we don't -- we are fine

21   with question No. 38.

22   Question No. 37 is a little vague as to what a

23   strong --

24   THE COURT:  Well, I was just going to -- what I was

25   going to do was give mine, say that, and then ask have they ever

1   been affected by gang violence.

2           MS. BABU:   That's fine, Your Honor.

3           THE COURT:   You or any, you know, you or any of your

4   close associates.

5           MR. HYMAN:   And if the Court would follow up, or would

6   we go to the side and ask the individual jurors if they have, if

7   how would they be able -- would this affect their ability to sit

8   on this jury.

9           THE COURT:   Yeah.  I would do that.  If they say yes, I

10  have, then I would say come on over here, and we would find out

11  exactly what it was.

12          I'm trying to think of gang cases before.

13          MR. HYMAN:   I think Your Honor has allowed the issue of

14  gangs in this case for purposes of I guess historical reasons or

15  what -- there isn't any indication that this is a gang shooting.

16          THE COURT:   Well, I understand.  We've been through all

17  that, and I think it fits within the exception of 404(b), which

18  is what gang membership would be, 404(b) material.

19          And the government has explained sufficiently to my

20  justification that it's relevant in the case for their --

21  certainly for their theory of the case.  So that's -- we're

22  going to do that.

23          But I wanted to know how you want me to handle it with

24  the jury.  And I had that -- before I read your suggestions, I

25  had thought myself, you know, because obviously you have a right

1   to associate with a gang unless you're under some kind of a

2   legal restriction.  So there's nothing inherently wrong with

3   being a member of a gang, and so I thought I would tell them

4   that unless there's, you know --

5               MR. HYMAN:  The question is very fair and very open,

6   Judge.  We appreciate that.

7               THE COURT:  All right.  So you guys want me to do that?

8               MR. HYMAN:  Yes.

9               THE COURT:  Okay.  I'm not giving all of your questions

10  on either side, but I'm giving at least some of them.

11              MR. HYMAN:  Okay.

12              THE COURT:  And if you want -- if you want follow-ups,

13  let me know.  I think --

14              MR. PISSETZKY:  We insist on the question about the

15  pet.

16              THE COURT:  What?

17              MR. PISSETZKY:  We insist on the question regarding the

18  pets.

19              MR. HYMAN:  Are they pet owners.

20              THE COURT:  What in the world?  That comes right after

21  your question about gangs.

22              MS. BABU:  They're clearly related.

23              THE COURT:  I had not proposed to give that.

24              MR. HYMAN:  Okay.  It actually goes to the compassion

25  of people, Judge, that owners are compassionate people.

THE COURT:  You'll probably irritate people, and somebody else will say they're the type of people that bring their dog on the airplane, which has become a national scandal almost.

So let's go back -- to get back to jury selection, Mr. Pissetzky I know has tried several cases in front of me, and I do the voir diring.  And the way I do it is we'll put 12 in the jury and I'll question all 12, and then you will then exercise your strikes as to the 12.  We'll remove those, swear in those who are not stricken and fill the empties till we have 12 jurors.  Because we're going to go to next week, I'll probably pick an extra two or three as alternates.

You get -- each side gets one peremptory for the three alternates.  You can't use your leftover ones on the alternates.

My procedure has always been -- and most lawyers, I've never had anybody object to it -- is that you exercise your strikes simultaneously in writing, and I do not attribute who gets -- who gets the honor of kicking somebody off the jury.

But because you're doing it simultaneously, occasionally you'll strike the same juror.  It happens more often than you would think.  And the first time that happens, it's charged to the government, the second time the defense, and then back to the government again, much the same as the NBA.

So example, jurors 1, 2 and 3, the government strikes juror 1 and defendant strikes 1 and 3.  At that time the defense

has exercised one, the government has exercised one challenge.
So we replace those two, and you both challenge replacement
No. 1.  That's chargeable to the defense.

And the only other thing I caution you on is I don't
permit backstriking.  If you get all the way down to you got 11
jurors and you got too many of women or too many men, I'm not
going to let you go back and kick off the ones that have already
been accepted and sworn.

Because I'll swear them in as soon as they've been
acceptable to both sides.  Is that understood?  Is there any
objection to that procedure?

MR. HYMAN:  Your Honor, do you go to the side and we
present our strikes, or do you just --

THE COURT:  No.  You write them -- put them in writing,
and you'll hand them to Mel, and then she'll hand them to me,
and I'll say okay, juror strike, da, da, da, da, da, and
everybody will keep a running tally.  If you want to know if you
have had any --

MR. HYMAN:  Judge, there's seven or eight?

THE COURT:  Pardon?

MR. HYMAN:  Eight strikes?

THE COURT:  You guys get 10.

MR. HYMAN:  Ten.

THE COURT:  And they get six.  And when we get the
alternates, you each get one.

1    MR. HYMAN:  Right, okay.

2    THE COURT:  But you can't -- you can't save a couple

3    for the alternates.

4    MR. HYMAN:  Okay.  I get it.

5    MS. BABU:  The government has no objection to this,

6    Your Honor.

7    THE COURT:  The -- obviously the -- you're all

8    professionals, and you understand the fact you don't argue with

9    each other.  You present everything through me.

10    If you have an objection, state it, and I'll rule on

11    it.  And normally it's not necessary for you to expand on the

12    fact.  Just object, state the rule, hearsay or 404(b) or

13    whatever, and if I think I need more information, I'll call for

14    a sidebar.

15    Now, the jurors hate sidebars.  I hate sidebars.  The

16    only thing I hate more than sidebars is re-redirect and

17    re-recross.  Once you get through your cross and they get the

18    redirect, that should be it.

19    MR. HYMAN:  How about, "one more question, Your Honor,"

20    one of those "one more questions"?

21    THE COURT:  And I count, that's one, that's two, that's

22    three, that's four.  So anyway, that's not to say you can't do

23    it, but I don't like it.  So I don't know if that's a

24    peculiarity with me.

25    MR. PISSETZKY:  How late are we going to go, Judge,

1   and --

2          THE COURT:   10:00 till 5:00 and take an hour usually

3   around 12:30, quarter to 1:00, something like that.   And then

4   we'll take a break in the morning, mid-morning and a break in

5   the afternoon.   If you're not finished on Friday, we'll go on

6   Friday and finish it Monday or Tuesday or whatever.

7          MR. HYMAN:   If our jury selection goes past the lunch

8   hour, Judge, do you expect us to start today or will you give

9   us --

10         THE COURT:   Well, yeah, it depends.   I would like you

11  to give opening statements today for sure and maybe even put a

12  witness on depending on how quickly the jury goes.   You never

13  know how fast it will go until you hear some of the responses

14  and whether, you know, how many people want to be off the jury

15  or whatever reason.

16         Normally, you know, I like to complete jury selection

17  in the beginning, but for criminal cases, it's kind of difficult

18  because of the number of challenges.

19         And if you -- if you want to follow up on something,

20  ask for a sidebar.   I'm happy to have a sidebar there if you

21  want to explore something that one of the jurors said.

22         I'll try to anticipate that, you know, if somebody

23  says, yeah, I had a problem with the City of Chicago police, I

24  would ask them, you know, what exactly the nature of the problem

25  was.

1    When it gets into the question of have you or a close

2  family member ever been convicted or arrested for a serious

3  crime, I will have a sidebar to have him explain, you know, what

4  it is and so forth.

5    I will do that automatically, find out what it is and

6  see if it's -- if it is, so you know whether its -- how serious

7  it is, and whether -- we can ask them whether or not they could

8  be fair based upon that experience.

9    MR. HYMAN:  Your Honor, I don't know if there is a

10  question -- I don't know where I put that thing -- about the

11  testimony of agents and officers, whether --

12    THE COURT:  My question is on that -- and I think I'm

13  correct on this -- is will you use the same tests in evaluating

14  the truthfulness of the testimony of a witness regardless of

15  whether -- of what the status of the witness is.

16    I use the same one, for example, the police officer as

17  you would defense witness or vice versa.  It's the question is

18  would he use the same test.

19    Obviously you have Mother Teresa on and you have a

20  person who's been convicted of 12 crimes, you can't suggest to

21  the jury that they should give equal weight to that.  I mean,

22  it's how would you evaluate the testimony?

23    Mother Teresa may be lying, and so you would use your

24  normal tests in determining whether she's lying or not.  But you

25  can't ask them to say necessarily that they believe a criminal

1  over a police officer or would you use -- would you believe both

2  of them the same way.

3       We wouldn't necessarily, but you use the same tests,

4  the police officer's shifty and so forth.  And we give them

5  that, you know, that how to evaluate the testimony of witnesses

6  when we instruct the jury.  It's pretty detailed about their --

7  how they should do it.

8       So basically I don't ask it the way that normally they

9  request me to ask it, but I'll ask it here's the same test in

10  evaluating all the witnesses regardless of whether they're law

11  enforcement or whether lay.

12       MS. BABU:  That's fine for the government.

13       THE COURT:  Let's see.  I'm trying to think what

14  other -- usually Judy can tell me what I should tell everybody.

15       MS. BABU:  Your Honor, we have a few administrative

16  matters that I'd like to take up --

17       THE COURT:  All right.

18       MS. BABU:  -- once the Court is done.

19       THE COURT:  Why don't you do that, and I'll be thinking

20  about something else that I should --

21       MS. BABU:  Sure, Your Honor.  We would like to make a

22  motion to have any defense or government witnesses excluded from

23  the courtroom during the pendency of the trial until they're

24  excused from the stand.

25       THE COURT:  And you want to do it except for your case

1    agent?

2              MS. BABU:   Correct, Your Honor.

3              THE COURT:   Any objection to that?

4              MR. HYMAN:   No.

5              THE COURT:   All right.  The parties will be instructed

6    to monitor their own witnesses.

7              MR. HYMAN:   The other thing is this is a very emotional

8    case for this agency.  When we were at our bond hearing, they

9    brought in about 60 agents.

10             THE COURT:   60?

11             MR. HYMAN:   At least 60 agents to sit, including the

12   parents of the officer who was shot, to see Mr. Godinez.  We

13   would ask the Court if they're going to bring in officers -- and

14   they have a right to come in and watch this -- but they don't

15   end up just packing this courtroom with agents during the course

16   of the opening or closing argument.

17             MS. BABU:   We don't expect for that to be the case,

18   Your Honor.

19             THE COURT:   All right.  It's kind of hard to say that

20   they can't.  As you say, they have a right to be here.  I would

21   hope that they wouldn't bring them in a -- like a show of force.

22   I think that's what you're worried about.

23             MR. HYMAN:   Yes.

24             THE COURT:   So the government tells me that isn't going

25   to happen or probably won't happen.

MS. BABU:   Correct, Your Honor.

THE COURT:   So we'll let it go at that.

MR. HYMAN:   Okay.

MS. BABU:   And, Your Honor, when we tender witnesses under Rule 702, would you like for us to refer to them as experts, or would you rather we not?  We intend to present multiple experts.

THE COURT:   Oh, experts.  Well, normally, I mean, you voir dire them and then, well, they put in the evidence unless there's stipulation that they are experts.

MR. HYMAN:   No.

MS. BABU:   There is not, Your Honor.

THE COURT:   I mean, there is an instruction as to about experts, so, I mean, obviously you can refer to them as experts. That's -- their testimony, presuming it is under 702, it would be as an expert because they allowed to give opinions.  No, I don't see any problem with that.

MS. BABU:   Thank you, Your Honor.

THE COURT:   What else is on your list?

MS. BABU:   Lastly, Your Honor, we do intend to use a general map of the neighborhood during opening statements.  I've shown the map to defense counsel.  They do not have an objection to the map.

THE COURT:   Fine.  Usually within reason, anything you agree to, I pretty much allow unless it's being extraordinarily

1    time-consuming.

2            But as far as my -- as far as using graphics and things

3    of that nature at opening statements, my view has always been as

4    long as you can assure me and assure both sides that it will be

5    shown during the trial, that it's accurate, then you can use it

6    because I'm assuming you would anticipate that there will be

7    evidence that it's accurate.

8            You can tell the jury you think it's accurate, and then

9    if it isn't accurate, then, of course, you look bad.  But, I

10   mean, as far as that goes.  So I -- but you can use almost

11   anything that would be -- I always thought that you could also

12   use an exemplary exhibit.  If you could draw it on a piece of

13   paper, you can do it ahead of time and make it look better, then

14   I don't have any problem with that.

15           So again, the question is whether it's fair.  You know,

16   if it's obviously, you know, way out of whack so that it gives

17   the wrong impression, then you know, as long as the exhibits are

18   reasonably accurate, I don't have any problem with that.

19           MR. HYMAN:  We intend to use what the government has

20   given us as exhibits in our opening statements.  So everything

21   that they have tendered to us, we're going to use.

22           THE COURT:  All right.  That's fine.  Obviously if the

23   government prepared it, it can be used by you.

24           What else we got, anything?

25           MS. BABU:  No, Your Honor.

Jury Selection

1    THE COURT:  Pardon?

2    MS. BABU:  No, Your Honor.  We have nothing else.

3    THE COURT:  Anything further?

4    MR. HYMAN:  No.  We're ready to go.

5    THE COURT:  All right.  Let me get the jury up here and

6    then we will get started.

7         Let me put one thing on the record before I forget.

8    You do not need to ask permission to approach a witness.  Just

9    approach the witness if you want show them something without

10   asking permission, all right?

11      (Recess at 10:27 a.m., until 10:47 a.m.)

12        THE CLERK:  Court resumes in session.  Please be seated

13   and come to order.

14        THE COURT:  Good morning, ladies and gentlemen.  You've

15   been called here to participate in jury selection in a case

16   entitled United States of America vs. Ernesto Godinez.  I'll

17   give you a description of the case just so you know what the

18   case is generally about.

19        The defendant Ernesto Godinez has been charged with

20   assaulting a special agent with the bureau of Alcohol, Tobacco

21   and Firearms, also known as the ATF, and Explosives on May 4th,

22   2018, and using a firearm during the assault.  Specifically

23   Count 1 of the indictment alleges that the defendant used a

24   firearm to inflict bodily injury upon the special agent while

25   the agent was performing official duties.

1    Count 2 of the indictment alleges that the defendant
2    used and discharged the firearm during the assault of the agent.
3    The defendant has pled not guilty to the charges, and the
4    purposes of this trial, this proceeding today is to determine
5    whether or not the government can prove the charges as I've just
6    outlined against Mr. Godinez beyond a reasonable doubt.
7    It is the government's obligation, as we will go over
8    several times during the course of the trial, to prove any
9    charge against a criminal defendant, a defendant in a criminal
10   proceeding beyond a reasonable doubt.  It is not the defendant's
11   obligation to prove his innocence.
12   The defendant, Mr. Godinez, is represented by
13   Mr. Lawrence Hyman and Mr. Gal Pissetzky.  Mr. Hyman, would you
14   introduce the people at your table.
15   MR. HYMAN:  Good morning, ladies and gentlemen.  This
16   is Mr. Pissetzky, my partner in this case.  This is Ernesto
17   Godinez.
18   THE DEFENDANT:  Good morning.
19   MR. HYMAN:  And this is young lady is Marta Kascuba.
20   She is a recent graduate from law school.
21   THE COURT:  The government is represented by
22   Ms. Kavitha Babu and Mr. Nicholas Eichenseer.
23   Ms. Babu, would you introduce the people at your table.
24   MS. BABU:  Yes, Your Honor.
25   Good morning, ladies and gentlemen.  My name is Kavitha

1    Babu.  I'm an assistant U.S. Attorney with the United States.

2    This is my partner Nicholas Eichenseer, and also at our table is

3    Special Agent Beau Jacobsen from the ATF.

4          THE COURT:  Thank you.  Usually the first question

5    prospective jurors want answered when they get called in for

6    jury selection is how long is the case going to take for trial.

7    And we believe the case will take -- will be less than two

8    weeks.  How much less, we don't -- we can't really tell you now,

9    but we don't expect the case to take two weeks.

10          So your obligation as a juror, if you're selected in

11   this case, would be present in court Monday, which is today,

12   through Friday of this week and whatever days next week are

13   necessary to conclude the case.  I can't guarantee when you

14   would get out, but I've been reasonably assured that the case

15   will not take two full weeks, but at least one week and perhaps

16   a part of another.

17          So our court days will be starting at 10:00 o'clock in

18   the morning and will conclude at 5:00 p.m. in the evening.  And

19   we'll take an hour off for lunch, usually around a quarter to

20   1:00 or 1:00 o'clock, and then have a recess in mid-morning and

21   another recess in mid-afternoon.

22          It's my intention as a judge to assure you that your

23   time while you're -- if you're on the jury, that your time will

24   be spent -- will be spent in the trial rather than waiting

25   around.  Sometimes there is absolute necessary that we do stuff

1   that would not necessarily involve the jury, but I will pledge

2   to you we will keep that to an absolute minimum, so that when

3   you're in the building, you will be sitting out here listening

4   to testimony of the witnesses. Because that is what your

5   obligation as a juror is and to make the factual determinations.

6   One other thing I'm going to do right now -- and I want

7   you to listen closely -- because I'm not going to repeat this

8   list. But I'm going to, when you're questioned for selection

9   specifically as a juror, I'm going to ask you whether or not

10   you're familiar with any of these people.

11   We've got potential witnesses -- and I want to

12   emphasize potential -- which generally means that their name

13   will be -- will come up, either that they may become a witness

14   or their name will come up during the course of the trial.

15   And I want to -- I will ask you whether or not you're

16   familiar with any of these people, and if you are, to let me

17   know. Not now, but at a later time.

18   So I want you to listen. I don't want to have to

19   repeat the list because it's relatively long. But again, I want

20   to say it's potential. It means that these people's name will

21   come up. We want to know whether or not you know any of them.

22   The witnesses on the list include Nicholas Brown, Chris

23   Chmelar, C-H-M-E-L-A-R, Kevin Crump, C-R-U-M-P, Arnold Esposito,

24   Paul Greene, Steve Greene, Beau Jacobsen, Victoria

25   Jean-Baptiste, Kevin O'Neill, Paul Presnell, P-R-E-S-N-E-L-L,

1  Destiny Rodriguez, Hector Ruiz, Jason Schoenecker, Thomas
2  Spratte, S-P-R-A-T-T-E, Daniel Winter.
3          Anthony Green, a Chicago police officer, Neil Evans, a
4  Chicago police officer, Adriana Oropeza, O-R-O-P-E-Z-A, Jose
5  Manny Segoviano, S-E-G-O-V-I-A-N-O, Lucy Segoviano and
6  G. Stanley Sangdahl, S-A-N-G-D-A-H-L, ESI Corporation.
7          So I'm going to ask as we go -- as I'm questioning each
8  of the jurors if they know any of those people, so I'm hoping
9  you can remember those names.
10         Now, as far as jury selection, for those of you who
11 have never participated before, you will all be sworn in, and
12 then I will ask questions to you concerning mostly biographical
13 as to your background and what your various experience may be
14 relevant to this particular case are.  And we -- and no
15 intention to embarrass anybody so -- and I don't think the
16 questioning's going to be that problematical.
17         But it is necessary that the lawyers on both sides, the
18 government and the defense, know something about you because
19 under federal law, each side is entitled to have excused any
20 potential juror that is legally disqualified under a number of
21 disqualifications.  Not very many, but there are a few.  So they
22 need to know something like that.
23         Also, each side is entitled to excuse a certain number
24 of jurors by exercising what's known as a peremptory challenge,
25 which means they can exclude a certain number of jurors,

1  potential jurors, without having to justify why the particular

2  side doesn't want them as a juror.  So for them, however, to

3  exercise their rights intelligently, they have to know something

4  about you.  Hence, I'm obligated to ask certain questions of you

5  concerning your background and experiences.

6        So I don't think it will be too -- too intrusive, but

7  to the extent that any question is concerning an individual, of

8  course, is an intrusion of some kind.  So I apologize in advance

9  for that, but I don't want to scare you by thinking that you're

10  going to be embarrassed because there's no intention to

11  embarrass anybody.  Will you all rise and be sworn.

12     (Venire sworn.)

13        THE COURT:  Please be seated.  Would you call 12

14  jurors.  The first juror, take the first seat closest to me in

15  the first row.  The second through sixth.  And then the seventh

16  juror, take the first seat in the back row and then back down.

17        THE CLERK:  Denise Maty, M-A-T-Y.  Myra Reyes.

18        Did you want her to sit there, Judge?

19        THE COURT:  You are Ms. Maty?  You can take the first

20  seat, and you take the second seat right after -- next to her,

21  yeah.

22        THE CLERK:  Krystal Travis.

23        THE COURT:  Probably easier if you go in that -- just

24  take the sec -- no, no, no, no.

25        PROSPECTIVE JUROR:  The first seat where I was?

Jury Selection

1       THE COURT:  Yeah, where you are, the first seat.  The

2  first person in the first seat and the second person take the

3  second seat and the third person take the third seat.  You can

4  be seated.

5       THE CLERK:  Sandra O'Malley, Nicholas Sevenich, Marilyn

6  Rebus, Willie Johnson.

7       THE COURT:  Mr. Johnson, you take the first seat in the

8  back row closest to me.

9       THE CLERK:  Corey Barnett, Brian Velo, Martha Avila,

10  Ella Hansen and Delia Douglas.

11       THE COURT:  Is it Maty, M-A-T-Y?  Is that how you

12  pronounce it?

13       PROSPECTIVE JUROR:  Yes.

14       THE COURT:  You are Denise Maty; is that correct?

15       PROSPECTIVE JUROR:  Yes.

16       THE COURT:  Where do you live?

17       PROSPECTIVE JUROR:  Lockport, Illinois.

18       THE COURT:  And how old are you?

19       PROSPECTIVE JUROR:  48.

20       THE COURT:  What's your educational background?

21       PROSPECTIVE JUROR:  High school graduate.

22       THE COURT:  And what is your occupation?

23       PROSPECTIVE JUROR:  Self-employed.

24       THE COURT:  And your marital status?

25       PROSPECTIVE JUROR:  Married.

Jury Selection

1          THE COURT:  What does your spouse do?

2          PROSPECTIVE JUROR:  Sales.

3          THE COURT:  What does he sell?

4          PROSPECTIVE JUROR:  Intermodal transportation.

5          THE COURT:  Have you or any member -- does -- you or --

6   obviously you don't.  Any member of your family currently

7   employed in law enforcement?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  Okay.  How about have any family members

10  been in law enforcement?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  OKAY.  Are there any attorneys in your

13  family?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Who?

16         PROSPECTIVE JUROR:  A cousin.

17         THE COURT:  A cousin.  What type of -- where does he

18  practice?

19         PROSPECTIVE JUROR:  He is now in Minnesota.  He was in

20  Chicago.

21         THE COURT:  Do you know what he does?  Is he a criminal

22  lawyer or a civil?

23         PROSPECTIVE JUROR:  Family law.

24         THE COURT:  Okay, family law.  Have you or any member

25  of your family ever been employed specifically in law

1  enforcement, including the ATF, which is the agency we've been

2  talking about?

3          PROSPECTIVE JUROR:  No.

4          THE COURT:  Now, the case was investigated by the ATF

5  and the Chicago Police Department.

6          Have you had any dealings with either the ATF or the

7  Chicago Police Department?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  The case involves charges that include the

10  use of a firearm.

11          Do you have any feelings or beliefs regarding firearm

12  laws that would make it difficult for you to be impartial to

13  either side?

14          PROSPECTIVE JUROR:  I'm strongly against the use of

15  firearms, but...

16          THE COURT:  When you say you're against the use of

17  firearms, do you mean in an illegal way or any way?

18          PROSPECTIVE JUROR:  In an illegal way.

19          THE COURT:  Pardon?

20          PROSPECTIVE JUROR:  In an illegal way.

21          THE COURT:  In other words, you don't oppose hunting or

22  anything of that nature?

23          PROSPECTIVE JUROR:  I'm opposed to hunting as well.

24          THE COURT:  Pardon?

25          PROSPECTIVE JUROR:  I'm opposed to hunting as well.

Jury Selection

1    THE COURT:  Okay.  Do you belong to any organizations
2  that are opposed to the use of firearms?
3    PROSPECTIVE JUROR:  No.
4    THE COURT:  Okay.  It's just your own personal view?
5    PROSPECTIVE JUROR:  Yes.
6    THE COURT:  The fact that firearms were used in this
7  case, do you think that would affect your ability to be
8  impartial?
9    PROSPECTIVE JUROR:  Most likely, yes.
10    THE COURT:  Pardon?
11    PROSPECTIVE JUROR:  Yes.
12    THE COURT:  Okay.  When I say difficulty to be
13  impartial -- all right.  I'll excuse you.  Thank you.  I'm going
14  to call one more.
15    THE CLERK:  You can go back downstairs to the second
16  floor where you began.
17    Janet McCracken.
18    THE COURT:  We'll go right in with you.  And again, you
19  are Janet McCracken; is that correct?
20    PROSPECTIVE JUROR:  Yes.
21    THE COURT:  Where do you live?
22    PROSPECTIVE JUROR:  Lake Forest.
23    THE COURT:  How old are you?
24    PROSPECTIVE JUROR:  59.
25    THE COURT:  What is your educational background?

Jury Selection

1    PROSPECTIVE JUROR:  I have a Ph.D.

2    THE COURT:  In what area?

3    PROSPECTIVE JUROR:  Philosophy.

4    THE COURT:  Okay.  And what is your occupation?

5    PROSPECTIVE JUROR:  I'm a philosophy professor.

6    THE COURT:  And where?

7    PROSPECTIVE JUROR:  Lake Forest College.

8    THE COURT:  Okay.  Are you married?

9    PROSPECTIVE JUROR:  Yes.

10   THE COURT:  What does your spouse do?

11   PROSPECTIVE JUROR:  He also teaches at Lake Forest

12   College.

13   THE COURT:  What does he teach?

14   PROSPECTIVE JUROR:  He teaches law, politics and

15   philosophy.

16   THE COURT:  Is he a lawyer?

17   PROSPECTIVE JUROR:  Yes.

18   THE COURT:  And has he ever practiced?

19   PROSPECTIVE JUROR:  For a while, yeah.

20   THE COURT:  And what type of law did he practice when

21   he practiced?

22   PROSPECTIVE JUROR:  Corporate litigation.

23   THE COURT:  Pardon?

24   PROSPECTIVE JUROR:  Corporate litigation.

25   THE COURT:  Okay.  He did not do criminal law?

1          PROSPECTIVE JUROR:   No.

2          THE COURT:   Okay.  Are there any -- do you have any

3   family members employed in law enforcement currently?

4          PROSPECTIVE JUROR:   No.

5          THE COURT:   How about in the past?

6          PROSPECTIVE JUROR:   No.

7          THE COURT:   Any other lawyers besides your husband in

8   your family?

9          PROSPECTIVE JUROR:   I'm just thinking.

10         THE COURT:   Pardon?

11         PROSPECTIVE JUROR:   I'm thinking.

12         THE COURT:   Okay.  Well, they're not close to you

13   anyway?

14         PROSPECTIVE JUROR:   Not close to me.

15         THE COURT:   Well, that's -- basically what we're

16   looking for is somebody who you associate with quite often.

17         Now, the case was investigated by the Alcohol, tobacco

18   And Firearms agency and the Chicago Police Department.

19         Have you had any specific dealings with either of those

20   agencies?

21         PROSPECTIVE JUROR:   No.

22         THE COURT:   Now, the case involves charges that include

23   the use of the firearm.

24         Do you have any feelings or beliefs regarding firearm

25   laws that would make it difficult for you to be impartial?

Jury Selection

1    PROSPECTIVE JUROR:  Regarding firearm laws, yes.

2    THE COURT:  Pardon?

3    PROSPECTIVE JUROR:  Regarding firearm laws, yes.

4    THE COURT:  I'm not sure I understand your response.

5    PROSPECTIVE JUROR:  Meaning I think probably firearm

6    laws should be more restrictive.

7    THE COURT:  Okay.  But you are -- you think that your

8    views -- well, the firearm laws are what they are, and at the

9    end of the case, I will instruct you as to the applicable law,

10   and it's your obligation as a juror to follow the applicable law

11   regardless of whether you feel that it's too restrictive or not

12   restrictive enough?

13   PROSPECTIVE JUROR:  Right.

14   THE COURT:  You understand that's the --

15   PROSPECTIVE JUROR:  Absolutely.

16   THE COURT:  And it's up to the judge to do that.  It's

17   the juror's obligation to decide factual issues and determine

18   ... so the question is whether or not you would follow the law.

19   PROSPECTIVE JUROR:  Yes.

20   THE COURT:  And even though you think it might be

21   better to have it different, but a lot of people say "there

22   ought to be a law."  Well, if there isn't a law, there isn't

23   one.

24   So you would be prepared to be impartial as far as --

25   PROSPECTIVE JUROR:  Yes.

1        THE COURT: Okay. Now, there may be evidence

2  introduced in this case that the defendant may be a member of a

3  group that can be classified as a gang.

4        The Constitution gives us the right to associate with

5  others. There's nothing inherently illegal or wrongful in

6  associating with others, even though it might be classified as a

7  gang. You should not decide any issue of fact solely due to

8  alleged gang membership.

9        Would you be able to do this?

10        PROSPECTIVE JUROR: Yes.

11        THE COURT: Okay. Have you or any close friend or

12  associate ever been affected by gang violence?

13        PROSPECTIVE JUROR: No.

14        THE COURT: Okay. Under the Constitution, a defendant

15  need not testify in the case, and his silence cannot be used

16  against him.

17        Can you follow this instruction?

18        PROSPECTIVE JUROR: Yes.

19        THE COURT: It is the government's obligation to prove

20  the charges against the defendant beyond a reasonable doubt. It

21  is not the defendant's obligation to prove his innocence.

22        Can you apply this to the case? In other words, do you

23  have any strong feelings that that shouldn't be the case?

24        PROSPECTIVE JUROR: No, I'm fine.

25        THE COURT: Okay. In evaluating any witness'

1    testimony, you should use the same tests regardless of whether

2    that witness is a law enforcement officer or some lay witness.

3            Would you be willing to do that?

4            PROSPECTIVE JUROR:  Yes.

5            THE COURT:  In other words, I'm not suggesting that you

6    should not -- you should believe anybody the same amount, but

7    you should use -- we all use different tests when you evaluate

8    somebody's telling you a bunch of hokum or whether it's the

9    truth.

10           And the law requires if it's a juror, when they

11   evaluate the testimony of a witness, they use that same test.

12   In other words, is that person being shifty, is he not being

13   shifty, that sort of thing.  All right?

14           PROSPECTIVE JUROR:  (No Response.)

15           THE COURT:  Have you or a family member ever been

16   charged with or convicted of a serious crime?

17           PROSPECTIVE JUROR:  No.

18           THE COURT:  Have you been a crime victim?

19           PROSPECTIVE JUROR:  No.

20           THE COURT:  Have you ever been a party to a lawsuit

21   either as a plaintiff or a defendant?

22           PROSPECTIVE JUROR:  No.

23           THE COURT:  Have you been on jury duty before?

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  When and when?

1          PROSPECTIVE JUROR:  Maybe 20 years ago in Waukegan
2      County.
3          THE COURT:  Okay.  Do you remember what it was, a
4      criminal case or a civil case?
5          PROSPECTIVE JUROR:  It was a DUI case.
6          THE COURT:  So did you actually sit and decide the
7      case?
8          PROSPECTIVE JUROR:  Yes.
9          THE COURT:  Okay.  Did you recognize any of the names
10     on the list of witnesses?
11         PROSPECTIVE JUROR:  No.
12         THE COURT:  Do you recognize any of the lawyers?
13         PROSPECTIVE JUROR:  No.
14         THE COURT:  Do you hold any religious, philosophical or
15     moral beliefs that would make it difficult for you to sit in
16     judgment of another person?
17         PROSPECTIVE JUROR:  No.
18         THE COURT:  What is your source for news?
19         PROSPECTIVE JUROR:  Mostly CNN.
20         THE COURT:  Okay.  Will you follow the law that I give
21     you even if you disagree with it?
22         PROSPECTIVE JUROR:  Yes.
23         THE COURT:  I think I've already been through that.
24         Any reason you couldn't be a fair and impartial juror
25     in this case?

1    PROSPECTIVE JUROR:   No.

2    THE COURT:   Okay.  Moving on to is it Myra Reyes?

3    PROSPECTIVE JUROR:   Yes.

4    THE COURT:   Where do you live, Ms. Reyes?

5    PROSPECTIVE JUROR:   Des Plaines, Illinois.

6    THE COURT:   How old are you?

7    PROSPECTIVE JUROR:   53.

8    THE COURT:   What is your educational background?

9    PROSPECTIVE JUROR:   High school.

10   THE COURT:   And what is your occupation or employment?

11   PROSPECTIVE JUROR:   I'm a registered financial

12   associate for Wintrust.

13   THE COURT:   Okay.  Are you married?

14   PROSPECTIVE JUROR:   Divorced.

15   THE COURT:   What did or does your former husband do?

16   PROSPECTIVE JUROR:   He was a machinist at a factory.

17   THE COURT:   Are any of your family members ever

18   employed in law enforcement capacity?

19   PROSPECTIVE JUROR:   I have a first cousin who is a

20   lieutenant for Chicago.

21   THE COURT:   Chicago police?

22   PROSPECTIVE JUROR:   Yes.

23   THE COURT:   Okay.  Do you see him often or on

24   occasions?

25   PROSPECTIVE JUROR:   On occasions.

1    THE COURT:   Okay.   Anybody employed by the ATF?

2    PROSPECTIVE JUROR:   No.

3    THE COURT:   Any attorneys in your family?

4    PROSPECTIVE JUROR:   I have a second cousin who is an

5    attorney, but I don't know.

6    THE COURT:   Okay.   Now, the case was investigated by

7    the Alcohol, Tobacco and Firearms agency and the Chicago Police

8    Department.

9    Have you had any dealings with either agency?

10   PROSPECTIVE JUROR:   No.

11   THE COURT:   The case involves charges that include the

12   use of a firearm.

13   Do you have any feelings or beliefs including firearm

14   laws that would make it difficult for you to be impartial to

15   either side in this case?

16   PROSPECTIVE JUROR:   No.

17   THE COURT:   And I went into somewhat detail involving

18   the membership in a gang.

19   Would you be able to decide any issue of fact solely on

20   the facts and not the influenced unnecessarily by gang

21   membership?

22   PROSPECTIVE JUROR:   Yes.

23   THE COURT:   Have you or any close associate been

24   affected by gang violence?

25   PROSPECTIVE JUROR:   No.

Jury Selection

1    THE COURT:  Under the Constitution, the defendant need
2    not testify in the case, and his silence cannot be used against
3    him.
4          Can you follow this instruction?
5          PROSPECTIVE JUROR:  Yes.
6          THE COURT:  Okay.  It is the government's obligation to
7    prove the charges beyond a reasonable doubt.  It is not the
8    defendant's obligation to prove his innocence.
9          Do you agree with that?
10         PROSPECTIVE JUROR:  Yes.
11         THE COURT:  That is the underpinning of our criminal
12   justice system.
13         All right.  In evaluating the witness' testimony, would
14   you use the same tests regardless of whether the witness was a
15   law enforcement personnel or a lay witness?
16         PROSPECTIVE JUROR:  Yes.
17         THE COURT:  Have you or any family member ever been
18   charged with or convicted of a serious crime?
19         PROSPECTIVE JUROR:  No.
20         THE COURT:  And what about have you been a crime
21   victim?
22         PROSPECTIVE JUROR:  No.
23         THE COURT:  Have you ever been a party to a lawsuit
24   either as a plaintiff or a defendant?
25         PROSPECTIVE JUROR:  No.

1      THE COURT:  Have you been on jury duty before?

2      PROSPECTIVE JUROR:  I was.  I was picked.  However, it

3  was settled --

4      THE COURT:  Okay.

5      PROSPECTIVE JUROR:  -- before it even went to trial.

6      THE COURT:  So you didn't get to render a decision?

7      PROSPECTIVE JUROR:  Correct.

8      THE COURT:  Do you remember what kind of case it was?

9      PROSPECTIVE JUROR:  I believe it was civil.

10     THE COURT:  Okay.  Did you recognize any of the names

11  on the list of witnesses?

12     PROSPECTIVE JUROR:  No.

13     THE COURT:  Do you have any religious, philosophical or

14  moral beliefs that would make it difficult for you to sit in

15  judgment on another person?

16     PROSPECTIVE JUROR:  No.

17     THE COURT:  What is your source for news?

18     PROSPECTIVE JUROR:  The internet, CNN.com.

19     THE COURT:  Okay.  Will you follow the law that I give

20  you even if you disagree with it?

21     PROSPECTIVE JUROR:  Yes.

22     THE COURT:  Any reason you couldn't be fair?

23     PROSPECTIVE JUROR:  No.

24     THE COURT:  Okay.  Krystal Travis; is that correct?

25     PROSPECTIVE JUROR:  Yes.

1    THE COURT:  Where do you live?

2    PROSPECTIVE JUROR:  Calumet City.

3    THE COURT:  And how old are you?

4    PROSPECTIVE JUROR:  41.

5    THE COURT:  What is your educational background?

6    PROSPECTIVE JUROR:  Bachelor's in psychology.

7    THE COURT:  And what is your employment?

8    PROSPECTIVE JUROR:  HR operations manager.

9    THE COURT:  And what business or what type of business

10   is it?

11   PROSPECTIVE JUROR:  Recruiting, staffing.

12   THE COURT:  A staffing agency?

13   PROSPECTIVE JUROR:  Yeah, supporting a call center and

14   warehouse operations.

15   THE COURT:  Okay.  Are you married?

16   PROSPECTIVE JUROR:  Yes.

17   THE COURT:  What does your spouse do?

18   PROSPECTIVE JUROR:  Software engineer.

19   THE COURT:  Is any of your family employed in law

20   enforcement?

21   PROSPECTIVE JUROR:  No.

22   THE COURT:  Have you or as far as you know any of your

23   family ever had any dealings with either the Alcohol, Tobacco

24   and Firearm agency or the Chicago Police Department?

25   PROSPECTIVE JUROR:  No.

Jury Selection

1    THE COURT:  The case involves charges that include the
2    use of a firearm.
3          Do you have any feelings or beliefs regarding firearm
4    laws that would make it difficult for you to be fair and
5    impartial to either side in this case?
6          PROSPECTIVE JUROR:  No, I do not.
7          THE COURT:  Okay.  And I talked about a membership in a
8    gang.  No issue of fact should be decided solely on the basis of
9    alleged membership in a gang.  Can you do that?  Can you follow
10   that instruction?
11         PROSPECTIVE JUROR:  Yes.
12         THE COURT:  Have you ever -- have you or your family
13   ever been affected by gang violence?
14         PROSPECTIVE JUROR:  No.
15         THE COURT:  Under the Constitution, the defendant need
16   not testify, and his silence cannot be used against him.
17         Do you have any basis to object to that?
18         PROSPECTIVE JUROR:  No.
19         THE COURT:  Okay.  It is the government's obligation to
20   prove the charges against the defendant beyond a reasonable
21   doubt and not his obligation to prove his innocence.
22         Can you apply that?
23         PROSPECTIVE JUROR:  Yes.
24         THE COURT:  Have you or your family member ever been
25   charged with or convicted of a serious crime?

1      PROSPECTIVE JUROR:   No.

2      THE COURT:   Have you been a crime victim?

3      PROSPECTIVE JUROR:   No.

4      THE COURT:   Have you ever been a party to a lawsuit,

5  either as a plaintiff or a defendant?

6      PROSPECTIVE JUROR:   No.

7      THE COURT:   Have you been on jury duty before?

8      PROSPECTIVE JUROR:   No.

9      THE COURT:   Did you recognize any of the names on the

10  list of witnesses?

11      PROSPECTIVE JUROR:   No.

12      THE COURT:   Do you have any religious, philosophical or

13  moral beliefs that would make it difficult for you to sit in

14  judgment on another person?

15      PROSPECTIVE JUROR:   No.

16      THE COURT:   What is your source of news?

17      PROSPECTIVE JUROR:   Mostly CNN.

18      THE COURT:   Will you follow the law that I give to you

19  even if you disagree with it?

20      PROSPECTIVE JUROR:   Yes.

21      THE COURT:   Any reason you couldn't be a fair and

22  impartial juror in this case?

23      PROSPECTIVE JUROR:   No.

24      THE COURT:   Okay, Sandra O'Malley.   Where do you live?

25      PROSPECTIVE JUROR:   Elmhurst.

1     THE COURT:  How old are you?

2     PROSPECTIVE JUROR:  55.

3     THE COURT:  What is your educational background?

4     PROSPECTIVE JUROR:  I have a master's degree.

5     THE COURT:  And in what area do you have your master's?

6     PROSPECTIVE JUROR:  Education.

7     THE COURT:  And what is your employment?

8     PROSPECTIVE JUROR:  I'm a second grade teacher.

9     THE COURT:  Are you married?

10    PROSPECTIVE JUROR:  Widowed.

11    THE COURT:  And what did your husband do before he

12  passed away?

13    PROSPECTIVE JUROR:  He was an accountant.

14    THE COURT:  Okay.  Any members of your family employed

15  in law enforcement?

16    PROSPECTIVE JUROR:  My ex brother-in-law is a chief of

17  police, and I'm currently dating a retired police officer who

18  also works part time for the police department.

19    THE COURT:  And what police department is that?

20    PROSPECTIVE JUROR:  North Riverside.

21    THE COURT:  Okay.  Now, this case was -- have you or

22  your family member ever had experience with either the good or

23  bad -- this is the first question -- with either the ATF or the

24  Chicago Police Department?

25    PROSPECTIVE JUROR:  I've never had experience with --

Jury Selection

1   THE COURT:  Okay.  So no negative or positive?

2   PROSPECTIVE JUROR:  With Chicago, no.

3   THE COURT:  Okay.  The case involves charges including

4   the use of a firearm.  Do you have any feelings or beliefs

5   including firearm laws that would make it difficult for you to

6   be impartial to either side in this case?

7   PROSPECTIVE JUROR:  I understand that the law is the

8   law.

9   THE COURT:  Okay.  So you would follow the law?

10  PROSPECTIVE JUROR:  I would follow the law.

11  THE COURT:  Okay.  I take it you and most people do

12  have obviously beliefs and feelings against firearm violence --

13  PROSPECTIVE JUROR:  Yes.

14  THE COURT:  -- so but you would apply the law?

15  PROSPECTIVE JUROR:  Yes.

16  THE COURT:  And -- okay.

17       Now, once again, the Constitution gives us the right to

18  associate with others.  There's nothing inherent, illegal or

19  wrongful in associating with a gang, and you should not decide

20  any fact solely due to gang membership.  Can you do that?

21  PROSPECTIVE JUROR:  I cannot decide solely on the

22  membership?

23  THE COURT:  Yeah.  In other words, we don't want the

24  fact that, say, a person is alleged to have been a member of a

25  gang.  Therefore, make it unnecessary for the government to

1   prove the case, see?

2         PROSPECTIVE JUROR:   Right.

3         THE COURT:   So that's basically what we're getting at.

4         Have you or any of your close friends or associates

5   ever been affected by gang violence?

6         PROSPECTIVE JUROR:   No.

7         THE COURT:   Okay.   Under the Constitution, a defendant

8   need not testify in the case, and his silence cannot be used

9   against him.   And it's the government's obligation to prove the

10  charges beyond a reasonable doubt, and it is not his obligation

11  to prove his innocence.

12        Do you agree with those principles of our justice

13  system?

14        PROSPECTIVE JUROR:   Yes.

15        THE COURT:   Okay.   In evaluating any witness'

16  testimony, you should use the same tests regarding what that

17  person's status is.

18        In other words, you should use the same tests to

19  evaluate the testimony of a police officer as you do when you

20  evaluate the testimony of any lay witness.   Can you do that?

21        PROSPECTIVE JUROR:   Yes.

22        THE COURT:   Has any member of your family -- you or a

23  member of your family ever been charged with or convicted of a

24  serious crime?

25        PROSPECTIVE JUROR:   No.

1       THE COURT:  Have you been a crime victim?

2       PROSPECTIVE JUROR:  No.

3       THE COURT:  Have you been a party in a lawsuit, either

4   as a plaintiff or a defendant?

5       PROSPECTIVE JUROR:  No.

6       THE COURT:  Have you been on jury duty before?

7       PROSPECTIVE JUROR:  No.

8       THE COURT:  Did you recognize any of the names on the

9   list of witnesses?

10      PROSPECTIVE JUROR:  No.

11      THE COURT:  Do you have any religious, philosophical or

12  moral beliefs that would make it difficult for you to sit in

13  judgment on another?

14      PROSPECTIVE JUROR:  No.

15      THE COURT:  What is your usual source for news?

16      PROSPECTIVE JUROR:  What is my usual -- what was it?

17  Source for news?  I'm sorry, could you repeat that, please?

18      THE COURT:  What is your -- how do you obtain your

19  news?

20      PROSPECTIVE JUROR:  Oh, usually the internet.

21      THE COURT:  Okay.  Will you follow the law that I give

22  you even if you might disagree with it?

23      PROSPECTIVE JUROR:  Yes.

24      THE COURT:  Any reason you couldn't be a fair and

25  impartial juror?

1      PROSPECTIVE JUROR:  I'm not sure because I'm dating

2  somebody who is in the police department.  I'm not sure that I

3  could -- I could try to be impartial but --

4      THE COURT:  Chicago Police Department?

5      PROSPECTIVE JUROR:  Pardon me?

6      THE COURT:  You're dating a person in a police

7  department?

8      PROSPECTIVE JUROR:  Yeah.  Not in Chicago, but in North

9  Riverside.

10      THE COURT:  I'm trying to figure out how that would --

11  are you talking about a perception or actual, you think you

12  couldn't be fair?

13      PROSPECTIVE JUROR:  Um...

14      THE COURT:  Or do you think you might be perceived

15  because you're dating a police officer?

16      PROSPECTIVE JUROR:  I -- I guess --

17      THE COURT:  They're two different things, you know,

18  obviously.

19      PROSPECTIVE JUROR:  I guess I would listen to the

20  facts, but I guess I do have some bias for the police.

21      THE COURT:  All right.  I'll excuse you.  Thank you.

22      Call one more.

23      THE CLERK:  Oksana Fedunyszyn, F-E-D-U-N-Y-S-Z-Y-N.

24      THE COURT:  I'm going to ask you can you pronounce for

25  me your name, please.

Jury Selection

1        PROSPECTIVE JUROR:  Oksana Fedunyszyn.

2        THE COURT:  Okay.  Fedunyszyn?

3        PROSPECTIVE JUROR:  Fedunyszyn.

4        THE COURT:  Fedunyszyn.

5        PROSPECTIVE JUROR:  Yes.

6        THE COURT:  Where do you live?

7        PROSPECTIVE JUROR:  In Chicago.

8        THE COURT:  And let me just ask you a question.  Is

9    Eastern European?

10        PROSPECTIVE JUROR:  Ukranian.

11        THE COURT:  Ukrainian, okay.  And what is your age?

12        PROSPECTIVE JUROR:  67 on Saturday.

13        THE COURT:  Almost happy birthday.  I just had a

14    birthday last week so...

15        PROSPECTIVE JUROR:  Happy birthday.

16        THE COURT:  Thank you.

17        What is your educational background?

18        PROSPECTIVE JUROR:  Bachelor's degree.

19        THE COURT:  In what area?

20        PROSPECTIVE JUROR:  Theater.

21        THE COURT:  And what is your occupation or business.

22        PROSPECTIVE JUROR:  Well, I have two careers.  I'm a

23    market researcher and an actor.

24        THE COURT:  Okay.  Let's take the actor.  What kind of

25    roles do you play?

1    PROSPECTIVE JUROR:  Various roles in theater, TV, film,

2    voiceover.

3    THE COURT:  Okay.  Are you married?

4    PROSPECTIVE JUROR:  Single.

5    THE COURT:  Okay.  Any member of your family employed

6    in law enforcement?

7    PROSPECTIVE JUROR:  No.

8    THE COURT:  Have you -- this case was investigated by

9    the ATF and the Chicago Police Department.

10    Have you had dealings with either one of those

11    agencies?

12    PROSPECTIVE JUROR:  With CPD.

13    THE COURT:  Alcohol, Tobacco and Firearms agency or the

14    Chicago Police Department, have you ever had any dealings with

15    either of those agencies?

16    PROSPECTIVE JUROR:  With CPD.

17    THE COURT:  What type of experience have you had?

18    PROSPECTIVE JUROR:  I was attacked twice.

19    THE COURT:  The police investigated, was that...

20    PROSPECTIVE JUROR:  I called them.

21    THE COURT:  Okay.

22    PROSPECTIVE JUROR:  They did a report.

23    THE COURT:  Okay.  Do you have -- is there anything

24    about that experience you had with the Chicago Police Department

25    that would make it difficult for you to be impartial?  They were

1    one of the investigating agencies in this case.  Were you
2    treated all right?
3            PROSPECTIVE JUROR:  I was treated very nicely.
4            THE COURT:  Okay.  So there's nothing negative -- you
5    don't have any negative views of the Chicago police that might
6    affect you in this case?
7            PROSPECTIVE JUROR:  No.
8            THE COURT:  Okay.  All right.  The case involves the
9    use of firearms.
10           Do you have any feelings or beliefs regarding firearm
11   laws that would make it difficult for you to be impartial?
12           PROSPECTIVE JUROR:  I hate firearms in the civil case,
13   but I think I could be impartial.
14           THE COURT:  Okay.  That's all we ask.
15           Now, the other area I need to question you about is
16   gang membership.  There may be evidence that the defendant was a
17   member of a group that's classified as a gang.
18           Now, the Constitution gives us all the right to
19   associate generally with whoever we want to.
20           My only question is because there's nothing inherently
21   illegal or wrongful in associating with the gang, no issue in
22   the case should be decided solely on the basis that the person
23   might have been alleged to be a member of a gang.
24           Can you follow that?
25           PROSPECTIVE JUROR:  I hope so.

1    THE COURT:  All we want to know is it's the
2  government's obligation to prove the case, and they can't prove
3  it just by saying the person's a gang member, therefore, you
4  should find him guilty.
5    They have to produce evidence beyond a reasonable doubt
6  that the defendant is guilty of what's charged.
7    Do you understand what I'm asking you?
8    PROSPECTIVE JUROR:  I understand that.
9    THE COURT:  Can you do that?
10    PROSPECTIVE JUROR:  I say I hope so --
11    THE COURT:  All right.
12    PROSPECTIVE JUROR:  -- only because my 90-year-old
13  uncle was attacked and robbed at gunpoint by a gang member.
14    MR. HYMAN:  Your Honor, Your Honor, may we have a
15  sidebar?
16    THE COURT:  All right.
17    No, I don't -- do we need her?
18    MR. HYMAN:  No.
19    THE COURT:  You can stay there.  You can stay in your
20  seat.  We don't need you.
21    (At sidebar outside the hearing of the venire.)
22    MR. HYMAN:  I think, Judge, that for her to keep
23  expressing her position as to -- as to --
24    THE COURT:  Well, the next question would have been
25  about gang violence, and she's already answered that question.

Jury Selection

1        MR. HYMAN:  Also, she said she was a victim.

2        THE COURT:  All right.  I'll excuse her, how is that?

3   Would that solve the problem?

4       (In open court in the hearing of the jury.)

5        THE COURT:  I think based on your response, I'll excuse

6   you.

7       (Prospective juror exits the courtroom.)

8        THE CLERK:  Cameron Smith.

9        THE COURT:  You are Cameron Smith; is that correct?

10       PROSPECTIVE JUROR:  Yes.

11       THE COURT:  Where do you live?

12       PROSPECTIVE JUROR:  Chicago, Illinois.

13       THE COURT:  How old are you?

14       PROSPECTIVE JUROR:  34.

15       THE COURT:  What is your educational background?

16       PROSPECTIVE JUROR:  I have a master's in education and

17   communication disorders.

18       THE COURT:  And what is your occupation or business?

19       PROSPECTIVE JUROR:  Speech language pathologist for

20   Chicago Public Schools.

21       THE COURT:  Okay.  Are you married?

22       PROSPECTIVE JUROR:  Nope, single.

23       THE COURT:  Is any of your family, as far as you know,

24   employed in law enforcement?

25       PROSPECTIVE JUROR:  No.

1    THE COURT:  Have you had any experiences, negative or
2  positive, with either the Alcohol, Tobacco & Firearm agency and
3  the Chicago Police Department?
4    PROSPECTIVE JUROR:  I have filed two police reports to
5  the Chicago PD for my car being broken into, and then another
6  man attacked my car while I was in it.
7    THE COURT:  Okay.  Those are your --
8    PROSPECTIVE JUROR:  They were both positive.  It was
9  fine.
10    THE COURT:  So was your experience with the Chicago
11  Police Department okay then?
12    PROSPECTIVE JUROR:  Yeah.
13    THE COURT:  Okay.  So you don't have any negative
14  feelings?
15    PROSPECTIVE JUROR:  No.
16    THE COURT:  Okay.  Basically I want to know if you had
17  any -- I know -- I understand you would have -- you might have
18  had experiences, but they were positive or at least not
19  negative; is that correct?
20    PROSPECTIVE JUROR:  Yeah.
21    THE COURT:  Okay.  Now, the case involves the charges
22  and the use of firearm.  Do you have any feelings or beliefs
23  concerning firearm laws that would make it difficult or
24  impossible for you to be impartial to either side in this case?
25    PROSPECTIVE JUROR:  No.

1        THE COURT:  Okay.  And again, about gang membership,

2   can you leave that out as far as a deciding factor in any fact

3   issue?

4        PROSPECTIVE JUROR:  Yeah, I believe so.

5        THE COURT:  Have you ever been affected by gang

6   violence?

7        PROSPECTIVE JUROR:  Indirectly.  I work at schools, and

8   there have been times I've been on, like, lockdown with gang

9   violence in the neighborhood, but nothing directly.

10        THE COURT:  Okay.  Now, would that experience affect

11   you in this case?

12        PROSPECTIVE JUROR:  I don't believe so.

13        THE COURT:  Okay.  Under the Constitution, the

14   defendant need not testify, and his silence cannot be used

15   against him.  And it's the government's obligation to prove the

16   case beyond a reasonable doubt, not his obligation to prove his

17   innocence.

18        Can you follow those principles?

19        PROSPECTIVE JUROR:  Yeah.

20        THE COURT:  In evaluating the witness' testimony, will

21   you use the same tests or you will be instructed you should use

22   the same tests in evaluating the testimony of a lay witness as

23   you use in a law enforcement official and vice versa.

24        Can you do that?

25        PROSPECTIVE JUROR:  Yes.

1    THE COURT:  You or any family member have been charged

2  or convicted of a serious crime?

3    PROSPECTIVE JUROR:  No.

4    THE COURT:  Have you been a crime victim?

5    PROSPECTIVE JUROR:  Other than the --

6    THE COURT:  Okay, the two instances --

7    PROSPECTIVE JUROR:  Yeah.

8    THE COURT:  -- where you --

9    PROSPECTIVE JUROR:  Other than that, no.

10    THE COURT:  Have you ever been a party to a lawsuit as

11  either a plaintiff or a defendant?

12    PROSPECTIVE JUROR:  No.

13    THE COURT:  Have you been on jury duty before?

14    PROSPECTIVE JUROR:  No.

15    THE COURT:  Did you recognize any of the names in the

16  list of witnesses?

17    PROSPECTIVE JUROR:  I work with a family, the

18  Segovianos, that may be related, but I didn't recognize the two

19  names that you did list.

20    THE COURT:  What was the name?

21    PROSPECTIVE JUROR:  Segoviano was the last name.  The

22  two names I did not --

23    THE COURT:  Yeah.

24    PROSPECTIVE JUROR:  -- recognize, but the family name.

25    THE COURT:  You recognized that, the family name, but

1    you're not --

2            PROSPECTIVE JUROR:  But I do not know if they are of

3    any relation.

4            THE COURT:  Okay.  Thank you.  Let's see, where was I?

5            Do you hold any religious, philosophical or moral

6    beliefs that would make it difficult for you to sit in judgment

7    of another person?

8            PROSPECTIVE JUROR:  No.

9            THE COURT:  What is your source for news, usual source

10   for news?

11           PROSPECTIVE JUROR:  MSNBC News or the Times.

12           THE COURT:  All right.  Will you follow the law I give

13   you even if you disagree with it?

14           PROSPECTIVE JUROR:  Yes.

15           THE COURT:  Any reason you couldn't be fair?

16           PROSPECTIVE JUROR:  No.

17           THE COURT:  Thank you.

18           Next gentleman is Nicholas Sevenich.  Did I pronounce

19   it right?

20           PROSPECTIVE JUROR:  Yes.

21           THE COURT:  Where do you live?

22           PROSPECTIVE JUROR:  Yorkville.

23           THE COURT:  How old are you?

24           PROSPECTIVE JUROR:  20.

25           THE COURT:  What is your educational background?

1    PROSPECTIVE JUROR:  I will be a junior in college next

2 year.

3    THE COURT:  Where are you going?

4    PROSPECTIVE JUROR:  University of Iowa.

5    THE COURT:  Hawkeye, huh?

6    PROSPECTIVE JUROR:  Yep.

7    THE COURT:  Are you married?

8    PROSPECTIVE JUROR:  I am single, no.

9    THE COURT:  Okay.  What is your current occupation

10 or...

11    PROSPECTIVE JUROR:  I have a summer job.

12    THE COURT:  What is that?

13    PROSPECTIVE JUROR:  Menards warehouse distribution

14 center.

15    THE COURT:  Okay.  Do you have any family members in

16 law enforcement?

17    PROSPECTIVE JUROR:  Not currently, but my uncle is

18 retired.  He retired like a couple years ago.

19    THE COURT:  From where?

20    PROSPECTIVE JUROR:  North Aurora.

21    THE COURT:  Police department?

22    PROSPECTIVE JUROR:  Uh-huh.

23    THE COURT:  Have you ever had any dealings with either

24 the ATF or the Chicago Police Department?

25    PROSPECTIVE JUROR:  No.

Jury Selection

1    THE COURT:  The charges involve -- include the use of a
2    firearm.
3    Do you have any feelings or beliefs regarding firearm
4    laws that Would make it difficult for you to be impartial?
5    PROSPECTIVE JUROR:  No.
6    THE COURT:  How about gang membership, can you leave
7    that distinct as far as a factor -- a decisional factor?
8    PROSPECTIVE JUROR:  I can leave it out, yeah.
9    THE COURT:  Okay.  Have you ever been affected by gang
10   violence?
11   PROSPECTIVE JUROR:  No.
12   THE COURT:  Under the Constitution, the defendant need
13   not testify, and his silence can't be used against him.  It's
14   the government's obligation to prove him guilty beyond a
15   reasonable doubt and not his obligation to prove his innocence.
16   Do you have any objection to that?
17   PROSPECTIVE JUROR:  No.
18   THE COURT:  In evaluating the testimony of the witness,
19   you should use the same tests regarding the believability of a
20   witness, whether they're a law enforcement or a lay witness.
21   Can you do that?
22   PROSPECTIVE JUROR:  Yes.
23   THE COURT:  Have you or any family member been charged
24   with or convicted of a serious crime?
25   PROSPECTIVE JUROR:  No.

Jury Selection

1      THE COURT:  What about crime victim?  Have you ever

2  been a crime victim?

3      PROSPECTIVE JUROR:  No.

4      THE COURT:  Have you ever been a party to a lawsuit,

5  either as a plaintiff or a defendant?

6      PROSPECTIVE JUROR:  No.

7      THE COURT:  Have you been on jury duty before?

8      PROSPECTIVE JUROR:  No.

9      THE COURT:  Did you recognize any of the names on the

10  list of witnesses?

11      PROSPECTIVE JUROR:  No.

12      THE COURT:  Do you hold any religious, philosophical or

13  moral beliefs that would make it difficult for you to sit in

14  judgment of another?

15      PROSPECTIVE JUROR:  No.

16      THE COURT:  What is your source for the news?

17      PROSPECTIVE JUROR:  I don't really watch the news, so,

18  like, probably just my phone, I'd say.

19      THE COURT:  In other words, the internet?

20      PROSPECTIVE JUROR:  Yes.

21      THE COURT:  Will you follow the law as I give it to you

22  even if you disagree with it?

23      PROSPECTIVE JUROR:  Yes.

24      THE COURT:  Any reason you couldn't be fair?

25      PROSPECTIVE JUROR:  No.

1    THE COURT:  The next if lady is Marilyn Rebus?

2    PROSPECTIVE JUROR:  Yes, sir.

3    THE COURT:  Where do you live?

4    PROSPECTIVE JUROR:  Lisle, Illinois.

5    THE COURT:  How old are you?

6    PROSPECTIVE JUROR:  65.

7    THE COURT:  What is your educational background?

8    PROSPECTIVE JUROR:  I have a bachelor's in education.

9    THE COURT:  And what is your business or occupation?

10   PROSPECTIVE JUROR:  I'm a retired schoolteacher.

11   THE COURT:  What did you teach when you taught?

12   PROSPECTIVE JUROR:  Third grade.

13   THE COURT:  Okay.  Are you married?

14   PROSPECTIVE JUROR:  Yes.

15   THE COURT:  What does your spouse do?

16   PROSPECTIVE JUROR:  He's a project manager for a phone

17 company.

18   THE COURT:  Okay.  Any of your family in law

19 enforcement?

20   PROSPECTIVE JUROR:  I have in two brothers-in-laws that

21 are retired.

22   THE COURT:  Where?

23   PROSPECTIVE JUROR:  In Broadview and somewhere down by

24 Kankakee.

25   THE COURT:  Okay.  Have you ever had any dealings with

1    the ATF or the Chicago Police Department?

2            PROSPECTIVE JUROR:   No.

3            THE COURT:   When I say dealing, you know -- okay.

4            Now, the case involves charges include the use of a

5    firearm.   Do you have any feelings or beliefs regarding firearm

6    laws that would make it difficult for you to be impartial?

7            PROSPECTIVE JUROR:   No.

8            THE COURT:   What about gang membership?

9            PROSPECTIVE JUROR:   No.

10           THE COURT:   Okay.   And have you ever been affected by

11   gang violence?

12           PROSPECTIVE JUROR:   No.

13           THE COURT:   Under the Constitution, the defendant need

14   not testify, and his silence can't be used against him.   And

15   it's the government obligation to prove him guilty beyond a

16   reasonable doubt, not his obligation to prove his innocence.

17           Do you have any objection to that?

18           PROSPECTIVE JUROR:   No.

19           THE COURT:   Will you evaluate the witnesses' testimony

20   using the same tests whether they're law enforcement or lay

21   witnesses?

22           PROSPECTIVE JUROR:   Yes.

23           THE COURT:   Have you or your family member ever been

24   charged with or convicted of a serious crime?

25           PROSPECTIVE JUROR:   No.

1    THE COURT:  Have you been a crime victim?

2    PROSPECTIVE JUROR:  No.

3    THE COURT:  Have you been a party to a lawsuit, either

4  as a plaintiff or a defendant?

5    PROSPECTIVE JUROR:  No.

6    THE COURT:  Have you been on jury duty before?

7    PROSPECTIVE JUROR:  Yes.

8    THE COURT:  When and where?

9    PROSPECTIVE JUROR:  DuPage County about five years ago.

10    THE COURT:  What kind of case did you hear?

11    PROSPECTIVE JUROR:  It was a civil case.

12    THE COURT:  Somebody was asking for money damages?

13    PROSPECTIVE JUROR:  Yes.

14    THE COURT:  Was it an accident or something...

15    PROSPECTIVE JUROR:  Yes.  They fell on someone's

16  property.

17    THE COURT:  All right.  Did you actually decide the

18  case?

19    PROSPECTIVE JUROR:  Yes.

20    THE COURT:  Okay.  Did you recognize any of the names

21  on the list of witnesses?

22    PROSPECTIVE JUROR:  Yes.

23    THE COURT:  Who?

24    PROSPECTIVE JUROR:  Steve Greene, but I know it's very

25  common.  I don't know if it's...

Jury Selection

1   THE COURT:  Your Steve Greene, do you know what any --
2   what would -- I said that could be common.  What is your Steve
3   Greene, do you know?
4   PROSPECTIVE JUROR:  He was -- he taught band to my
5   children.
6   THE COURT:  I assume that's probably not the same one.
7   MS. BABU:  No.
8   THE COURT:  Okay.  That's not the same one.
9   PROSPECTIVE JUROR:  Okay.  Just wanted to check.
10  THE COURT:  Okay.  That's good.
11  PROSPECTIVE JUROR:  There's many.
12  THE COURT:  Thank you.  You were listening.
13  PROSPECTIVE JUROR:  Yes.
14  THE COURT:  Let's see, where was I?
15  Do you have any religious, philosophical or moral
16  beliefs that would make it difficult for you to sit in judgment
17  of another person?
18  PROSPECTIVE JUROR:  No.
19  THE COURT:  What is your source of news?
20  PROSPECTIVE JUROR:  The television stations.
21  THE COURT:  Which one specifically do you watch?
22  PROSPECTIVE JUROR:  Usually Channel 5.
23  THE COURT:  All right.  Will you follow the law that I
24  give to you even if you disagree with it?
25  PROSPECTIVE JUROR:  Yes.

1    THE COURT:  Any reason you couldn't be fair?

2    PROSPECTIVE JUROR:  No.

3    THE COURT:  All right.  Would you pass that back to

4  Mr. Johnson?

5    PROSPECTIVE JUROR:  Yes.

6    THE COURT:  All right.  I take it you're a Blackhawk

7  fan.

8    PROSPECTIVE JUROR:  Trying to be.

9    THE COURT:  It wasn't that great of a year, though, was

10  it?

11    PROSPECTIVE JUROR:  No.

12    THE COURT:  All right.  You are Willie Johnson; is that

13  right, sir?

14    PROSPECTIVE JUROR:  Yes.

15    THE COURT:  Where do you live?

16    PROSPECTIVE JUROR:  Homewood.

17    THE COURT:  How old are you?

18    PROSPECTIVE JUROR:  55.

19    THE COURT:  What is your educational background?

20    PROSPECTIVE JUROR:  I have a year and a half of

21  college.

22    THE COURT:  And what is your business or occupation?

23    PROSPECTIVE JUROR:  I'm a retired correctional

24  lieutenant from Stateville Correctional Center.

25    THE COURT:  Which one did you work at?

1       PROSPECTIVE JUROR:  I worked at --

2       THE COURT:  Stateville?

3       PROSPECTIVE JUROR:  Joliet, Stateville.

4       THE COURT:  Okay, Stateville.  When did you retire?

5       PROSPECTIVE JUROR:  It's coming up on two years in July

6   now.

7       THE COURT:  Okay.  Are you married?

8       PROSPECTIVE JUROR:  Yes.

9       THE COURT:  What does your wife do?

10      PROSPECTIVE JUROR:  She's retired -- well, she's a

11  consultant before she retired.

12      THE COURT:  What type of consultant was she?

13      PROSPECTIVE JUROR:  That, I still don't know to this

14  day.

15    (Laughter.)

16      THE COURT:  Any of your family in law enforcement?

17      PROSPECTIVE JUROR:  My son also, he worked at

18  Stateville.  He no longer works there now.

19      THE COURT:  Okay.  So the two of you, you and your

20  son --

21      PROSPECTIVE JUROR:  Yes.

22      THE COURT:  -- were correctional guards --

23      PROSPECTIVE JUROR:  Yes.

24      THE COURT:  -- officers.

25      Have you had dealings with the ATF and the Chicago

1  Police Department -- or the Chicago Police Department?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  Okay.  You don't have any experiences with

4  either of those groups that are negative in your mind; is that

5  right?

6          PROSPECTIVE JUROR:  No.  Actually I worked -- in the

7  military, I was with U.S. Customs.

8          THE COURT:  Okay.  Now, the case involves the use of

9  firearms.  Do you have any feelings or beliefs regarding firearm

10 laws that would make it difficult for you to be impartial?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  What about gang membership, can you leave

13 that out as a deciding factor?  What we're saying is that you

14 shouldn't decide a fact solely on the fact -- the fact that,

15 say, a person may be alleged to have been a gang member.

16         In other words, the government still has the obligation

17 to prove the case.  They can't just say he's a gang member, and

18 therefore, he should find -- will you do that, make sure the

19 government proves him guilty?

20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  All right.  Have you ever been affected by

22 gang violence?

23         PROSPECTIVE JUROR:  Not directly.

24         THE COURT:  Okay.  What about you've been in

25 Stateville.  And I assume they've probably had some gang members

1   down there.

2         Is there anything about your experiences there which

3   would make it -- which would affect you in here?

4         PROSPECTIVE JUROR:  No, they didn't give me any issues.

5   I treated everybody the same, so I had no issues.

6         THE COURT:  Okay.  Will you use same test in evaluating

7   the testimony of law enforcement as you use for other witnesses

8   and vice versa?

9         PROSPECTIVE JUROR:  Yes.

10        THE COURT:  Have you or a family member ever been

11  charged with or convicted of a serious crime?

12        PROSPECTIVE JUROR:  No.

13        THE COURT:  What about have you been a crime victim?

14        PROSPECTIVE JUROR:  Besides having two vehicles stolen

15  from me, no.

16        THE COURT:  Okay.  In other words, those are -- did you

17  ever get them back?

18        PROSPECTIVE JUROR:  No, never seen them.

19        THE COURT:  I imagine they've been taken down and...

20        PROSPECTIVE JUROR:  Yeah.

21        THE COURT:  Let's see, where was I?

22        Have you been a party to a lawsuit, either as a

23  plaintiff or a defendant?

24        PROSPECTIVE JUROR:  No.

25        THE COURT:  Okay.  Have you been on jury duty before?

1    PROSPECTIVE JUROR:  Yes.

2    THE COURT:  When and where?

3    PROSPECTIVE JUROR:  I was here.  Right after 9-11,

4 there was a Chicago police officer that got thrown off the plane

5 for being unruly on the plane.

6    THE COURT:  And there was a case -- he brought a case

7 against some -- or a civil suit or --

8    PROSPECTIVE JUROR:  It was against a steward.  He was

9 unruly towards a steward.

10    THE COURT:  All right.  And so you actually

11 participated in the jury case and made a decision?

12    PROSPECTIVE JUROR:  Yes.

13    THE COURT:  And that was back in 2001?

14    PROSPECTIVE JUROR:  Yeah, probably about, yeah, after

15 that.

16    THE COURT:  Okay.  Did you recognize any of the names

17 on the list of witnesses?

18    PROSPECTIVE JUROR:  No.

19    THE COURT:  Do you hold any religious, philosophical or

20 moral beliefs that would make it difficult for you to sit in

21 judgment of another person?

22    PROSPECTIVE JUROR:  No.

23    THE COURT:  What is your source of news?

24    PROSPECTIVE JUROR:  Fox.

25    THE COURT:  Okay.  Will you follow the law that I give

1   to you even if you disagree with it?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Any reason you couldn't be fair?

4           PROSPECTIVE JUROR:  No.

5           THE COURT:  All right.  The next person is Corey

6   Barnett?

7           PROSPECTIVE JUROR:  Yes, sir.

8           THE COURT:  Where do you live, sir?

9           PROSPECTIVE JUROR:  Shorewood.

10          THE COURT:  And how old are you?

11          PROSPECTIVE JUROR:  I'm 27.

12          THE COURT:  What is your educational background?

13          PROSPECTIVE JUROR:  High school diploma.

14          THE COURT:  And what is your business or occupation?

15          PROSPECTIVE JUROR:  I am a steam plant engineer.

16          THE COURT:  And what does that involve?

17          PROSPECTIVE JUROR:  Oh, I run high-pressure boilers

18  for Argonne National Lab.

19          THE COURT:  Okay.  Are you married?

20          PROSPECTIVE JUROR:  No.

21          THE COURT:  All right.  Any of your family employed in

22  law enforcement?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  Have you ever had any dealings with the

25  Alcohol, Tobacco and Firearm agency or the Chicago Police

1    Department?

2           PROSPECTIVE JUROR: No.

3           THE COURT: Now, the case involves charges that include

4    the use of firearms. Do you have any feelings or beliefs

5    regarding firearm laws that would make it difficult for you to

6    be impartial?

7           PROSPECTIVE JUROR: No, sir.

8           THE COURT: Okay. What about gang membership, can you

9    leave that out of the equation as far as deciding the case?

10          PROSPECTIVE JUROR: Yes.

11          THE COURT: All right. Have you ever been affected by

12    gang violence?

13          PROSPECTIVE JUROR: No.

14          THE COURT: Under the Constitution, the defendant need

15    not testify in a case, and his silence can't be used against

16    him. And it's the government's obligation to prove the charges

17    against him beyond a reasonable doubt, and it's not his

18    obligation to prove his innocence.

19          Can you follow those instructions?

20          PROSPECTIVE JUROR: Yes.

21          THE COURT: All right. Will you evaluate a witness'

22    testimony using the same tests regardless whether the witness is

23    law enforcement or a lay witness?

24          PROSPECTIVE JUROR: Yes.

25          THE COURT: Have you or any family member been charged

1   with or convicted of a serious crime?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  Have you been a crime victim?

4          PROSPECTIVE JUROR:  I was mugged two years ago, but I

5   didn't pursue anything with it so...

6          THE COURT:  Okay.  That happened -- where did that

7   happen?

8          PROSPECTIVE JUROR:  Outside a bar in Joliet.

9          THE COURT:  Okay.  Nothing about that experience would

10  affect you in this case?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  Have you ever been a party to a lawsuit

13  either as a plaintiff or a defendant?

14         PROSPECTIVE JUROR:  No.

15         THE COURT:  Have you been on jury duty before?

16         PROSPECTIVE JUROR:  No.

17         THE COURT:  Did you recognize any of the names on the

18  list of witnesses?

19         PROSPECTIVE JUROR:  No.

20         THE COURT:  Do you hold any relation, philosophical or

21  moral beliefs that would make it difficult for you to sit in

22  judgment of another person?

23         PROSPECTIVE JUROR:  No.

24         THE COURT:  What is your source for news?

25         PROSPECTIVE JUROR:  The Chicago Tribune newspaper and

1　NPR.

2　　　　THE COURT:　Okay.　Will you follow the law that I give

3　you even if you disagree with it?

4　　　　PROSPECTIVE JUROR:　Yes.

5　　　　THE COURT:　Any reason you couldn't be fair?

6　　　　PROSPECTIVE JUROR:　I don't believe so, no.

7　　　　THE COURT:　Thank you.

8　　　　The next gentleman is Brian Velo?

9　　　　PROSPECTIVE JUROR:　Velo.

10　　　　THE COURT:　Velo.

11　　　　PROSPECTIVE JUROR:　Good Morning, Your Honor.

12　　　　THE COURT:　Where do you live, sir?

13　　　　PROSPECTIVE JUROR:　I live in Evanston, Illinois.

14　　　　THE COURT:　How old are you?

15　　　　PROSPECTIVE JUROR:　38.

16　　　　THE COURT:　What is your educational background?

17　　　　PROSPECTIVE JUROR:　Bachelor's degree in business.

18　　　　THE COURT:　And what is your occupation or business?

19　　　　PROSPECTIVE JUROR:　Relate outsourcing.

20　　　　THE COURT:　What does that involve?

21　　　　PROSPECTIVE JUROR:　Companies come to us and ask us to

22　take over their real estate departments.

23　　　　THE COURT:　All right.　Are you married?

24　　　　PROSPECTIVE JUROR:　Yes, I am.

25　　　　THE COURT:　What does your spouse do?

1    PROSPECTIVE JUROR:   House mom, housewife.

2    THE COURT:   Has she worked?

3    PROSPECTIVE JUROR:   She has.   She worked for Blue Cross

4    Blue Shield and Accenture.

5    THE COURT:   Okay.   Any member of your family in law

6    enforcement?

7    PROSPECTIVE JUROR:   No.

8    THE COURT:   Have you personally ever had any dealings

9    with the ATF or the Chicago Police Department?

10    PROSPECTIVE JUROR:   No to the ATF, but yes, to the

11    Chicago Police Department.

12    THE COURT:   What dealings -- let me ask, first of all,

13    were they negative or positive or...

14    PROSPECTIVE JUROR:   Unfortunately, a negative

15    experience.   My home was broken into while my wife and I were

16    sleeping.   We lived in the City at the time.   And our home was

17    broken into, and the police department was very slow to respond.

18    THE COURT:   All right.   Now, would that -- now, the

19    Chicago Police Department is one of the investigative agencies

20    on this.

21    Would that in any way, shape or form affect your

22    ability to be fair in this case to both sides?

23    PROSPECTIVE JUROR:   Hopefully not if they did a better

24    job investigating than they did for me.

25    THE COURT:   Okay.

Jury Selection

1   PROSPECTIVE JUROR:  Because, they never -- Your Honor,
2   they never caught the person so ...
3       THE COURT:  All right.  But your point is that you will
4   evaluate the testimony as to its believability; is that right?
5       PROSPECTIVE JUROR:  Yes.
6       THE COURT:  But you wouldn't decide the case against
7   the government solely because the Chicago Police Department is
8   involved in the case?
9       PROSPECTIVE JUROR:  Correct.
10      THE COURT:  All right.  Now, the case involves charges
11  including the use of firearms.
12      Do you have any feelings and beliefs regarding firearm
13  laws that would make it difficult for you to be impartial?
14      PROSPECTIVE JUROR:  No.
15      THE COURT:  What about gang membership?
16      PROSPECTIVE JUROR:  Well, if the gang is a violent
17  gang, yes.
18      THE COURT:  Let me -- well, I don't want to get too
19  much in detail, but I'm tried to explain a little bit what I'm
20  talking about.  I'm not saying that gang membership is not
21  relevant -- may not be -- may not be irrelevant, but the fact
22  that it could be irrelevant.
23      And the point of the matter is that it's the
24  government's obligation to prove the underlying facts beyond a
25  reasonable doubt, and it shouldn't -- they shouldn't be able to

1   short-circuit their proof obligations because they can charge

2   that a person is a member of a gang.

3          Am I making myself reasonably clear?

4          PROSPECTIVE JUROR:  You are.  But if they can prove

5   that he was part of a gang and part of a violent gang, then

6   violence could be a factor in deciding my decision.

7          MR. HYMAN:  Your Honor, may we have a sidebar?

8          THE COURT:  I'll excuse you, sir.  I think that will --

9   thank you.

10         Call one more.

11         THE CLERK:  David Mei, M-E-I.

12         THE COURT:  Good morning.  Your name is David Mei?

13         PROSPECTIVE JUROR:  Mei like the month.

14         THE COURT:  Mei, okay.

15         Where do you live, sir?

16         PROSPECTIVE JUROR:  Oak Park.

17         THE COURT:  How old are you?

18         PROSPECTIVE JUROR:  28.

19         THE COURT:  What's your educational background?

20         PROSPECTIVE JUROR:  Bachelor's.

21         THE COURT:  In what?

22         PROSPECTIVE JUROR:  Music performance.

23         THE COURT:  Okay.  And what is your business or

24   occupation?

25         PROSPECTIVE JUROR:  I'm in commercial insurance.

1        THE COURT:  All right.  Are you married?

2        PROSPECTIVE JUROR:  Yes.

3        THE COURT:  What does your spouse do?

4        PROSPECTIVE JUROR:  She's a Kindergarten teacher.

5        THE COURT:  All right.  Any members of your family in

6   law enforcement?

7        PROSPECTIVE JUROR:  My wife's uncle, yes.

8        THE COURT:  What was he -- what was his position?

9        PROSPECTIVE JUROR:  He was maybe a lieutenant with the

10  Aurora Police Department.

11       THE COURT:  Okay.  He's retired now, it sounds like?

12       PROSPECTIVE JUROR:  Yeah, he's retired.

13       THE COURT:  Now, the case was investigated by the ATF

14  and the Chicago Police Department.

15       Have you had dealings with either of these agencies?

16       PROSPECTIVE JUROR:  No.

17       THE COURT:  Okay.  The case involves charges that

18  include the use of firearms.  Do you have feelings or beliefs

19  regarding firearm laws that would make it difficult for you to

20  be impartial on either side on this case?

21       PROSPECTIVE JUROR:  No.

22       THE COURT:  And what about gang membership, can you

23  leave that out of the equation as far as it being a deciding

24  factor?

25       PROSPECTIVE JUROR:  Yes.

Jury Selection

1    THE COURT:  All right.  Have you ever been affected by

2    gang violence?

3    PROSPECTIVE JUROR:  Yes.  My wife's cousin was

4    assassinated here in Chicago.

5    THE COURT:  Okay.  When did that happen?

6    PROSPECTIVE JUROR:  This happened four months ago.

7    THE COURT:  Would that make it difficult for you to be

8    fair in this case?

9    PROSPECTIVE JUROR:  No.

10   THE COURT:  Okay.  Now, under the Constitution, the

11   defendant need not testify in a case, and his silence can't be

12   used against him.  And the government has the obligation to

13   prove the charges beyond a reasonable doubt, and it's not his

14   obligation to prove his innocence.

15   Do you have any objection to those --

16   PROSPECTIVE JUROR:  No.

17   THE COURT:  -- principles?

18   PROSPECTIVE JUROR:  No.

19   THE COURT:  Will you evaluate witnesses' testimony

20   using the same tests regardless of whether it's a law

21   enforcement personnel or a layman?

22   PROSPECTIVE JUROR:  Yeah.

23   THE COURT:  Have you or any family member ever been

24   charged with or convicted of a serious crime?

25   PROSPECTIVE JUROR:  No.

1    THE COURT:  Have you been a crime victim?

2    PROSPECTIVE JUROR:  No.

3    THE COURT:  Have you been a party to a lawsuit, either

4    as a plaintiff or a defendant?

5    PROSPECTIVE JUROR:  No.

6    THE COURT:  Have you been on jury duty before?

7    PROSPECTIVE JUROR:  Yes, 10 years ago in DuPage County.

8    THE COURT:  What kind of case did you hear?

9    PROSPECTIVE JUROR:

10   THE COURT:  You were called for jury duty?

11   PROSPECTIVE JUROR:  Yeah.

12   THE COURT:  Did you recognize any of the names in the

13   list of witnesses?

14   PROSPECTIVE JUROR:  No.

15   THE COURT:  Do you have any religious, philosophical or

16   moral beliefs that would make it difficult for you to sit in

17   judgment on another person?

18   PROSPECTIVE JUROR:  No.

19   THE COURT:  What is your source of news?

20   PROSPECTIVE JUROR:  The internet and NPR.

21   THE COURT:  Will you follow the law that I give to you

22   even if you disagree with it?

23   PROSPECTIVE JUROR:  Yes.

24   THE COURT:  Any reason you couldn't be a fair and

25   impartial juror in this case?

1        PROSPECTIVE JUROR:   No.

2        THE COURT:   All right.  I think maybe we have a

3   sidebar.  Can you step over here, sir, for just a minute?

4      (At sidebar outside the hearing of the venire.)

5        THE COURT:   Can you expound a little bit on this -- the

6   matter with the gang killing your brother?

7        PROSPECTIVE JUROR:   Yeah.  So my wife's cousin, he was

8   in a gang.  And then from there, he left, he was cleaning up --

9   he was cleaning up his life.  And then when he was in his car,

10  he was assassinated.

11       THE COURT:   It happened four months ago?

12       PROSPECTIVE JUROR:   Yeah, roughly.

13       THE COURT:   You said you could -- that would not affect

14  your judgment in this case; is that correct?

15       PROSPECTIVE JUROR:   Yeah, it would not affect.

16       THE COURT:   Have any questions?

17       MR. PISSETZKY:   Mr. Mei -- now, I completely lost my

18  train of thought.  Were you close to the man?

19       PROSPECTIVE JUROR:   I wasn't, but my wife was.

20       MR. PISSETZKY:   Okay.  And did she go -- did you guys

21  go to the funeral?

22       PROSPECTIVE JUROR:   Yes.

23       MR. PISSETZKY:   Was she affected by it?

24       PROSPECTIVE JUROR:   Yes.

25       MR. PISSETZKY:   And obviously she's your wife, right?

1    PROSPECTIVE JUROR:   Uh-huh.

2    MR. PISSETZKY:   So it affects the dynamics of the home?

3    PROSPECTIVE JUROR:   Yes, yeah.

4    MR. PISSETZKY:   Okay.   So how is it that it's not going

5    to affect you here when it affects you at home?

6    PROSPECTIVE JUROR:   Well, I mean, it's just like it's I

7    didn't know him as closely as she did him.   So it's just like

8    it's a sad case, but I mean, like, I'm kind of removed from it.

9    But like, I mean, I feel sadness for them.   But it's just like

10   it's, I mean...

11   MR. PISSETZKY:   I'm sorry, go ahead.

12   PROSPECTIVE JUROR:   That's pretty much it.

13   MR. PISSETZKY:   So when you go home and you tell your

14   wife that you're here and you're going to hear a case about a

15   shooting with a gang member, is that not going to affect you?

16   PROSPECTIVE JUROR:   No.

17   THE COURT:   Okay.   Thank you.   You can take your seat

18   back there.

19   (In open court in the hearing of the jury.)

20   THE COURT:   I believe the next question I was going to

21   ask you is -- you said there isn't any reason you can't be a

22   fair and impartial juror.   Is that right, sir?

23   PROSPECTIVE JUROR:   No.

24   THE COURT:   Thank you.   Let's see, we go back to my

25   regular list.   I believe the next lady is Martha Avila?

1    PROSPECTIVE JUROR:   Yes.

2    THE COURT:   Where do you live, Ms. Avila?

3    PROSPECTIVE JUROR:   Zion.

4    THE COURT:   And how old are you?

5    PROSPECTIVE JUROR:   49.

6    THE COURT:   What is your educational background?

7    PROSPECTIVE JUROR:   High school.

8    THE COURT:   And what is your occupation or business?

9    PROSPECTIVE JUROR:   Planning manager for a contract

10   manufacturer.

11   THE COURT:   And what is the contract man -- what type

12   of business is it?

13   PROSPECTIVE JUROR:   We do blending and filling for

14   health and beauty aids.

15   THE COURT:   Okay.  Are you married?

16   PROSPECTIVE JUROR:   Yes.

17   THE COURT:   What does your spouse do?

18   PROSPECTIVE JUROR:   He's in the paving industry.

19   THE COURT:   Anybody in your family employed in law

20   enforcement?

21   PROSPECTIVE JUROR:   No.

22   THE COURT:   Any attorneys in your family?

23   PROSPECTIVE JUROR:   No.

24   THE COURT:   Now, have you ever had dealings with the

25   ATF or the Chicago Police Department?

Jury Selection

1    PROSPECTIVE JUROR:  No.

2    THE COURT:  Now, the case involves the use of firearms.

3    Do you have any feelings or beliefs regarding firearm

4    laws that would make it difficult for you to be impartial to

5    either side in this case?

6    PROSPECTIVE JUROR:  No.

7    THE COURT:  And what about gang membership, can you

8    leave that out of the equation?

9    PROSPECTIVE JUROR:  No.

10   THE COURT:  Yes, you can, or...

11   PROSPECTIVE JUROR:  I cannot leave it out.

12   THE COURT:  The question is that could be a deciding

13   factor to you; is that right?

14   PROSPECTIVE JUROR:  Yes.

15   THE COURT:  Okay.  I'll excuse you.  Thank you.

16   (Prospective juror exits the courtroom.)

17   THE CLERK:  Leah Lasky.

18   THE COURT:  You are Leah Lasky?

19   PROSPECTIVE JUROR:  Yes.

20   THE COURT:  Where do you live?

21   PROSPECTIVE JUROR:  Kenilworth.

22   THE COURT:  How old are you?

23   PROSPECTIVE JUROR:  35.

24   THE COURT:  What is your educational background?

25   PROSPECTIVE JUROR:  I have a master's in education.

1    THE COURT:  And what is your business or occupation?

2    PROSPECTIVE JUROR:  I am a stay-at-home mom of three

3  toddlers.

4    THE COURT:  When you -- prior to being a stay-at-home

5  mom, what did you do?

6    PROSPECTIVE JUROR:  I cared for my children.

7    THE COURT:  Okay.  Prior to having children --

8    PROSPECTIVE JUROR:  Oh, oh.  I was a nanny.

9    THE COURT:  You were a what?

10    PROSPECTIVE JUROR:  A nanny.

11    THE COURT:  Okay.  Are you married?

12    PROSPECTIVE JUROR:  Yes.

13    THE COURT:  What does your spouse do?

14    THE DEFENDANT:  He's in sales.

15    THE COURT:  What does he sell?

16    PROSPECTIVE JUROR:  He sells food service to

17  corporations.

18    THE COURT:  All right.  Any of your family members

19  employed in law enforcement?

20    PROSPECTIVE JUROR:  No.

21    THE COURT:  All right.  Have you had personally any

22  dealings with the ATF or the Chicago Police Department?

23    PROSPECTIVE JUROR:  No.

24    THE COURT:  The case involves the use of firearms.  Do

25  you have feelings concerning firearm laws that would make it

Jury Selection

1   difficult for you to be impartial in the case?

2           PROSPECTIVE JUROR:  I'm extremely against firearms.

3           THE COURT:  Pardon?

4           PROSPECTIVE JUROR:  I'm against firearms.

5           THE COURT:  I know, but would that -- would you be able

6   to follow my instructions as to the law?

7           PROSPECTIVE JUROR:  Yeah, yes.

8           THE COURT:  Okay.  So you don't feel so strongly that

9   you would automatically find a person guilty because they were

10  using, for example, a firearm?

11          PROSPECTIVE JUROR:  I actually would.  I'm against

12  them.

13          THE COURT:  Okay.  I'll excuse you.  Thank you.

14      (Prospective juror exits the courtroom.)

15          THE COURT:  The next one.

16          THE CLERK:  Eric Sweeney.

17          THE COURT:  You are Eric Sweeney; is that correct?

18          PROSPECTIVE JUROR:  Yes.

19          THE COURT:  Where do you live, sir?

20          PROSPECTIVE JUROR:  Chicago.

21          THE COURT:  How old are you?

22          PROSPECTIVE JUROR:  35.

23          THE COURT:  What is your educational background?

24          PROSPECTIVE JUROR:  Master's in computer science.

25          THE COURT:  And what is your business or occupation?

1    PROSPECTIVE JUROR:   Software engineer.

2    THE COURT:   And do you work for a specific company?

3    PROSPECTIVE JUROR:   It's a health tech company.

4    THE COURT:   Okay.   Are you married?

5    PROSPECTIVE JUROR:   No, single.

6    THE COURT:   Any of your family employed in law

7    enforcement?

8    PROSPECTIVE JUROR:   No.

9    THE COURT:   Have you ever had any experiences with the

10   ATF or the Chicago Police Department?

11   PROSPECTIVE JUROR:   No.

12   THE COURT:   Okay.   The case involves the use of

13   firearms.

14   Do you have any feelings or beliefs regarding firearm

15   laws that would make it difficult for you to be impartial?

16   PROSPECTIVE JUROR:   No.

17   THE COURT:   And what about gang membership, can you

18   again as a -- the fact that a person may be associated with a

19   gang does not relieve the government from the obligation of

20   proving beyond a reasonable doubt.   Can you do that?

21   PROSPECTIVE JUROR:   Yes.

22   THE COURT:   Have you ever been associated with gang

23   violence?

24   PROSPECTIVE JUROR:   No.

25   THE COURT:   Now, under the Constitution, the defendant

1   need not testify, and his silence cannot be used against him.

2   And the government has the obligation to prove the charges

3   against him beyond a reasonable doubt, and it is not his

4   obligation to prove his innocence.

5           Can you follow those principles?

6           PROSPECTIVE JUROR:  Yes.

7           THE COURT:  In evaluating a witness' testimony, will

8   you use the same tests regardless of whether the witness is a

9   law enforcement official or a lay witness?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Have you or a family member ever been

12  charged with or convicted of a serious crime?

13          PROSPECTIVE JUROR:  No.

14          THE COURT:  How about were you a crime victim or have

15  you been a crime victim?

16          PROSPECTIVE JUROR:  Car broken into like 10 years ago

17  but --

18          THE COURT:  Have you ever been a party to a lawsuit

19  either as a plaintiff or a defendant?

20          PROSPECTIVE JUROR:  No.

21          THE COURT:  Have you been on jury duty before?

22          PROSPECTIVE JUROR:  I was called, like, five years ago,

23  but they settled before selection.

24          THE COURT:  Did you recognize any of the names on the

25  list of witnesses?

Jury Selection

1    PROSPECTIVE JUROR:  No.

2    THE COURT:  Do you have any religious, philosophical or

3  moral beliefs that would make it difficult for you to sit in

4  judgment on another person?

5    PROSPECTIVE JUROR:  No.

6    THE COURT:  What is your source of news?

7    PROSPECTIVE JUROR:  Internet, NPR.

8    THE COURT:  Will you follow the law that I give to you

9  even if you disagree with it?

10    PROSPECTIVE JUROR:  Yes.

11    THE COURT:  Any reason you couldn't be fair?

12    PROSPECTIVE JUROR:  No.

13    THE COURT:  Thank you.  Could you pass.  The next lady

14  is Ella Hansen?

15    PROSPECTIVE JUROR:  Yes.

16    THE COURT:  Where do you live?

17    PROSPECTIVE JUROR:  Frankfort, Illinois.

18    THE COURT:  And how old are you?

19    PROSPECTIVE JUROR:  64.

20    THE COURT:  What is your educational background?

21    PROSPECTIVE JUROR:  Some college.  I did not graduate.

22    THE COURT:  And what is your business or occupation?

23    PROSPECTIVE JUROR:  I'm working part-time as a cashier

24  at Dollar Tree.

25    THE COURT:  All right.  Have you had other occupations

1  during your life?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  What other kind of businesses or work did

4  you do?

5          PROSPECTIVE JUROR:  It's a long time.  I was a

6  stay-at-home mom.  I also worked as cashier.

7          THE COURT:  Okay.  Are you married?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  What does your spouse do?

10          PROSPECTIVE JUROR:  He's retired.

11          THE COURT:  From what?

12          PROSPECTIVE JUROR:  He was a sleep -- sleep

13  technologist.

14          THE COURT:  What is that?

15          PROSPECTIVE JUROR:  Mainly apnea.  They --

16          THE COURT:  He studied that or he would have worked

17  with people?

18          PROSPECTIVE JUROR:  He, you know, read the scores

19  and --

20          THE COURT:  Okay.

21          PROSPECTIVE JUROR:  -- things like that.

22          THE COURT:  Okay.  Any member of your family employed

23  in law enforcement?

24          PROSPECTIVE JUROR:  No.

25          THE COURT:  What about have you ever had any specific

1  dealings with the Chicago Police Department or the Alcohol,

2  Tobacco & Firearms agency?

3        PROSPECTIVE JUROR:  Chicago police.

4        THE COURT:  What type of experience have you had with

5  them?

6        PROSPECTIVE JUROR:  No arrests.  It was, you know --

7        THE COURT:  You got a ticket or something?

8        PROSPECTIVE JUROR:  No.  Well --

9        THE COURT:  Let me ask this.  Have you ever had any

10  negative experiences with the Chicago Police Department?

11        PROSPECTIVE JUROR:  Negative and positive.  It wasn't

12  terribly negative.  It wasn't terribly negative.  It was I

13  got -- as a kid, I took part -- I was invited to a shaving cream

14  fight, and they threw me in the car and took me to the police

15  station.

16        THE COURT:  Okay.  That wouldn't affect you today,

17  would it?

18        PROSPECTIVE JUROR:  Not terribly.

19      (Laughter.)

20        THE COURT:  All right.  How about the use of firearms?

21  Do you have any feelings or beliefs regarding firearm laws that

22  would make it difficult for you to be impartial?

23        PROSPECTIVE JUROR:  I don't think so, but I really

24  don't have good feelings about how easy it is for people to get

25  firearms.

1    THE COURT:  Yeah, but that's the law.

2    PROSPECTIVE JUROR:  Yeah.

3    THE COURT:  Now, we all agree that -- you know, a lot

4  of people agree the law should be changed, and it's not changed.

5  But that doesn't change.

6    PROSPECTIVE JUROR:  I understand.

7    THE COURT:  But we have to apply the law in the court.

8  Would you have any problem with applying the law?

9    PROSPECTIVE JUROR:  I don't think so.

10    THE COURT:  All right.  Now, what about gang

11  membership?  Again, a person has a constitutional right to

12  associate generally with whoever a person wants to, and the only

13  thing is that if a person has been designated as a member of a

14  gang or alleged to be a member of a gang, it could, if a person

15  is so motivated against gangs that they would say, okay, if he's

16  a gang member, therefore, he has to be guilty, therefore, the

17  government doesn't need to prove the charges.

18    Now, we're looking for people who will take that

19  position, but will require the government to prove the charges

20  even though it may come out that a person is a member of a gang.

21  Can you do that?

22    PROSPECTIVE JUROR:  I understand it, yes.

23    THE COURT:  Okay.  Can you do that, I guess, is the

24  question.

25    PROSPECTIVE JUROR:  Yes.

1    THE COURT: All right. Have you ever been affected by
2  gang violence yourself?
3    PROSPECTIVE JUROR: Only -- not directly. Just by, you
4  know, you can't go there because there's violation.
5    THE COURT: All right. Under the Constitution, the
6  defendant need not testify, and his silence can't be used
7  against him. And it's the government's obligation to prove him
8  guilty beyond a reasonable doubt, and it's not his obligation to
9  prove his innocence.
10    Do you have any objection to those basic tenets of our
11  criminal justice system?
12    PROSPECTIVE JUROR: No.
13    THE COURT: Will you evaluate a witness' testimony
14  using the same tests whether the person is a police officer, for
15  example, or a lay witness?
16    PROSPECTIVE JUROR: Yes.
17    THE COURT: Have you or a family member ever been
18  charged with or convicted of a serious crime?
19    PROSPECTIVE JUROR: Family members, DUI.
20    THE COURT: You have family member of DUI, is that --
21    PROSPECTIVE JUROR: Yeah.
22    THE COURT: How long ago did it happen?
23    PROSPECTIVE JUROR: 10 years.
24    THE COURT: All right. That wouldn't affect your
25  ability to be -- to be fair in this case, would it?

Jury Selection

1    PROSPECTIVE JUROR:  No.

2    THE COURT:  All right.

3    PROSPECTIVE JUROR:  Don't think so.

4    THE COURT:  Have you been a crime victim?

5    PROSPECTIVE JUROR:  I got -- I lost some purses over

6    the years, one time at knifepoint.  The house I grew up was

7    broken in two, three times.  Otherwise, no.

8    THE COURT:  All right.  Have you ever been a party to a

9    lawsuit, either as a plaintiff, the person bringing the suit, or

10   the defendant, the person who is being sued?

11   PROSPECTIVE JUROR:  I don't know if post-divorce

12   fighting counts, but otherwise, no.

13   THE COURT:  You were in a divorce?

14   PROSPECTIVE JUROR:  My parents were in divorce.

15   THE COURT:  Oh, your parents were in divorce.

16   PROSPECTIVE JUROR:  And I had to go in --

17   THE COURT:  All right.

18   PROSPECTIVE JUROR:  -- but I don't presume that case.

19   THE COURT:  You haven't been -- you were not a party to

20   that.

21   Your parents had a divorce and you were perhaps a

22   witness.  Is that essentially it?

23   PROSPECTIVE JUROR:  Yeah, yes, something like that.

24   THE COURT:  Have you been on jury duty before?

25   PROSPECTIVE JUROR:  I was -- I was called to jury duty.

1    I was not on a jury.

2          THE COURT:  All right.  Did you recognize any of the

3    names on the list of witnesses that I read?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Do you hold any religious, philosophical or

6    moral beliefs that would make it difficult for you to sit in

7    judgment of another person?

8          PROSPECTIVE JUROR:  I guess not.

9          THE COURT:  What is your source for news?

10         PROSPECTIVE JUROR:  Usually CNN.

11         THE COURT:  Will you follow the law that I give to you

12   even if you disagree with it?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Any reason you couldn't be a fair and

15   impartial juror in this case?

16         PROSPECTIVE JUROR:  I don't think so.

17         THE COURT:  Thank you.  Would you pass to I believe

18   Delia Douglas.

19         MR. HYMAN:  Judge, can we have a sidebar?

20         THE COURT:  Yeah.

21     (At sidebar outside the hearing of the venire.)

22         MR. PISSETZKY:  Her answer about the gangs was very

23   hesitant and she was not --

24         THE COURT:  Well, the problem with the question is

25   nobody's in favor of gangs, and it makes it very difficult.  And

1  you just have to parse what she says.  That's up to you, you

2  know, if you think -- you know, think that it's a difficult

3  question.

4          MR. HYMAN:  I think the last response that she had as

5  to can you be fair, she said sort of I guess not, I think so,

6  maybe.  She sort of --

7          THE COURT:  That's why you get peremptories on it.

8  That's why you get peremptories.

9      (In open court in the hearing of the jury.)

10         THE COURT:  Okay.  The next lady is Delia Douglas; is

11  that correct?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Where do you live?

14         PROSPECTIVE JUROR:  Arlington Heights.

15         THE COURT:  How old are you?

16         PROSPECTIVE JUROR:  21.

17         THE COURT:  What is your educational background?

18         PROSPECTIVE JUROR:  I'm obtaining my bachelor's.

19         THE COURT:  That means you're still a student?

20         PROSPECTIVE JUROR:  Yes.  I'm going to be a senior.

21         THE COURT:  Where?

22         PROSPECTIVE JUROR:  Marquette.

23         THE COURT:  Okay.  Are you employed this summer in

24  between?

25         PROSPECTIVE JUROR:  Yes.  I have an internship right

1    now.

2            THE COURT:  What are you interning in?

3            PROSPECTIVE JUROR:  With the park district in a speech

4    pathology office.

5            THE COURT:  Okay.  What is your major?  What are you

6    studying?

7            PROSPECTIVE JUROR:  Speech pathology and audiology.

8            THE COURT:  Are you married?

9            PROSPECTIVE JUROR:  No.

10           THE COURT:  Any of your family employed in law

11   enforcement?

12           PROSPECTIVE JUROR:  I have five cousins and my uncle's

13   an attorney.

14           THE COURT:  Where?

15           PROSPECTIVE JUROR:  Chicago and New York.

16           THE COURT:  All around?

17           PROSPECTIVE JUROR:  Yeah, they're all around.

18           THE COURT:  All right.  Have you personally ever had

19   any dealings with the ATF, Alcohol, Tobacco and Firearm agency,

20   which is a federal agency, and the Chicago Police Department?

21           PROSPECTIVE JUROR:  No.

22           THE COURT:  All right.  The case involves charges

23   including the use of a firearm.  Do you have any feelings or

24   beliefs regarding firearm laws that would make it difficult for

25   you to be impartial to either side of this case?

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  All right.  And what about gang membership?

3          PROSPECTIVE JUROR:  Yes.  I would be biased towards

4     the...

5          THE COURT:  You would be -- you would find it

6     impossible to decide this case without using the -- basically

7     the question is, you know, the government has the obligation to

8     prove beyond a reasonable doubt, and the mere fact that a person

9     is a member of a gang is not itself illegal and doesn't nec --

10    so it should not relieve the government the obligation of

11    proving the case.  Can you do that?

12         PROSPECTIVE JUROR:  Yes, I understand that, but I think

13    it would be more difficult.  I have a bias.

14         THE COURT:  I'll excuse you.  Thank you.

15         PROSPECTIVE JUROR:  Thank you.

16      (Prospective juror exits the courtroom.)

17         THE CLERK:  Andrea McKendrick.

18         THE COURT:  You are Andrea McKendrick?

19         PROSPECTIVE JUROR:  Andrea, yeah.

20         THE COURT:  Where do you live?

21         PROSPECTIVE JUROR:  Elmhurst.

22         THE COURT:  How old are you?

23         PROSPECTIVE JUROR:  34.

24         THE COURT:  What is your educational background?

25         PROSPECTIVE JUROR:  I have a master's in reading.

Jury Selection

1    THE COURT:  And what is your business or occupation?

2    PROSPECTIVE JUROR:  I'm a high school psychology and

3    geography teacher.

4    THE COURT:  All right.  Are you married?

5    PROSPECTIVE JUROR:  Yes.

6    THE COURT:  What does your spouse do?

7    PROSPECTIVE JUROR:  A high school science teacher.

8    THE COURT:  All right.  Anybody in your family employed

9    in law enforcement?

10    PROSPECTIVE JUROR:  No.

11    THE COURT:  Have you ever had any dealings with the ATF

12    or the Chicago Police Department?

13    PROSPECTIVE JUROR:  No.

14    THE COURT:  Now, the case involves the use -- the

15    charge of firearms.  Do you have any feelings or beliefs

16    regarding firearm laws that would make it difficult or

17    impossible for you to be fair and impartial?

18    PROSPECTIVE JUROR:  No.

19    THE COURT:  Now, there may be evidence introduced in

20    the case the defendant may be a member of a group that can be

21    classified as a gang, and the Constitution gives him the right

22    to associate with others.

23    There's nothing inherently illegal or wrongful in

24    associating with a gang.  You should not decide any issue of

25    fact solely due to alleged gang membership.  Can you do that?

Jury Selection

1          PROSPECTIVE JUROR:   Yes.

2          THE COURT:   Have you ever been affected by gang

3    violence?

4          PROSPECTIVE JUROR:   No.

5          THE COURT:   Under the Constitution, a defendant need

6    not testify in the case, and his silence can't be used against

7    him, and the government has the obligation to prove the charges

8    beyond a reasonable doubt.   It is not the defendant's obligation

9    to prove his innocence.   Can you apply these facts --

10          PROSPECTIVE JUROR:   Yes.

11          THE COURT:   -- principles?

12          Can you evaluate a witness' testimony using the same

13    tests regardless of whether the witness is a law enforcement

14    official or a lay witness?

15          PROSPECTIVE JUROR:   Yes.

16          THE COURT:   Have you or your family member been charged

17    with or convicted of a serious crime?

18          PROSPECTIVE JUROR:   No.

19          THE COURT:   Have you been a crime victim?

20          PROSPECTIVE JUROR:   No.

21          THE COURT:   Have you ever been a party to a lawsuit,

22    either as a plaintiff or a defendant?

23          PROSPECTIVE JUROR:   No.

24          THE COURT:   Have you been on jury duty before?

25          PROSPECTIVE JUROR:   No.

Jury Selection

1    THE COURT:  Do you recognize any of the names on the
2  list of witnesses?
3    PROSPECTIVE JUROR:  No.
4    THE COURT:  Do you have any religious, philosophical or
5  moral beliefs that would make it difficult for you to sit in
6  judgment on another?
7    PROSPECTIVE JUROR:  No.
8    THE COURT:  What is your source for news?
9    PROSPECTIVE JUROR:  CNN.
10    THE COURT:  Will you follow the law that I give to you
11  even if you disagree with it?
12    PROSPECTIVE JUROR:  Yes.
13    THE COURT:  Any reason you can't be fair?
14    PROSPECTIVE JUROR:  I do struggle with eyewitness
15  testimony based on my psychology background.  I struggle to
16  trust it at times.
17    THE COURT:  Well, I mean, that's you... as long as you
18  use the same tests in evaluating the witnesses' testimony.  You
19  can't pick and choose.
20    And so basically what we want to make sure is that you
21  use the same -- well, first of all, you'll be instructed of what
22  different factors you should consider in evaluating a witness'
23  testimony, and you should use those because that's the law.  And
24  but you should use the same ones regardless of who's doing what.
25    PROSPECTIVE JUROR:  Yes.

1    THE COURT:  Okay.  Can you do that?

2    PROSPECTIVE JUROR:  Yeah.

3    THE COURT:  I think what we'll do, while the lawyers

4  are considering the matter, we'll take a 10-minute recess.

5  Please, you folks return to your seats up here and everybody

6  else return by 20 after 12:00 and the lawyers may then consider.

7    (Recess at 12:10 p.m., until 12:26 p.m.)

8    THE CLERK:  All rise.

9    THE COURT:  Ms. Reyes, Mr. Sevenich, Ms. McCracken,

10  Mr. Sweeney and Ms. McKendrick will be excused.  Thank you.

11    What should they do?

12    THE CLERK:  Everyone that was dismissed can go back to

13  the second floor where you started.

14    MR. PISSETZKY:  Judge, Your Honor, may we approach?

15    THE COURT:  I think I missed one.  Did I say --

16    MR. PISSETZKY:  16?

17    THE COURT:  Just a minute, let me.  Oh, excuse me,

18  Mr. Mei is excused.  I'm sorry.

19    Then there -- so there should be six.  Travis, Rebus,

20  Johnson, Barnett, Hansen, Smith.  Is that everybody?  Is that

21  six?  Would you all rise and be sworn, please.

22    (Jury members sworn.)

23    THE COURT:  Would you folks get in the back row and

24  call six more.

25    (Venire sworn.)

1    THE CLERK:  Colleen McBrady, Melanie Saunders, Chrystal

2  Lee, Bonnie Kwasny, Lisa Wilson and Frank Onesto.

3    THE COURT:  The first lady is Colleen McBrady?

4    PROSPECTIVE JUROR:  Yes.

5    THE COURT:  Where do you live?

6    PROSPECTIVE JUROR:  Frankfort, Illinois.

7    THE COURT:  Pardon.

8    PROSPECTIVE JUROR:  Frankfort Illinois.

9    THE COURT:  How old are you?

10    PROSPECTIVE JUROR:  22.

11    THE COURT:  What is your educational background?

12    PROSPECTIVE JUROR:  I have a bachelor's in special

13  education.

14    THE COURT:  And what is your business or occupation?

15    PROSPECTIVE JUROR:  I'm a special education teacher.

16    THE COURT:  Where do you teach?

17    PROSPECTIVE JUROR:  Lincoln-Way High School.

18    THE COURT:  Are you married?

19    PROSPECTIVE JUROR:  No.

20    THE COURT:  Any of your family employed in law

21  enforcement?

22    PROSPECTIVE JUROR:  An uncle -- an uncle who was

23  retired.

24    THE COURT:  Wait a minute.  Somehow you --

25    PROSPECTIVE JUROR:  Oh.  An uncle, he's retired at the

1    Las Vegas Police Department.

2            THE COURT:  All right.  Any attorneys in your family?

3            PROSPECTIVE JUROR:  Sorry?

4            THE COURT:  Any attorneys, lawyers in your family, I

5    guess?

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  All right.  Have you ever had any dealings

8    with either the Alcohol, Tobacco and Firearms agency, which is a

9    federal agency, and the Chicago Police Department?

10           PROSPECTIVE JUROR:  No.

11           THE COURT:  All right.  The case involves charges

12   including the use of firearms.

13           Do you have any feelings or beliefs regarding firearm

14   laws that would make it difficult for you to be impartial?

15           PROSPECTIVE JUROR:  No, no.

16           THE COURT:  All right.  Now, the evidence may --

17   introduced in the case, the defendant may be a member of a group

18   that can be classified as a gang.

19           The Constitution gives us the right to associate with

20   others.  There's nothing inherently illegal or wrongful in

21   associating with a gang.  You should not decide any issue in

22   fact solely due to the alleged gang membership.  Can you do

23   that?

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Have you ever personally been affected by

1   gang violence or, you know, close friends?

2           PROSPECTIVE JUROR:  No.

3           THE COURT:  Okay.  Under the Constitution, the

4   defendant need not testify in the case, and his silence can't be

5   used against him.  And it's the government's obligation to prove

6   the charges against the defendant beyond a reasonable doubt.  It

7   is not his obligation to prove he is innocent.

8           Do you have any strong feelings about these principles

9   of our criminal justice system?

10          PROSPECTIVE JUROR:  No.

11          THE COURT:  In evaluating the witnesses' testimony,

12  will you use the same tests regardless of whether the witness is

13  a law enforcement official or a lay witness?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  Have you or your family member ever been

16  charged with or convicted of a serious crime?

17          PROSPECTIVE JUROR:  No.

18          THE COURT:  Have you been a crime victim?

19          PROSPECTIVE JUROR:  No.

20          THE COURT:  Have you ever been a party to a lawsuit,

21  either as a plaintiff or a defendant?

22          PROSPECTIVE JUROR:  No.

23          THE COURT:  Have you been on jury duty before?

24          PROSPECTIVE JUROR:  No.

25          THE COURT:  Did you recognize any of the names on the

1    list of witnesses?

2            PROSPECTIVE JUROR:   No.

3            THE COURT:   Do you have any religious, philosophical or

4    moral beliefs that would make it difficult for you to sit in

5    judgment on another person?

6            PROSPECTIVE JUROR:   No.

7            THE COURT:   What is your source for news?

8            PROSPECTIVE JUROR:   Fox News or Skimm news.

9            THE COURT:   Will you follow the law that I give to you

10   even if you disagree with it?

11           PROSPECTIVE JUROR:   No.

12           THE COURT:   Any reason you can't be fair?

13           PROSPECTIVE JUROR:   No.

14           THE COURT:   Thank you.   The next lady is Melanie

15   Sauders?

16           PROSPECTIVE JUROR:   Correct.

17           THE COURT:   Where do you live, Ms. Sauders?

18           PROSPECTIVE JUROR:   Bartlett.

19           THE COURT:   How old are you?

20           PROSPECTIVE JUROR:   24.

21           THE COURT:   What is your educational background?

22           PROSPECTIVE JUROR:   I am currently obtaining my

23   master's in applied behavior analysis.

24           THE COURT:   And what is your business or occupation?

25           PROSPECTIVE JUROR:   During the school year, I work as a

1   behavioral interventionalist at a therapeutic day school, and

2   over the summer, I run a special needs summer camp.

3           THE COURT:  Okay.  Are you married?

4           PROSPECTIVE JUROR:  No.

5           THE COURT:  Have you ever had any dealings with either

6   the ATF or the Chicago Police Department?

7           PROSPECTIVE JUROR:  No.

8           THE COURT:  Now, the case involves the use of firearms.

9   Do you have feelings and beliefs regarding the firearm laws that

10  would make it difficult or impossible for you to be fair and

11  impartial to both sides?

12          PROSPECTIVE JUROR:  No.

13          THE COURT:  And the evidence introduced that the

14  defendant may be a member of a gang.  That in itself, there's

15  nothing wrong with that, and the case should not be decided

16  solely on the basis of gang membership.

17          But the government must prove the charges beyond a

18  reasonable doubt.  Can you do that?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  All right.  Have you ever been -- have you

21  ever had any -- been affected by gang violence?

22          PROSPECTIVE JUROR:  No.

23          THE COURT:  Okay.  Under the Constitution, the

24  defendant need not testify, and his silence can't be used

25  against him.  It's the government's obligation to prove him

1    guilty beyond a reasonable doubt, and it's not his obligation to
2    prove his innocence.

3            Can you follow those principles?

4            PROSPECTIVE JUROR:   Yes.

5            THE COURT:   In evaluating a witness' testimony, will
6    you use the same tests regardless of whether the witness is a
7    law enforcement official or a lay witness?

8            PROSPECTIVE JUROR:   Yes.

9            THE COURT:   Have you or a family member ever been
10   charged with or convicted of a serious crime?

11           PROSPECTIVE JUROR:   No.

12           THE COURT:   Have you been a crime victim yourself?

13           PROSPECTIVE JUROR:   No.

14           THE COURT:   Have you ever been a party to a lawsuit,
15   either as the plaintiff, the person bringing the suit, or a
16   lawyer (sic), the person who's being sued?

17           PROSPECTIVE JUROR:   No.

18           THE COURT:   Have you been on jury duty before?

19           PROSPECTIVE JUROR:   No.

20           THE COURT:   Did you recognize any of the names on the
21   list of witnesses?

22           PROSPECTIVE JUROR:   No.

23           THE COURT:   Do you have any religious, philosophical or
24   moral beliefs that would make it difficult for you to sit in
25   judgment of another person?

Jury Selection

1      PROSPECTIVE JUROR:   No.

2      THE COURT:   What is your source for news?

3      PROSPECTIVE JUROR:   The internet.

4      THE COURT:   And will you follow the law that I give to

5  you even if you disagree with it?

6      PROSPECTIVE JUROR:   Yes.

7      THE COURT:   Any reason you couldn't be fair?

8      PROSPECTIVE JUROR:   No.

9      THE COURT:   All right.   The next person is Lee

10  Chrystal?  Is it Chrystal or Chrystal?

11      PROSPECTIVE JUROR:   Bonnie Kwasny.

12      THE COURT:   Oh, okay.   That's all right.   I'll just...

13  Kwasny is your name, Bonnie?

14      PROSPECTIVE JUROR:   Uh-huh.

15      THE COURT:   Okay.   And where do you live?

16      PROSPECTIVE JUROR:   Elk Grove Village, Illinois.

17      THE COURT:   What is your age?

18      PROSPECTIVE JUROR:   63.

19      THE COURT:   What is your educational background?

20      PROSPECTIVE JUROR:   Diploma in nursing.

21      THE COURT:   And your occupation or business?

22      PROSPECTIVE JUROR:   I'm a registered nurse in

23  healthcare.

24      THE COURT:   Are you married?

25      PROSPECTIVE JUROR:   Divorced.

1      THE COURT:  All right.  What does your former husband
2   do or did he do?

3      PROSPECTIVE JUROR:  Firefighter, paramedic.

4      THE COURT:  Okay.  All right.  Is anybody in your
5   family employed in law enforcement.

6      PROSPECTIVE JUROR:  No.

7      THE COURT:  Have you personally ever had any dealings
8   with the ATF or the Chicago Police Department?

9      PROSPECTIVE JUROR:  No.

10      THE COURT:  The case involves the use of firearms.  Do
11   you have any feelings or beliefs regarding firearm laws that
12   would make it difficult for you to be fair and impartial?

13      PROSPECTIVE JUROR:  No.

14      THE COURT:  And what about gangs?  There's nothing
15   inherently or illegal or wrongful in associating with a gang.
16   You should not decide any issue of fact solely due to gang
17   membership.

18      Can you do that?

19      PROSPECTIVE JUROR:  Yes.

20      THE COURT:  All right.  Have you ever personally or
21   close associates been affected by gang violence?

22      PROSPECTIVE JUROR:  My son in high school was in a
23   fight with alleged gang members.

24      THE COURT:  How long ago was that?

25      PROSPECTIVE JUROR:  He's in his 30s now.  He was 18.

1    THE COURT:  All right.  Would that affect your
2  ability --
3    PROSPECTIVE JUROR:  No.
4    THE COURT:  -- to be fair in this case?  Okay.  Thank
5  you.
6    Under the Constitution, the defendant need not testify
7  and his the silence can't be used against him, and the
8  government must prove the charges against him beyond a
9  reasonable doubt, and it's not his obligation to prove his
10 innocence.
11    Can you do that?
12    PROSPECTIVE JUROR:  Yes.
13    THE COURT:  Can you evaluate the testimony using the
14 same tests, whether it's a law enforcement official or a lay
15 witness?
16    PROSPECTIVE JUROR:  Yes.
17    THE COURT:  Have you or a family member ever been
18 charged with or convicted of a serious crime?
19    PROSPECTIVE JUROR:  No.
20    THE COURT:  Have you been a crime victim?
21    PROSPECTIVE JUROR:  No.
22    THE COURT:  Have you ever been a party to a lawsuit,
23 either as a plaintiff or a defendant?
24    PROSPECTIVE JUROR:  No.
25    THE COURT:  Have you been on jury duty before?

1          PROSPECTIVE JUROR:   Not selected.

2          THE COURT:   Okay.   Do you -- did you recognize any of

3     the names on the --

4          PROSPECTIVE JUROR:   No.

5          THE COURT:   -- list of witnesses?

6          Do you have any religious, philosophical or moral

7     beliefs that would make it difficult for you to sit in judgment

8     of another person?

9          PROSPECTIVE JUROR:   No.

10         THE COURT:   What is your source for news?

11         PROSPECTIVE JUROR:   WGN, CNN.

12         THE COURT:   Will you follow the law that I give to you

13    even if you disagree with it?

14         PROSPECTIVE JUROR:   Yes.

15         THE COURT:   Any reason you couldn't be fair?

16         PROSPECTIVE JUROR:   No.

17         THE COURT:   Okay.   Now, the next lady, is it Chrystal

18    Lee?

19         PROSPECTIVE JUROR:   Chrystal Lee.

20         THE COURT:   Chrystal Lee?

21         PROSPECTIVE JUROR:   Yes.

22         THE COURT:   Ms. Lee, where do you live?

23         PROSPECTIVE JUROR:   I live in Crete, Illinois.

24         THE COURT:   How old are you?

25         PROSPECTIVE JUROR:   55.

Jury Selection

1     THE COURT:  What is your educational background?

2     PROSPECTIVE JUROR:  I have an AA in design.

3     THE COURT:  All right.  And what is your business or

4  occupation?

5     PROSPECTIVE JUROR:  I'm self-employed.

6     THE COURT:  Can you speak just a little --

7     PROSPECTIVE JUROR:  Can you hear me?  Self-employed.

8     THE COURT:  Okay.  What do you do or what is your

9  occupation?

10     PROSPECTIVE JUROR:  I do ride shares or other gig

11  economy jobs.

12     THE COURT:  All right.  Somewhat like Uber or something

13  along those lines?

14     PROSPECTIVE JUROR:  Uber, Lyft and several others.

15     THE COURT:  Okay.  Are you married?

16     PROSPECTIVE JUROR:  Single.

17     THE COURT:  Okay.  Is there any member of your family

18  employed in law enforcement?

19     PROSPECTIVE JUROR:  Yes.

20     THE COURT:  Who?

21     PROSPECTIVE JUROR:  One of my cousin's wives, she's

22  with the Chicago Police Department.

23     THE COURT:  All right.  Are there any attorneys in your

24  family?

25     PROSPECTIVE JUROR:  Yes.

Jury Selection

1    THE COURT:   How many?  Who?

2    PROSPECTIVE JUROR:  One.  Another cousin's wife.  She's

3 an attorney in St. Louis.  I think she practices civil rights

4 law.

5    THE COURT:   Okay.  This case was investigated by the

6 ATF and the Chicago Police Department.

7    Have you had any dealings with either agency?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:   Okay.  The case involves charges include

10 the use of a firearm.  Do you have any feelings or beliefs

11 regarding firearm laws that would make it difficult for you to

12 be impartial in this case?

13    PROSPECTIVE JUROR:  No.

14    THE COURT:   How about gang membership, can you -- would

15 you -- if there is evidence or allegations that a defendant is a

16 member of a gang, would you still require the government to

17 prove allegations beyond a reasonable doubt?

18    PROSPECTIVE JUROR:  Yes.

19    THE COURT:   Okay.  Have you ever been personally or

20 close family affected by gang violence?

21    PROSPECTIVE JUROR:  No.

22    THE COURT:   Okay.  So just to -- you hesitated a little

23 bit.

24    Now, it's a difficult question, but gang membership, in

25 and of itself, is not illegal.  So a person has the right and

1  all we're -- the question is whether or not if a lot of people

2  don't think gang membership is a good thing, which is neither

3  here nor there, but all we want to make sure is you would not --

4  because there may be evidence that a defendant or allegations

5  the defendant is a member of a gang should not relieve the

6  government of the obligation to prove the charges beyond a

7  reasonable doubt, and that's what we're -- what I want to make

8  sure the jurors understand that they're not to let the

9  government off the hook because -- well, you know, can you do

10 that?

11         PROSPECTIVE JUROR:  I do understand that the government

12 has to prove the case, but I think my knowledge of his

13 affiliation or membership in a gang might color my --

14         THE COURT:  Well, that's --

15         PROSPECTIVE JUROR:  -- opinion.

16         THE COURT:  Okay.  So you think you might be affected

17 so that you couldn't --

18         PROSPECTIVE JUROR:  Be, yeah, completely impartial.

19         THE COURT:  I'll excuse you.  Thank you.

20         THE CLERK:  Angela shell left hander.

21         PROSPECTIVE JUROR:  Same spot?

22         THE COURT:  You are Angela Schlender?

23         PROSPECTIVE JUROR:  Schlender, right.

24         THE COURT:  Where do you live?

25         PROSPECTIVE JUROR:  Lake Zurich Illinois.

1          THE COURT:  How old are you?

2          PROSPECTIVE JUROR:  46.

3          THE COURT:  What is your educational background?

4          PROSPECTIVE JUROR:  Master's in education, minor in

5   Spanish.

6          THE COURT:  And what is your occupation?

7          PROSPECTIVE JUROR:  Teacher.

8          THE COURT:  What do you teach?

9          PROSPECTIVE JUROR:  Fourth grade.

10         THE COURT:  Okay.  Are you married?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  What does your spouse do?

13         PROSPECTIVE JUROR:  Special ed teacher.

14         THE COURT:  All right.  Any of your family in law

15  enforcement?

16         PROSPECTIVE JUROR:  No.

17         THE COURT:  All right.  Have you ever had any dealings

18  with the ATF or the Chicago Police Department?

19         PROSPECTIVE JUROR:  No.

20         THE COURT:  All right.  The case involves the use of

21  firearms.  Do you have any feelings or beliefs regarding firearm

22  laws that would make it difficult for you to be impartial?

23         PROSPECTIVE JUROR:  You know what, just as an educator,

24  it really scares me.  We just had an active shooter training

25  that really traumatized me.  So I don't know that I could be

1    100 percent unbiased towards that.  Just being honest.

2            My children, I have two kids.  One's in high school,

3    one's in college.  The one, when he was in middle school, there

4    was -- they had a hard lockdown.  A boy, you know, allegedly

5    brought a gun, and that really scared -- scared us as well.

6            THE COURT:  So you're not sure whether you could be

7    fair?

8            PROSPECTIVE JUROR:  Correct.

9            THE COURT:  I'll excuse you.  Thank you.

10           PROSPECTIVE JUROR:  Thank you.

11           THE CLERK:  Lissette Simental.

12           THE COURT:  You are Lissette Simental?

13           PROSPECTIVE JUROR:  Yes, hi.

14           THE COURT:  Did I pronounce it right?

15           PROSPECTIVE JUROR:  Simental.

16           THE COURT:  Simental?

17           PROSPECTIVE JUROR:  Yes.

18           THE COURT:  Okay.  Where do you live?

19           PROSPECTIVE JUROR:  Chicago.

20           THE COURT:  How old are you?

21           PROSPECTIVE JUROR:  27.

22           THE COURT:  What is your educational background?

23           PROSPECTIVE JUROR:  High school.

24           THE COURT:  And what is your business or employment?

25           PROSPECTIVE JUROR:  A stay-at-home mom.

Jury Selection

1    THE COURT:  All right.  Have you worked in the past?

2    PROSPECTIVE JUROR:  No.

3    THE COURT:  Okay.  You married?

4    PROSPECTIVE JUROR:  Yes.

5    THE COURT:  What does your spouse do?

6    PROSPECTIVE JUROR:  Truck driver.

7    THE COURT:  All right.  Anybody in your family

8  employed in law enforcement?

9    PROSPECTIVE JUROR:  Yes.  I have three cousins in the

10  Chicago department.

11    THE COURT:  Okay.  Any attorneys in your family?

12    PROSPECTIVE JUROR:  No.

13    THE COURT:  The case was investigated by the ATF and

14  the Chicago Police Department.  Have you ever had any dealings

15  with either of those agencies?

16    PROSPECTIVE JUROR:  No.

17    THE COURT:  Okay.  The case involves the use of

18  firearms.  Do you have any feelings or beliefs regarding firearm

19  laws that would make it difficult for you to be impartial in

20  this case?

21    PROSPECTIVE JUROR:  No.

22    THE COURT:  Okay.  What about gang membership?  Would

23  you still require the government to prove the case beyond a

24  reasonable doubt even though there may be allegations of gang

25  membership?

1      PROSPECTIVE JUROR:   No.

2      THE COURT:   You mean you can be?

3      PROSPECTIVE JUROR:   I -- I -- it wouldn't be a problem.

4      THE COURT:   It would not be a problem for you?

5      PROSPECTIVE JUROR:   No.

6      THE COURT:   Have you ever been affected by gang

7  violence?

8      PROSPECTIVE JUROR:   No.

9      THE COURT:   All right.  Now, the defendant has a right

10  not to testify and his silence can't be used against him, and

11  the government has the obliquation to prove the charges beyond a

12  reasonable doubt and he need not prove his innocence.

13      Do you have any objection to those principles?

14      PROSPECTIVE JUROR:   No.

15      THE COURT:   In evaluating the witness' testimony, you

16  should use the same tests regardless whether the witness is a

17  law enforcement official or a lay witness.

18      Can you do that?

19      PROSPECTIVE JUROR:   Yes.

20      THE COURT:   Have you or your family member ever been

21  charged with or convicted of a serious times?

22      PROSPECTIVE JUROR:   My brother.

23      THE COURT:   What was the charge?

24      PROSPECTIVE JUROR:   Drug -- drug trafficking.

25      THE COURT:   All right.  How long ago was that?

1          PROSPECTIVE JUROR:  Five years ago.

2          THE COURT:  All right.  Did that affect you in any way?

3          PROSPECTIVE JUROR:  No.

4          THE COURT:  Okay.  Have you ever been a crime victim?

5          PROSPECTIVE JUROR:  No.

6          THE COURT:  Have you ever been a party to a lawsuit

7    either as a plaintiff or a defendant?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  Have you been on jury duty before?

10         PROSPECTIVE JUROR:  No.

11         THE COURT:  Did you recognize any of the names on the

12   list of witnesses?

13         PROSPECTIVE JUROR:  No, I did not.

14         THE COURT:  Do you have any religious, philosophical or

15   moral beliefs that make it difficult for you to sit in judgment

16   of another person?

17         PROSPECTIVE JUROR:  I don't believe in passing

18   judgment.

19         THE COURT:  Pardon?

20         PROSPECTIVE JUROR:  I don't believe in passing

21   judgment.

22         THE COURT:  Well, if you're a juror -- and I don't know

23   if maybe we're not talking about the same thing.  But if you're

24   on a jury and the juror must that decide if a person is innocent

25   or not guilty or guilty, in a sense you could say that's passing

1   judgment.  Would you have any difficulty doing that?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  All right.  I'll excuse you.  Thank you.

4          THE CLERK:  John M-Y-R-O-N-I-A-K.

5          THE COURT:  I'm going to take a chance.  Myroniak?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Is that right?

8          PROSPECTIVE JUROR:  Some people pronounce is Myroniak.

9   Some people pronounce it Myroniak.

10         THE COURT:  How do you pronounce it?

11         PROSPECTIVE JUROR:  Both ways.

12         THE COURT:  Do you have a preference?

13         PROSPECTIVE JUROR:  No, sir.

14         THE COURT:  All right.  Where do you live?

15         PROSPECTIVE JUROR:  Chicago.

16         THE COURT:  How old are you, sir?

17         PROSPECTIVE JUROR:  36.

18         THE COURT:  What is your educational background?

19         PROSPECTIVE JUROR:  High school diploma.

20         THE COURT:  And your business or occupation?

21         PROSPECTIVE JUROR:  I work at Target.  I'm a cart

22   attendant.

23         THE COURT:  I know you work for Target, but what do you

24   do there?

25         PROSPECTIVE JUROR:  I bring the carts from the parking

1   lot into the store, and I do other tasks.

2            THE COURT:  Okay.  Are you married?

3            PROSPECTIVE JUROR:  No, sir.

4            THE COURT:  All right.  Do you or any of your family

5   members ever been employed in law enforcement?

6            PROSPECTIVE JUROR:  No, sir.

7            THE COURT:  Have you ever had any dealings with the ATF

8   or the Chicago Police Department?

9            PROSPECTIVE JUROR:  No, sir.

10           THE COURT:  The case involves charges that include the

11  use of a firearm.  Do you have any feelings or beliefs in

12  firearm laws that would make it difficult for you to be

13  impartial?

14           PROSPECTIVE JUROR:  No, sir.

15           THE COURT:  What about gang membership, if there is

16  evidence or allegations of gang membership, can -- would you

17  still require the government to prove the case beyond a

18  reasonable doubt?

19           PROSPECTIVE JUROR:  Yes, sir.

20           THE COURT:  All right.  Have you ever had any -- been

21  affected by gang violence personally?

22           PROSPECTIVE JUROR:  No, sir.

23           THE COURT:  Under the Constitution, the defendant need

24  not testify, and his silence can't be used against him.  And

25  it's the government's obligation to prove him guilty beyond a

1  reasonable doubt, and it's not the defendant's obligation to

2  prove his innocence.

3          Do you have any objection to those principles of our

4  system?

5          PROSPECTIVE JUROR:  No, sir.

6          THE COURT:  Will you be willing to evaluate the

7  witnesses' testimony using the same tests whether the witness is

8  a law enforcement official or a lay witness?

9          PROSPECTIVE JUROR:  Yes, sir.

10         THE COURT:  Have you or a family member ever been

11 charged with or convicted of a serious crime?

12         PROSPECTIVE JUROR:  No, sir.

13         THE COURT:  Have you been a crime victim?

14         PROSPECTIVE JUROR:  No, sir.

15         THE COURT:  Have you ever been a party to a lawsuit

16 either as a plaintiff or a defendant?

17         PROSPECTIVE JUROR:  No, sir.

18         THE COURT:  Have you been on jury duty before?

19         PROSPECTIVE JUROR:  No, sir.

20         THE COURT:  Do you recognize any of the names on the

21 list of witnesses?

22         THE COURT:  Do you have any religious, philosophical or

23 moral beliefs that would make it difficult for you to sit in

24 judgment of another person?

25         PROSPECTIVE JUROR:  No, sir.

Jury Selection

1          THE COURT:  What is your source for news?

2          PROSPECTIVE JUROR:  CBS, NBC.

3          THE COURT:  All right.  Will you follow the law I give

4   to you even if you disagree with it?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Any reason you couldn't be fair?

7          PROSPECTIVE JUROR:  No.

8          THE COURT:  All right, going back to -- the next person

9   is Lisa Wilson?

10         PROSPECTIVE JUROR:  That's correct.

11         THE COURT:  Where do you live, Ms. Wilson?

12         PROSPECTIVE JUROR:  Buffalo Grove.

13         THE COURT:  How old are you?

14         PROSPECTIVE JUROR:  52.

15         THE COURT:  What is your educational background?

16         PROSPECTIVE JUROR:  Associate's degree.

17         THE COURT:  And what is your business or occupation?

18         PROSPECTIVE JUROR:  Carpet meeting and event manager.

19         THE COURT:  All right.  Are you married?

20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  What does your spouse do?

22         PROSPECTIVE JUROR:  He's a mortgage broker and works

23   part-time at Home Depot.

24         THE COURT:  All right.  Anybody in your family employed

25   in law enforcement?

Jury Selection

1    PROSPECTIVE JUROR:  I have two cousins that are

2  bankruptcy lawyers.  Sorry, not law enforcement.

3    THE COURT:  That was my next question.  Including any

4  lawyers, you have two cousins that practice bankruptcy law?

5    PROSPECTIVE JUROR:  Yeah.

6    THE COURT:  What about in law enforcement?

7    PROSPECTIVE JUROR:  No.

8    THE COURT:  Have you ever had -- personally had any

9  dealings with the ATF or Chicago Police Department?

10    PROSPECTIVE JUROR:  No.

11    THE COURT:  All right.  Now, the case and charges

12  involve the use of a firearm.  Do you have any feelings or

13  beliefs regarding firearm laws that would make it difficult for

14  you to be impartial?

15    PROSPECTIVE JUROR:  Well, I'm strongly against

16  firearms, but I can deal with the law.

17    THE COURT:  Now, you can deal with the law --

18    PROSPECTIVE JUROR:  Yeah.

19    THE COURT:  -- and you can deal with the government to

20  prove.

21    PROSPECTIVE JUROR:  Yes.

22    THE COURT:  Okay, good.  And same thing with gangs --

23    PROSPECTIVE JUROR:  Yes.

24    THE COURT:  -- can you do that with gangs, too?

25    PROSPECTIVE JUROR:  Yes.

1    THE COURT:  All right.  Have you ever been affected by

2  gang violence personally?

3    PROSPECTIVE JUROR:  No.

4    THE COURT:  Okay.  Now, under the Constitution -- under

5  the Constitution, the defendant need not testify and his silence

6  can't be used against him, and it's the government's obligation

7  to prove the charges beyond a reasonable doubt and not his

8  obligation to prove his innocence.

9    Do you have any objection to those principles of our

10  system?

11    PROSPECTIVE JUROR:  No.

12    THE COURT:  Will you use the same tests in evaluating

13  the testimony of witnesses whether they're law enforcement or

14  lay witnesses?

15    PROSPECTIVE JUROR:  Yes.

16    THE COURT:  Have you or a family member ever been

17  charged with or convicted with a serious crime?

18    PROSPECTIVE JUROR:  No.

19    THE COURT:  Have you been a crime victim?

20    PROSPECTIVE JUROR:  No.

21    THE COURT:  Have you ever been a party to a lawsuit

22  either as a plaintiff or a defendant?

23    PROSPECTIVE JUROR:  No.

24    THE COURT:  Have you been on jury duty before?

25    PROSPECTIVE JUROR:  I was called, but not selected.

1    THE COURT:  All right.  Did you recognize any of the

2  names on the list of witnesses?

3    PROSPECTIVE JUROR:  No.

4    THE COURT:  Do you have any religious, philosophical or

5  moral beliefs that make it difficult for you to sit in judgment

6  on another person?

7    PROSPECTIVE JUROR:  No.

8    THE COURT:  What is your source for news?

9    PROSPECTIVE JUROR:  MSNBC, the internet.

10    THE COURT:  Will you follow the law that I give to you

11  even if you disagree with it?

12    PROSPECTIVE JUROR:  Yes.

13    THE COURT:  Any reason you couldn't be fair?

14    PROSPECTIVE JUROR:  No.

15    THE COURT:  All right.  The next person is Frank

16  Onesto?

17    PROSPECTIVE JUROR:  Yes.

18    THE COURT:  Where do you live, sir?

19    PROSPECTIVE JUROR:  Homer Glen, Illinois.

20    THE COURT:  How old are you?

21    PROSPECTIVE JUROR:  57.

22    THE COURT:  What is your educational background?

23    PROSPECTIVE JUROR:  Associate's.

24    THE COURT:  Okay.  What is your -- associate's okay.

25    What is your occupation or business?

Jury Selection

1    PROSPECTIVE JUROR:  Construction.

2    THE COURT:  What type of construction do you do?

3    PROSPECTIVE JUROR:  Sheet Metal worker.

4    THE COURT:  All right.  Are you married?

5    PROSPECTIVE JUROR:  Yes.

6    THE COURT:  What does your spouse do?

7    PROSPECTIVE JUROR:  Stay-at-home mother.

8    THE COURT:  And when she last worked, what did she do?

9    PROSPECTIVE JUROR:  Mortgage banking.

10   THE COURT:  Anybody in your family employed in law

11   enforcement?

12   PROSPECTIVE JUROR:  A couple of cousins, both retired.

13   THE COURT:  Any lawyers in your family?

14   PROSPECTIVE JUROR:  Anthony Onesto.

15   THE COURT:  And he --

16   PROSPECTIVE JUROR:  Criminal.

17   THE COURT:  Where does he practice?

18   PROSPECTIVE JUROR:  Chicago.

19   THE COURT:  Now, is he -- he's related to you.  How is

20   he related to you?

21   PROSPECTIVE JUROR:  He's my father's cousin.

22   THE COURT:  Do you -- do you talk to him a lot or --

23   PROSPECTIVE JUROR:  Probably not for the last 10 years.

24   THE COURT:  So you discuss legal issues?

25   PROSPECTIVE JUROR:  No.

1      THE COURT:  Okay.  So you would be instructed not to,
2   but I'm -- you wouldn't ask him for advice if you were on the
3   jury?
4      PROSPECTIVE JUROR:  Correct.
5      THE COURT:  Okay.  Have you ever had any dealings with
6   the ATF or the Chicago Police Department?
7      PROSPECTIVE JUROR:  No, sir.
8      THE COURT:  The case involves the use of firearms.  Do
9   you have any feelings or beliefs regarding firearm laws that
10  would make it difficult for you to be impartial?
11      PROSPECTIVE JUROR:  No, sir.
12      THE COURT:  How about gangs?  If there was evidence of
13  possible gang membership, would that -- would you then not
14  require the government to prove the case beyond a reasonable
15  doubt?
16      PROSPECTIVE JUROR:  No, sir.
17      THE COURT:  Okay.  Have you ever been affected
18  personally by gang violence?
19      PROSPECTIVE JUROR:  I was beat up by a group of gang
20  members when I was in my 20s.
21      THE COURT:  I don't want to make you an old man, but
22  that was some years ago?
23      PROSPECTIVE JUROR:  Yeah, that was 30 years ago.
24      THE COURT:  Now, under the Constitution, the defendant
25  need not testify and his silence can't be used against him, and

1  it's his -- the government's obligation to prove beyond a

2  reasonable doubt and not his obligation to prove his innocence.

3          Do you have any objection to those principles of our

4  criminal justice system?

5          PROSPECTIVE JUROR:  No, sir.

6          THE COURT:  In evaluating a witness' testimony, will

7  you use the same tests regardless of whether the witness is a

8  law enforcement official or a lay witness?

9          PROSPECTIVE JUROR:  Yes, sir.

10          THE COURT:  Have you or a family member ever been

11  charged with or convicted of a serious crime?

12          PROSPECTIVE JUROR:  No, sir.

13          THE COURT:  Have you been a crime victim?

14          PROSPECTIVE JUROR:  No, sir.

15          THE COURT:  Have you ever been a party to a lawsuit

16  either as a plaintiff or a defendant?

17          PROSPECTIVE JUROR:  No, sir.

18          THE COURT:  Have you been on jury duty before?

19          PROSPECTIVE JUROR:  Selected, not chosen.

20          THE COURT:  Did you recognize any of the names on the

21  list of witnesses?

22          PROSPECTIVE JUROR:  No, sir.

23          THE COURT:  Do you have any religious, philosophical or

24  moral beliefs that would make it difficult for you to sit in

25  judgment of another?

Jury Selection

1    PROSPECTIVE JUROR:  No.

2    THE COURT:  What is your source for news?

3    PROSPECTIVE JUROR:  CBS.

4    THE COURT:  Will you follow the law I give to you even

5    if you disagree with it?

6    PROSPECTIVE JUROR:  Yes, sir.

7    THE COURT:  Any reason you couldn't be fair?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:  Lawyers, give me your choices, please.

10   PROSPECTIVE JUROR:  Can I go outside for a minute.

11   THE COURT:  Pardon?

12   PROSPECTIVE JUROR:  Can we have a couple of minutes,

13   Judge?

14   THE CLERK:  Five minutes, Judge.

15   THE COURT:  Yeah, we'll have five minutes, okay?

16   MR. HYMAN:  Your Honor, could you hear us on sidebar.

17     (At sidebar outside the hearing of the venire.)

18   MR. HYMAN:  Your Honor, could you inquire a little bit

19   more about Ms. Sauders?  She has a master's in client

20   inventionism and she's working for that, and she has also

21   special ed.

22   Can you inquire whether or not in her work when she

23   runs a camp whether she deals with children that had been

24   affected by gang violence?

25   THE COURT:  All right.  Yeah.

Jury Selection

1          MR. HYMAN:  It's just that.

2          THE COURT:  All right.  Okay.

3      (In open court in the hearing of the jury.)

4          PROSPECTIVE JUROR:  One further question of

5  Ms. Sauders.

6          In your dealings, do you run across children who are

7  affected by gang violence?

8          PROSPECTIVE JUROR:  They may have family members that

9  are affiliated, but nothing that directly relates me in the

10 workplace.

11         THE COURT:  So you really don't know, but it's possible

12 that they have been, is that --

13         PROSPECTIVE JUROR:  Correct.

14         THE COURT:  Okay, thank you.

15     (Pause in proceedings.)

16         THE COURT:  Ms. Kwasny, Mr. Onesto and Mr. Myroniak

17 will be excused.  Can you swear in the three, please.

18     (Venire sworn.)

19         THE COURT:  All right.  We're going to suspend now for

20 a half an hour for lunch.  I'll ask you to be back at, say, 20

21 minutes to -- what is it, 2:00?  And now would you show those to

22 the jury room and actually you can stay in the jury room.

23         THE CLERK:  All right.

24         THE COURT:  And it will be locked while you're in here.

25         THE CLERK:  If you have any personal items, take them

Jury Selection

1  with you.

2  　　　　THE COURT:  You can leave your stuff in the jury room.

3  It will be locked while you're in here.

4  　　　　THE CLERK:  Judge, they want 45 minutes.  They want to

5  come back at 1:45.

6  　　　　THE COURT:  Okay.  1:45.  That's called negotiating.

7  　　(Adjourned at 1:02 p.m.)

8  　　　　　　　　* * * * * * * * * *

9  　　　　　　C E R T I F I C A T E

10  　I certify that the foregoing is a correct transcript of the

11  record of proceedings in the above-entitled matter.

12

13  /s/ LISA H. BREITER                    February 10, 2019
    LISA H. BREITER, CSR, RMR, CRR
14  Court Reporter

15

16

17

18

19

20

21

22

23

24

25

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3   UNITED STATES OF AMERICA,        )   Docket No. 18 CR 00278
                                     )
4              Plaintiff,            )   Chicago, Illinois
                                     )   June 10, 2019
5          v.                        )   1:46 p.m.
                                     )
6   ERNESTO GODINEZ,                 )
                                     )
7              DEFENDANT.            )

8                       VOLUME 1-B
            TRANSCRIPT OF PROCEEDINGS - Trial
9    BEFORE THE HONORABLE HARRY D. LEINENWEBER, and a Jury

10  APPEARANCES:

11  For the Government:    HON. JOHN R. LAUSCH, JR.
                          United States Attorney, by
12                        MS. KAVITHA J. BABU
                          MR. NICHOLAS J. EICHENSEER
13                        5th Floor
                          Chicago, IL 60604
14
    For the Defendant:    MR. LAWRENCE H. HYMAN
15                        111 West Washington Street
                          Suite 1025
16                        Chicago, IL 60602

17                             and

18                        PISSETZKY & BERLINER
                          MR. GAL PISSETZKY
19                        35 West Wacker Drive
                          Suite 1980
20                        Chicago, IL 60601

21  Also Present:         MR. BEAU JACOBSEN, ATF Agent
                          MS. MARTA KASCUBA
22
    Court Reporter:       LISA H. BREITER, CSR, RMR, CRR
23                        219 South Dearborn Street, Room 2118
                          Chicago, IL 60604
24                        (312) 702-8865
                          judith_walsh@ilnd.uscourts.gov
25

1    (In open court outside the hearing of the jury.)

2         THE COURT:  One of the prospective jurors -- I received

3    a note from juror Chrystal -- what was it -- Tran?  Chrystal

4    Lee.  "I am currently experiencing a great degree of discomfort

01:46:25   5    related to orthopedic issues that I am suffering from.  I had

6    bilateral hip surgery, and sitting for long periods causes

7    discomfort and pain.  I am also experiencing knee, neck and back

8    issues.  I am concerned about sitting for long periods while

9    serving on the jury, and I am requesting to be excused."

01:46:42   10        MR. HYMAN:  She's -- she's the lady who is the HR

11   operations from Calumet City.

12        THE COURT:  No, she's the -- what was it?  She is

13   listed as a driver, but she's not --

14        MR. PISSETZKY:  Krystal Travis?

01:46:57   15        THE COURT:  No, Chrystal Lee -- no, wait a minute, I

16   got the wrong one.  Excuse me.  There's two Krystals.  One

17   begins with K.  Let's see where was it?

18        THE CLERK:  Krystal Travis.

19        THE COURT:  Yeah.

01:47:14   20        THE CLERK:  No. 3.

21        THE COURT:  No. 3.  Yeah, that's the one that's

22   requesting to be excused.  What's your -- do you want to talk to

23   her before?

24        MR. HYMAN:  Judge, I think that we'd want her to

01:47:32   25   concentrate, and if her concentration is limited to her pain,

01:47:36  1  then I don't think --

          2        THE COURT:  So you don't have any objection to excusing

          3  her?

          4        MR. HYMAN:  No.

01:47:41  5        THE COURT:  How about the government?

          6        MS. BABU:  No, Your Honor.

          7        THE COURT:  All right.  We'll excuse her.  Would you --

          8        THE CLERK:  Bring her in here or no?

          9        THE COURT:  I think just excuse her, but bring the

01:47:54 10  seven in, and let me give you the notes for the record.

         11      (Court and clerk conferring.)

         12        THE COURT:  Krystal Travis will be excused, Court

         13  excuse.

         14      (Court and clerk conferring.)

01:52:25 15        THE COURT:  I have another letter from Melanie

         16  Saunders.  "I am writing to express my concern about the end

         17  time of the court sessions.  As stated during my questioning, I

         18  am currently obtaining my master's degree classes which take

         19  place on Monday and Wednesday evenings from 5:00 p.m." -- I

01:52:43 20  think that's a 5 -- "to 8:30 in Aurora, Illinois.  Please

         21  consider my need for attendance and class as a hardship in

         22  participating in the jury."

         23        One thing we could do is break at 4:00 on Wednesday.

         24  Does that -- anybody have a problem with that?

01:53:04 25        MS. BABU:  Would we be able to start earlier on that

| | |
|---|---|
| 01:53:07 | 1 |

day, Your Honor?

2        THE COURT:  Pardon?

3        MS. BABU:  Would we be able to start earlier?

4        THE COURT:  Probably not.  I've got a call.

01:53:14  5        Now, on Friday we could start earlier.  We could pick

6 up an hour there.

7        MS. BABU:  That would be fine then, Your Honor.

8        THE COURT:  Tell -- would you tell them that -- does

9 anybody object to that?  We'll tell her we'll break at

01:53:30  10 4:00 o'clock on Wednesday and presumably on Monday, we'll have

11 an earlier.  Monday we could start earlier.  All right.  Okay?

12        MS. BABU:  Thank you, your Honor.

13        THE COURT:  Is that all right with everybody?

14        MR. HYMAN:  If she still can't do it, then we'll talk

01:53:46  15 about it, but that sounds fine.

16        THE COURT:  Yeah, we'll just tell them we'd break at

17 4:00 on Wednesday and we can do that.

18        MR. PISSETZKY:  Is she from Aurora?

19        THE COURT:  Well, that's where her classes are.

01:54:06  20        MR. PISSETZKY:  I think a train ride from Aurora is

21 similar --

22        THE COURT:  She should be able to make it.  If she's a

23 little late, so what?  It will only be one or two days.

24        THE CLERK:  Do you want the jury out, Judge?

01:54:17  25        THE COURT:  What?

Jury Selection

01:54:17  1    THE CLERK:  Do you want the jury to come out or do you
         2  want leave them in there?
         3    THE COURT:  They can stay in there briefly.
         4    THE CLERK:  Okay.
01:54:17  5    THE COURT:  We can bring -- let's get going on the
         6  rest.  Let's get -- we now need four more now plus the
         7  alternates.  More problems.
         8    Do you want to bring the jurors in.
         9  (Prospective Jurors enter the courtroom.)
01:56:34 10    THE COURT:  All right.  The juror said that was all
        11  right with her.
        12    Would you tell what the problem is.
        13    PROSPECTIVE JUROR PORRAS:  So I live in Baton Rouge,
        14  Louisiana, and I drove 14 hours here.
01:56:48 15    THE COURT:  How did you happen to get on the call here?
        16    PROSPECTIVE JUROR PORRAS:  I -- so postponed because I
        17  go to grad school at LSU.  And then the lady that I spoke with
        18  postponed it to this summer, and she told me that she scheduled
        19  it for this summer because we're in summer intersession.
01:57:03 20    But since I'm in grad school, I have a summer
        21  internship back at LSU, and so she was like I was originally
        22  scheduled for May 10th, but I couldn't make it because I was
        23  still in school.  And then she was like you have to do it before
        24  school starts in August, which is why I postponed it till --
01:57:20 25    THE COURT:  Do you live here or do you live in Baton

01:57:21  1    Rouge?

2             PROSPECTIVE JUROR PORRAS:  I live in Baton Rouge, but I

3    have the residency here so, like, college funds.

4             THE COURT:  Let me see the lawyers in sidebar.

01:57:35  5       (At sidebar outside the hearing of the venire.)

6             THE COURT:  Frankly I don't understand.

7             MR. HYMAN:  It sounds very confusing.

8             MS. BABU:  I think it sounds like she's at school, and

9    her permanent residence or address is here.

01:57:54  10            MR. HYMAN:  I think it's the other way around.

11            THE COURT:  If you won't object, I'll let her go.

12            MR. HYMAN:  Yeah, sure.

13       (In open court in the hearing of the jury.)

14            THE COURT:  Would you call -- all right.  You're

01:58:04  15   excused.

16            THE CLERK:  No. 29, Monica Julianne Porras.  No. 29.

17            THE COURT:  Porras.

18            THE CLERK:  Monica Julianne Porras, P-O-R-R-A-S.

19            THE REPORTER:  Thank you.

01:58:22  20            THE CLERK:  Syeda Tazeen, Kerry Hampston, Lisa Solesky.

21            THE COURT:  Take the first seat in the front row.

22            THE CLERK:  Anthony Pezzulo and Michelle Spellman.

23            THE COURT:  That's four, isn't it?  All right,

24   Ms. Spellman can remain seated for a moment.

01:59:07  25       (Court and clerk conferring.)

Jury Selection

01:59:07  1      THE COURT:  All right.  The first lady is Syeda Tazeen.

2      PROSPECTIVE JUROR:  Yes.

3      THE COURT:  Did I pronounce it right?

4      PROSPECTIVE JUROR:  Syeda.

01:59:17  5      THE COURT:  Where do you live?

6      PROSPECTIVE JUROR:  Hoffman Estates.

7      THE COURT:  How old are you?

8      PROSPECTIVE JUROR:  31.

9      THE COURT:  What's your educational background?

01:59:22  10      PROSPECTIVE JUROR:  I have a bachelor's in biology.

11      THE COURT:  What is your business or occupation?

12      PROSPECTIVE JUROR:  I'm a stay-at-home mom.

13      THE COURT:  When you last worked, what did you do?

14      PROSPECTIVE JUROR:  I was a certified allergy

01:59:32  15  specialist.

16      THE COURT:  Okay.  Is that -- okay.  Are you married?

17      PROSPECTIVE JUROR:  Yes.

18      THE COURT:  What does your husband do?

19      PROSPECTIVE JUROR:  He's a sports and family physician.

01:59:43  20      THE COURT:  He's a what?  Say that again.

21      PROSPECTIVE JUROR:  Physician.

22      THE COURT:  Oh, a physician?

23      PROSPECTIVE JUROR:  Uh-huh.

24      THE COURT:  And what is his specialty?

01:59:51  25      PROSPECTIVE JUROR:  Sports and family medicine.

01:59:52  1    THE COURT:  Okay.  Sort of like an orthopedic?

2    PROSPECTIVE JUROR:  Sort of.

3    THE COURT:  Yeah.  Sports injuries specialist?

4    PROSPECTIVE JUROR:  Yes.

01:59:59  5    THE COURT:  Okay.  Any member of your family employed

6    in law enforcement?

7    PROSPECTIVE JUROR:  No.

8    THE COURT:  Have you ever had any dealings with the

9    ATF, Alcohol Tobacco & Firearm agency, a federal agency, and the

02:00:14  10   Chicago Police Department -- and/or the Chicago Police

11   Department?

12   PROSPECTIVE JUROR:  No.

13   THE COURT:  The case involves the use of firearms.  Do

14   you have any feelings or beliefs regarding firearm laws that

02:00:22  15   would make it difficult for you to be impartial?

16   PROSPECTIVE JUROR:  I don't like the use of weapons in

17   general.

18   THE COURT:  Well, most people don't.  I mean, would

19   that keep you from being impartial?

02:00:35  20   PROSPECTIVE JUROR:  No.

21   THE COURT:  Okay.  Now, what about the evidence

22   introduced in the case, the defendant may be a member of a group

23   that can be classified as a gang.  The Constitution gives us the

24   right to associate with others.

02:00:47  25       There's nothing inherently illegal or wrongful in

02:00:51   1    associating with a gang, and you should not decide any issue of

         2    fact solely due to the alleged gang membership. The point being

         3    that if there is evidence or allegations that the defendant is a

         4    member of the gang, that does not alleviate the government of

02:01:06   5    the obligation to prove the case beyond a reasonable doubt.

         6         Can you do that?

         7         PROSPECTIVE JUROR: Yes.

         8         THE COURT: Okay. Have you ever been affected by gang

         9    violence?

02:01:17 10         PROSPECTIVE JUROR: No.

      11         THE COURT: Okay. Now, under the Constitution, the

      12    defendant need not testify, and his silence can't be used

      13    against him. And the government's obligation is to prove guilt

      14    beyond a reasonable doubt, and is not -- defendant need not --

02:01:31 15    has no obligation to prove his innocence.

      16         Do you have any objection to those tenets -- basic

      17    tenets of our criminal justice system?

      18         PROSPECTIVE JUROR: No.

      19         THE COURT: In evaluating the witness -- the witness'

02:01:43 20    testimony, would you use the same tests regardless of whether

      21    the witness is law enfor -- law enforcement official or a lay

      22    witness?

      23         PROSPECTIVE JUROR: Yes.

      24         THE COURT: Have you or a family member ever been

02:01:55 25    charged with or convicted of a serious crime?

02:01:59  1    PROSPECTIVE JUROR:  No.

2    THE COURT:  Have you been a crime victim?

3    PROSPECTIVE JUROR:  We had tires stolen off our car.

4    THE COURT:  Okay.  Nothing serious?

02:02:06  5    PROSPECTIVE JUROR:  No.

6    THE COURT:  Have you ever been a party to a lawsuit

7  either as a plaintiff or a defendant?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:  Have you been on jury duty before?

02:02:12  10    PROSPECTIVE JUROR:  No.

11    THE COURT:  Did you recognize any of the names on the

12  list of witnesses?

13    PROSPECTIVE JUROR:  No.

14    THE COURT:  Do you have any religious, philosophical or

02:02:21  15  moral beliefs that would make it difficult for you to sit in

16  judgment on another person?

17    PROSPECTIVE JUROR:  Yes, that I'm not comfortable with

18  judging someone particularly of his age.

19    THE COURT:  Well, you know, you wouldn't be alone in

02:02:36  20  judging.  You would be part of a group of 12 people.

21    PROSPECTIVE JUROR:  Right, I understand.

22    THE COURT:  Is that -- could you -- can you do that or

23  is that --

24    PROSPECTIVE JUROR:  I wouldn't be comfortable being a

02:02:47  25  part of a serious --

02:02:53 1    THE COURT:  Start over again.  Somehow the -- that mic

2    isn't --

3    PROSPECTIVE JUROR:  Can you hear it?

4    THE COURT:  Yeah, now.

02:02:59 5    PROSPECTIVE JUROR:  I just wouldn't be comfortable

6    being a part of a group that would put someone, particularly his

7    age, away for however long.

8    THE COURT:  Well, you wouldn't -- sentencing is not the

9    obligation of a jury, it's the obligation of the judge.

02:03:19 10    PROSPECTIVE JUROR:  Correct.

11    THE COURT:  So all you do is make a -- if you are a

12    member of the jury, all the jury does is make a determination of

13    whether or not the government has proved the allegations of the

14    indictment or the charges against the defendant beyond a

02:03:30 15    reasonable doubt.  That's what the jury does.  The jury doesn't

16    decide anything -- has no -- does not decide the sentence.

17    PROSPECTIVE JUROR:  Right.  I still wouldn't be

18    comfortable deciding if he was guilty or not.

19    THE COURT:  All right.  I'll excuse you.  Thank you.

02:03:52 20    One more, please.

21    THE CLERK:  Michelle Spellman.

22    THE COURT:  Good afternoon.  You are Michelle Spellman?

23    PROSPECTIVE JUROR:  Yes.

24    THE COURT:  Where do you live?

02:04:11 25    PROSPECTIVE JUROR:  Chicago.

02:04:12  1        THE COURT:  How old are you?

          2        PROSPECTIVE JUROR:   56.

          3        THE COURT:  Can you hold that a little closer?

          4        PROSPECTIVE JUROR:   56.

02:04:17  5        THE COURT:  What is your educational background?

          6        PROSPECTIVE JUROR:   High school.

          7        THE COURT:  And your business or occupation?

          8        PROSPECTIVE JUROR:   I work on a trading desk booking

          9    trades, et cetera.

02:04:26  10       THE COURT:  What do you trade, I mean, what --

          11   commodities?

          12       PROSPECTIVE JUROR:   Yeah.

          13       THE COURT:   Okay.  Are you married?

          14       PROSPECTIVE JUROR:   No.

02:04:34  15       THE COURT:   Anybody in your family employed in law

          16   enforcement?

          17       PROSPECTIVE JUROR:   No.

          18       THE COURT:   The case was investigated by the ATF and

          19   the Chicago Police Department.   Have you had dealings with

02:04:46  20   either of these agencies?

          21       PROSPECTIVE JUROR:   No.

          22       THE COURT:   The case involves charges including the use

          23   of firearms.   Do you have any feelings or beliefs regarding

          24   firearm laws that would make it difficult for you to be

02:04:56  25   impartial?

02:04:57 1    PROSPECTIVE JUROR:   No.

2    THE COURT:   What about gangs, can you be impartial in

3    -- if there is evidence of possible membership, can you

4    still -- would you still require the government to prove the

02:05:11 5    case beyond a reasonable doubt?

6    PROSPECTIVE JUROR:   Yes.

7    THE COURT:   Okay.   Have you ever been affected by gang

8    violence?

9    PROSPECTIVE JUROR:   No.

02:05:16 10   THE COURT:   Under the Constitution, the defendant need

11   not testify, and his silence can't be used against him.   And the

12   government has the obligation to prove him guilty beyond a

13   reasonable doubt, and he has no obligation to prove his

14   innocence.

02:05:28 15   Can you accept those principles?

16   PROSPECTIVE JUROR:   Yes.

17   THE COURT:   In evaluating a witness' testimony, would

18   you use the same tests in evaluating the testimony of lay

19   witnesses as you use in evaluating the testimony of law

02:05:44 20   enforcement witnesses and vice versa?

21   PROSPECTIVE JUROR:   Yes.

22   THE COURT:   Have you or a family member ever been

23   charged with or convicted of a serious crime?

24   PROSPECTIVE JUROR:   No.

02:05:53 25   THE COURT:   Have you been a crime victim?

02:05:55 1    PROSPECTIVE JUROR:   No.

2    THE COURT:   Have you ever been a party to a lawsuit

3  either as a plaintiff or a defendant?

4    PROSPECTIVE JUROR:   No.

02:06:00 5    THE COURT:   Have you been on jury duty before?

6    PROSPECTIVE JUROR:   No.

7    THE COURT:   Did you recognize any of the names on the

8  list of witnesses I read?

9    PROSPECTIVE JUROR:   No.

02:06:06 10    THE COURT:   Do you have any religious, philosophical or

11  moral beliefs that would make it difficult for you to sit in

12  judgment on another person?

13    PROSPECTIVE JUROR:   No.

14    THE COURT:   What is your source for news?

02:06:15 15    PROSPECTIVE JUROR:   I read different local papers,

16  national papers, watch the national news.

17    THE COURT:   Okay.  Will you follow the law that I give

18  to you even if you don't agree with it?

19    PROSPECTIVE JUROR:   Yes.

02:06:31 20    THE COURT:   Any reason you couldn't be fair?

21    PROSPECTIVE JUROR:   No.

22    THE COURT:   Thank you.

23    Kerry Hampston?

24    PROSPECTIVE JUROR:   Yes.

02:06:36 25    THE COURT:   Where do you live, Ms. Hampston?

Jury Selection

02:06:37   1          PROSPECTIVE JUROR:   Palos Park.

        2          THE COURT:   How old are you?

        3          PROSPECTIVE JUROR:   26.

        4          THE COURT:   What is your educational background?

02:06:40   5          PROSPECTIVE JUROR:   Doctor at a physical therapy.

        6          THE COURT:   And your occupation?

        7          PROSPECTIVE JUROR:   Physical therapist.

        8          THE COURT:   Okay.  Are you married?

        9          PROSPECTIVE JUROR:   No.

02:06:46  10          THE COURT:   Anybody in your family employed in law

       11   enforcement?

       12          PROSPECTIVE JUROR:   My uncle's a retired Chicago police

       13   officer.

       14          THE COURT:   Okay.  Have you had any dealings with

02:06:56  15   either the Alcohol, Tobacco & Firearm agency or the Chicago

       16   Police Department?

       17          PROSPECTIVE JUROR:   No.

       18          THE COURT:   The case involves charges in use -- of use

       19   of a firearm.  Do you have any feelings or beliefs regarding

02:07:07  20   firearm laws that would make it difficult for you to be

       21   impartial?

       22          PROSPECTIVE JUROR:   No.

       23          THE COURT:   How about gang membership, can you be

       24   impartial on that?

02:07:14  25          PROSPECTIVE JUROR:   Yes.

02:07:16  1    THE COURT:  Have you ever been affected by gang
        2  violence?

        3    PROSPECTIVE JUROR:  Yes.  My mom was robbed at
        4  gunpoint.

02:07:26  5    THE COURT:  I didn't get that.  Your mom was what?

        6    PROSPECTIVE JUROR:  My mom was robbed at gunpoint.

        7    THE COURT:  Okay.  How long ago was that?

        8    PROSPECTIVE JUROR:  When I was like 10 years old.

        9    THE COURT:  Some period of time.

02:07:42 10    Would that experience your mother had affect you at all
       11  in this case?

       12    PROSPECTIVE JUROR:  I think it makes me biased.

       13    THE COURT:  Well, could you set aside your bias and
       14  decide the case -- I mean, the issue here is whether the
02:08:02 15  government can prove the charges beyond a reasonable doubt.
       16  That's the only issue the jury will be delegated.

       17    And if you believe this experience your mother had
       18  would affect your ability to -- in other words, what we don't
       19  want is having -- because of the issue of gang membership maybe
02:08:25 20  raised in the case, we don't want the jury to short-circuit the
       21  government's obligation of proof.  That's what we're looking
       22  for.  So if you think you can do that ...

       23    PROSPECTIVE JUROR:  Yeah... um, yes, I think I could be
       24  biased, yeah.

02:08:47 25    THE COURT:  Will you -- will you promise us you will do

Jury Selection

02:08:49  1  that, I guess?

2  PROSPECTIVE JUROR:  Yes.

3  THE COURT:  Okay, thank you.

4  Now, the defendant has -- has the right not to testify

02:08:56  5  in the case, and his silence can't be used against him.  That's

6  a Constitutional right of his.  And the other one we talk about

7  here is the government's obligation to prove the charges beyond

8  a reasonable doubt, and it is not the defendant's obligation to

9  prove his innocence.

02:09:12  10  Do you accept those principles of our system?

11  PROSPECTIVE JUROR:  Yes.

12  THE COURT:  In evaluating the witness' testimony, will

13  you use the same tests regardless of whether the witness is a

14  law enforcement officer or a lay witness?

02:09:27  15  PROSPECTIVE JUROR:  Yes.

16  THE COURT:  Have you or any family member ever been

17  charged with or convicted of a serious crime?

18  PROSPECTIVE JUROR:  No.

19  THE COURT:  Have you been a crime victim?

02:09:34  20  PROSPECTIVE JUROR:  I had my wallet stolen.

21  THE COURT:  Pardon?

22  PROSPECTIVE JUROR:  I just had my wallet stolen.  That

23  was it.

24  THE COURT:  Have you ever been a party to a lawsuit

02:09:41  25  either as a plaintiff or a defendant?

Jury Selection

02:09:43  1     PROSPECTIVE JUROR:  No.

2     THE COURT:  Have you ever been on jury duty before?

3     PROSPECTIVE JUROR:  I've been summoned, but we were all

4 dismissed.

02:09:47  5     THE COURT:  Okay.  Did you recognize any of the names

6 on the list of witnesses?

7     PROSPECTIVE JUROR:  No.

8     THE COURT:  Do you hold any religious, philosophical or

9 moral beliefs that would make it difficult for you to sit in

02:09:54  10 judgment of another?

11     PROSPECTIVE JUROR:  No.

12     THE COURT:  What is your source for news?

13     PROSPECTIVE JUROR:  Like internet.

14     THE COURT:  Will you follow the law that I give to you

02:10:03  15 even if you disagree with it?

16     PROSPECTIVE JUROR:  Yes.

17     THE COURT:  Any reason you couldn't be fair?

18     PROSPECTIVE JUROR:  I feel like I'm biased just based

19 on my mom's experience, but...

02:10:15  20     THE COURT:  Okay.  I'll excuse you.  Thank you.

21     (Prospective juror exits the courtroom.)

22     THE CLERK:  Joshua Bost, B-O-S-T.

23     THE COURT:  You are Joshua Bost?

24     PROSPECTIVE JUROR:  Yes.

02:10:37  25     THE COURT:  Bost or Bost?

02:10:37 1      PROSPECTIVE JUROR:   Bost.

2      THE COURT:   Bost.   Where do you live, sir?

3      PROSPECTIVE JUROR:   Hanover Park.

4      THE COURT:   How old are you?

02:10:41 5      PROSPECTIVE JUROR:   22.

6      THE COURT:   What's your educational background?

7      PROSPECTIVE JUROR:   Bachelor in science.

8      THE COURT:   And what's your business or occupation?

9      PROSPECTIVE JUROR:   I'm a teacher, high school teacher.

02:10:49 10      THE COURT:   Okay.   What level?   What do you teach?

11      PROSPECTIVE JUROR:   Social studies.

12      THE COURT:   All right.   Are you married?

13      PROSPECTIVE JUROR:   No.

14      THE COURT:   Okay.   Anybody in your family employed in

02:10:56 15   law enforcement?

16      PROSPECTIVE JUROR:   No.

17      THE COURT:   Have you ever had any dealings with the ATF

18   or the Chicago Police Department?

19      PROSPECTIVE JUROR:   No.

02:11:03 20      THE COURT:   Okay.   The charges include the use of a

21   firearm.

22      Do you have any strong feelings or beliefs regarding

23   firearm laws that would make it difficult for you to be

24   impartial?

02:11:13 25      PROSPECTIVE JUROR:   No.

02:11:14  1          THE COURT:   What about gang membership?

        2          PROSPECTIVE JUROR:   No.

        3          THE COURT:   And have you ever been affected by gang

        4    violence?

02:11:19  5          PROSPECTIVE JUROR:   No.

        6          THE COURT:   Now, the defendant need not testify and his

        7    silence can't be used against him.   And the government has the

        8    obligation to prove him guilty beyond a reasonable doubt, and he

        9    has no obligation to defend himself.

02:11:29 10          Do you have any problems with those basic tenets of our

       11    system?

       12          PROSPECTIVE JUROR:   No.

       13          THE COURT:   Will you use the same tests in evaluating

       14    the testimony of law enforcement officials as you do for other

02:11:39 15    lay witnesses?

       16          PROSPECTIVE JUROR:   No.

       17          THE COURT:   Then you will; is that right?

       18          PROSPECTIVE JUROR:   No, I will not.

       19          THE COURT:   What?

02:11:46 20          PROSPECTIVE JUROR:   I do not really trust police

       21    officers.

       22          THE COURT:   Okay.   Well, in other words, you would use

       23    a different test.   You just automatically discount what they

       24    say?

02:11:57 25          PROSPECTIVE JUROR:   Not any eyewitness testimony.   I'd

02:12:01  1   believe bodycamera footage, any sort of live footage, but

2   nothing based off eyewitness --

3           THE COURT:   I'll excuse you.   Thank you, sir.

4           THE CLERK:   Kevin Waden, W-A-D-E-N.

02:12:24  5           THE COURT:   You are Kevin Waden?

6           PROSPECTIVE JUROR:   That's correct.

7           THE COURT:   Where do you live, sir?

8           PROSPECTIVE JUROR:   Downers Grove.

9           THE COURT:   How old are you?

02:12:30  10          PROSPECTIVE JUROR:   47.

11          THE COURT:   What is your educational background?

12          PROSPECTIVE JUROR:   I've got a master's in business.

13          THE COURT:   And what is your business or occupation?

14          PROSPECTIVE JUROR:   I'm the corporate controller for

02:12:37  15  U.S. Foods.

16          THE COURT:   All right.   Are you married?

17          PROSPECTIVE JUROR:   Yes.

18          THE COURT:   What does your spouse do?

19          THE DEFENDANT:   She's an emergency room nurse.

02:12:45  20          THE COURT:   Any law enforcement people in your family?

21          PROSPECTIVE JUROR:   No, sir.

22          THE COURT:   Have you ever had any dealings with the ATF

23  or the Chicago Police Department?

24          PROSPECTIVE JUROR:   No, sir.

02:12:55  25          THE COURT:   The case involves firearms.   Do you have

Jury Selection

02:12:57  1  any feelings regarding firearm laws that would make it difficult

2  for you to be impartial?

3  PROSPECTIVE JUROR:  No.

4  THE COURT:  What about gang membership?

02:13:06  5  PROSPECTIVE JUROR:  No.

6  THE COURT:  Okay.  Have you ever been affected by gang

7  violence?

8  PROSPECTIVE JUROR:  No, I have not.

9  THE COURT:  What about the basic tenets of our system,

02:13:13  10  that the defendant need not testify, and his silence can't be

11  used against him.  And the government's obligation to prove

12  beyond a reasonable doubt and not his obligation to prove his

13  innocence.

14  Do you have any problem with those?

02:13:25  15  PROSPECTIVE JUROR:  No, I do not.

16  THE COURT:  In evaluating witness' testimony, will you

17  use the same tests that you use for law enforcement officials as

18  you would for lay witnesses and vice versa?

19  PROSPECTIVE JUROR:  Yes, I would.

02:13:37  20  THE COURT:  Have you or a family member ever been

21  charged with or convicted of a serious crime?

22  PROSPECTIVE JUROR:  No.

23  THE COURT:  Have you been crime victim?

24  PROSPECTIVE JUROR:  No.

02:13:42  25  THE COURT:  Have you been a party to a lawsuit either

02:13:45  1    as a plaintiff or a defendant?

2    PROSPECTIVE JUROR:  No.

3    THE COURT:  Have you been on jury duty before?

4    PROSPECTIVE JUROR:  I've been called, but not summoned.

02:13:50  5    THE COURT:  Did you recognize any of the names in the

6    list of witnesses?

7    PROSPECTIVE JUROR:  No, I did not.

8    THE COURT:  Do you have any religious, philosophical or

9    moral beliefs that would make it difficult for you to sit in

02:13:57  10   judgment of another person?

11   PROSPECTIVE JUROR:  No.

12   THE COURT:  What is your source for news?

13   PROSPECTIVE JUROR:  The internet.

14   THE COURT:  Will you follow the law that I give to you

02:14:04  15   even if you disagree with it?

16   PROSPECTIVE JUROR:  Yes, sir.

17   THE COURT:  Any reason you couldn't be fair?

18   PROSPECTIVE JUROR:  No.

19   THE COURT:  Thank you.  And now we go back to -- is it

02:14:13  20   Kerry Hampston?

21   PROSPECTIVE JUROR:  I'm Lisa Solesky.

22   THE COURT:  Wait a minute.  I'm mixed up here.

23   (Court and clerk conferring.)

24   THE COURT:  Lisa Solesky?

02:14:25  25   PROSPECTIVE JUROR:  Correct.

02:14:26    1          THE COURT:  Where do you live?

            2          PROSPECTIVE JUROR:  Zion.

            3          THE COURT:  How old are you?

            4          PROSPECTIVE JUROR:  52.

02:14:29    5          THE COURT:  What's your educational background?

            6          PROSPECTIVE JUROR:  Associate's degree in office

            7   systems technology.

            8          THE COURT:  And what is -- what is your occupation?

            9          PROSPECTIVE JUROR:  I am an administrative assistant in

02:14:38   10   a K through 8 school district.

           11          THE COURT:  Okay.  You married?

           12          PROSPECTIVE JUROR:  Divorced.

           13          THE COURT:  What did or does your former husband do?

           14          PROSPECTIVE JUROR:  Police officer.

02:14:48   15          THE COURT:  Where?

           16          PROSPECTIVE JUROR:  He currently works in Highland

           17   Park.

           18          THE COURT:  Okay.  Any attorneys in your family?

           19          PROSPECTIVE JUROR:  No.

02:14:55   20          THE COURT:  I think I forget to ask you, too.

           21          Is there any attorneys in your families?

           22          PROSPECTIVE JUROR SPELLMAN:  A cousin.

           23          THE COURT:  Pardon?

           24          PROSPECTIVE JUROR SPELLMAN:  A cousin.

02:15:13   25          THE COURT:  Okay.  Thank you.

02:15:13 1       Have you ever had any dealings with the ATF or the

2  Chicago Police Department?

3       PROSECTIVE JUROR SOLESKY:  No.

4       THE COURT:  The charges involve the use of a firearm.

02:15:17 5  Do you have any feelings about that that would prevent you from

6  being impartial?

7       PROSPECTIVE JUROR:  Well, I think the gun laws aren't

8  harsh enough.  But I understand from listening, you asked that

9  question over and over again where you're getting with that.

02:15:32 10       THE COURT:  Yeah.  I mean, the laws are the laws --

11       PROSPECTIVE JUROR:  Yes.

12       THE COURT:  -- and I have an obligation, and the jury,

13  through me I guess, has an obligation to enforce the laws the

14  way they are written.  And we might want to change them, but

02:15:43 15  then we go to the legislature and say let's toughen them up or

16  loosen them up, whatever your view is.

17       So you would be able to be impartial; is that right?

18       PROSPECTIVE JUROR:  I don't think completely impartial.

19       THE COURT:  Okay.  See, the question that the jury will

02:16:10 20  be faced is whether the government has proved the defendant

21  guilty beyond a reasonable doubt and rely upon the evidence that

22  the government brings in and whatever evidence is produced in

23  the, case and you decide whether the government has met its

24  burden of proof.

02:16:26 25       If it hasn't, then you are obligated to find the

02:16:29  1  defendant -- acquit the defendant, find him not guilty.  If they

2  do have -- prove beyond a reasonable doubt, then you find the

3  defendant guilty.

4      Now, the point -- the problem is that I know people

02:16:42  5  have various feelings on the use of firearms and the -- but the

6  distaste people might have as to firearms should not alleviate

7  the burden on the government to prove the case beyond a

8  reasonable doubt.

9      And that's what we have to make sure that -- that

02:17:03  10  doesn't happen.  So I have to, you know, rely upon how you

11  answer my questions, whether or not you think you can do that.

12      Would you, okay, it's a close question, but it involves

13  a gun, therefore, I'm going to tip it in favor of the

14  government.  I guess the question is can you avoid doing that?

02:17:32  15      PROSPECTIVE JUROR:  It's a hard -- it's -- I mean, like

16  on the fence.  I don't know that --

17      THE COURT:  I'll excuse you.  Thank you.

18      THE CLERK:  Nicole Covelli, C-O-V-E-L-L-I.

19      THE COURT:  You are Nicole Covelli?

02:18:01  20      PROSPECTIVE JUROR:  Yes.

21      THE COURT:  Where do you live?

22      PROSPECTIVE JUROR:  Mundelein, Illinois.

23      THE COURT:  How old are you?

24      PROSPECTIVE JUROR:  45.

02:18:06  25      THE COURT:  What's your educational background?

02:18:07  1    PROSPECTIVE JUROR:   Some college.

2    THE COURT:   And what's your business or occupation?

3    PROSPECTIVE JUROR:   A tax accountant.

4    THE COURT:   Are you married?

02:18:13  5    PROSPECTIVE JUROR:   No.

6    THE COURT:   Any members of your family employed in law

7    enforcement capacity?

8    PROSPECTIVE JUROR:   No.

9    THE COURT:   Have you ever had any dealings with the ATF

02:18:24  10   or the Chicago Police Department?

11   PROSPECTIVE JUROR:   No.

12   THE COURT:   Now, the issue of firearms.   Do you have

13   feelings that are so strong that it would be difficult for you

14   to be impartial?

02:18:33  15   PROSPECTIVE JUROR:   Yes, I do.

16   THE COURT:   I'll excuse you.

17   THE CLERK:   Robert Hammerschmidt.

18   THE COURT:   You are Robert Hammerschmidt?

19   PROSPECTIVE JUROR:   Yes.

02:18:55  20   THE COURT:   Where do you live, sir?

21   PROSPECTIVE JUROR:   I live in Winfield.

22   THE COURT:   How old are you?

23   PROSPECTIVE JUROR:   48.

24   THE COURT:   What's your educational background?

02:19:01  25   PROSPECTIVE JUROR:   Master's degree.

02:19:02   1      THE COURT: And what is your business or occupation?

2      PROSPECTIVE JUROR: Educator.

3      THE COURT: And what do you -- what level?

4      PROSPECTIVE JUROR: So I teach high school, American

02:19:11   5  government, and I'm dean of students.

6      THE COURT: Okay. Are you married?

7      PROSPECTIVE JUROR: Yes.

8      THE COURT: What does your spouse do?

9      PROSPECTIVE JUROR: She stays at home.

02:19:19  10      THE COURT: When she last work, what did she --

11      PROSPECTIVE JUROR: She was also an educator. High

12  school math.

13      THE COURT: Okay. Any of your -- any of your family

14  members employed in law enforcement?

02:19:32  15      PROSPECTIVE JUROR: No.

16      THE COURT: Have you ever had any dealings with the ATF

17  or the Chicago Police Department?

18      PROSPECTIVE JUROR: No, sir.

19      THE COURT: Now, the case involves, we've been talking

02:19:39  20  about firearm laws. Is there anything about that that would

21  prevent you from being impartial?

22      PROSPECTIVE JUROR: No.

23      THE COURT: What about gang membership? We've talked

24  about that over and over again.

02:19:49  25      PROSPECTIVE JUROR: No.

02:19:49 1      THE COURT:  Have you ever been affected by gang

2 || violence?

3      PROSPECTIVE JUROR:  No.

4      THE COURT:  Now, what about, you know, do you have --

02:19:55 5 || accept the constitutional rights of defendant need not testify,

6 || and his silence can't be used against him and that the

7 || government has the obligation to prove him guilty beyond a

8 || reasonable doubt and he has no obligation to prove his

9 || innocence.

02:20:09 10      Can you accept that?

11      PROSPECTIVE JUROR:  Yes.

12      THE COURT:  You -- would you evaluate a witness'

13 || testimony, use the same tests regardless of whether the witness

14 || is a law enforcement official or a lay witness?

02:20:24 15      PROSPECTIVE JUROR:  I'd probably put a bit more

16 || emphasis on law enforcement officials.

17      THE COURT:  Well, we're not talking about

18 || believability.  That's -- believability results from our use of

19 || tests since we normally use when you're talking to somebody

02:20:42 20 || whether I know depending on how important it is.

21      Again, there's a rather lengthy instruction as to how

22 || to evaluate.  In other words, does a person, is he furtive?  Is

23 || he direct?  Is it a matter of importance?  Does he have a bias

24 || and that sort of thing.

02:21:02 25      What the law is, though, did you use these tests, the

02:21:06   1  same ones?  That does not mean the results have to be the same.
           2  In other words, if you use these tests, and if you believed the
           3  police officer using these tests, then so be it.  You believe a
           4  police officer.
02:21:18   5          If you believe a layperson is also telling the truth,
           6  then you believe the layperson.  If using these tests, you
           7  conclude that the layperson is not telling the truth or the law
           8  enforcement official is not telling the truth.  But the law
           9  requires that you use the same tests.
02:21:36  10          Can you do that?
          11          PROSPECTIVE JUROR:  I suppose.
          12          THE COURT:  Well, is that a yes?
          13          PROSPECTIVE JUROR:  It's hard for me to say.  Like I
          14  said, you're asking me to evaluate somebody's credibility as a
02:21:47  15  witness.
          16          THE COURT:  Yeah.
          17          PROSPECTIVE JUROR:  Correct?
          18          THE COURT:  Right.
          19          PROSPECTIVE JUROR:  So --
02:21:52  20          THE COURT:  So one of the things would be the person's
          21  education or the person's background.  I mean, you don't
          22  ignore -- what I'm trying to get at is you don't ignore the fact
          23  that I've used the excuse or the example once you might have
          24  Mother Teresa.  Now, she has the background I guess of
02:22:05  25  impeccable honesty and so forth.

02:22:09  1    And, you know, your reputation sometimes is in evidence

2    is one of the things that you would use.  If somebody lied to me

3    before, they might very well be lying to me again.  So but the

4    law requires that you use the same tests no matter what the

02:22:23  5    station of the witness.  Can you do that?

6    PROSPECTIVE JUROR:  I suppose I could use the same

7    tests, sure.

8    THE COURT:  Yeah, that's all --

9    PROSPECTIVE JUROR:  Okay.

02:22:28  10   THE COURT:  That's all the law requires.  It doesn't

11   say you have to -- you can't dis -- you have to disbelieve the

12   police officer or you have to believe a police officer.

13   Just when you see him testify, is he direct?  Is he

14   testifying in a clear way or a witness is not -- is kind of

02:22:48  15   jumping around or he's not clear or so forth.  I mean, you use,

16   that's how you, you know --

17   PROSPECTIVE JUROR:  Is credibility part of the test?

18   THE COURT:  Yeah, I mean, sure.  That's basically what

19   you're determining, whether the witness is credible, and you use

02:23:05  20   that by all of these tests because you're usually - a juror is

21   usually meeting the person for the first time.

22   So you don't know that much about his background except

23   what the lawyers bring out in the case.  So that's basically

24   what we're talking about.

02:23:23  25   So do you think you can do that?  Just use the same

02:23:25  1   tests.  It doesn't mean you have to believe one witness or the

      2   another because that's up to the jurors.  That's not my part, my

      3   role.  My role is to tell you what the law is.

      4       And your role, if you're a juror, to tell me what the

02:23:38  5   facts are.  And you tell me the facts based upon your evaluation

      6   of the testimony that comes from the witness stand.

      7       So that's all I'm -- can you do that?

      8       PROSPECTIVE JUROR:  Sure.

      9       THE COURT:  All right.  Have you or any member family

02:23:50  10   been charged with or convicted of a serious crime?

      11       PROSPECTIVE JUROR:  I was charged with a misdemeanor.

      12       THE COURT:  What was the misdemeanor?

      13       PROSPECTIVE JUROR:  Battery.

      14       THE COURT:  All right.  Did that resolve?

02:24:07  15       PROSPECTIVE JUROR:  Sorry?

      16       THE COURT:  Is it resolved?

      17       PROSPECTIVE JUROR:  Yeah.  The case was dismissed.

      18       THE COURT:  Okay.  So is there anything about that

      19   experience that would affect you in this case?

02:24:17  20       PROSPECTIVE JUROR:  I don't think so.

      21       THE COURT:  All right, good.

      22       Have you been a crime victim?

      23       PROSPECTIVE JUROR:  No.

      24       THE COURT:  Have you ever been a party to a lawsuit

02:24:27  25   either as a plaintiff or a defendant?

02:24:29  1          PROSPECTIVE JUROR:  Yes.

        2          THE COURT:  When?  What was it?

        3          PROSPECTIVE JUROR:  Plaintiff to a civil suit, medical

        4  malpractice.

02:24:33  5          THE COURT:  Okay.  So it was -- when did that happen?

        6          PROSPECTIVE JUROR:  The case was resolved two years

        7  ago.

        8          THE COURT:  All right.  So it's no longer pending?

        9          PROSPECTIVE JUROR:  No.  It was resolved out of court.

02:24:45 10          THE COURT:  All right.  And the system worked as far as

       11  you're concerned, is that reasonably well?

       12          PROSPECTIVE JUROR:  No.  The case took nine years.  So

       13  in my mind, it didn't work very well at all reasonably.

       14          THE COURT:  All right.  But there's nothing in that --

02:25:01 15  your experience there that would affect you in this case?

       16          PROSPECTIVE JUROR:  I don't think so.

       17          THE COURT:  Oh, good.  Have you been on jury duty

       18  before?

       19          PROSPECTIVE JUROR:  Yes.

02:25:08 20          THE COURT:  When and where?

       21          PROSPECTIVE JUROR:  DuPage County, a year probably

       22  early 2000s.

       23          THE COURT:  What kind of case did you hear?

       24          PROSPECTIVE JUROR:  I was actually peremptorily

02:25:22 25  challenged.  I was released.

02:25:28 1    THE COURT:  Okay.  So you didn't actually sit and

2  decide the case?

3    PROSPECTIVE JUROR:  I did not sit in the jury.

4    THE COURT:  Let's see.  Did you recognize any of the

02:25:34 5  names on the list of witnesses?

6    PROSPECTIVE JUROR:  No.

7    THE COURT:  Do you have any religious, philosophical or

8  moral beliefs that would make it difficult for you to sit in

9  judgment on another person?

02:25:45 10    PROSPECTIVE JUROR:  No.

11    THE COURT:  What is your source of news?  Usual source,

12  I should say.

13    PROSPECTIVE JUROR:  NPR and online sources.

14    THE COURT:  Will you follow the law I give you even if

02:25:55 15  you disagree with it?

16    PROSPECTIVE JUROR:  Yes.

17    THE COURT:  Any reason you couldn't be a fair and

18  impartial juror in this case.

19    PROSPECTIVE JUROR:  I don't think so.

02:26:14 20    THE COURT:  Let's see.  Okay.  The next person is --

21    PROSPECTIVE JUROR:  Your Honor?

22    THE COURT:  Yeah.

23    PROSPECTIVE JUROR:  My brother is an attorney just so

24  you know.

02:26:37 25    THE COURT:  What's your -- let's see.  Your brother's

02:26:39  1  name is?

2      James Hammerschmidt.

3      THE COURT:  Where does he practice?

4      PROSPECTIVE JUROR:  He practices in Maryland.

02:26:51  5      THE COURT:  Okay. so he doesn't practice here.  What

6  type of law does he practice?

7      PROSPECTIVE JUROR:  He's a managing partner in a firm.

8  They do all sorts of cases.  He largely handles real estate,

9  land.

02:27:03  10      THE COURT:  Okay.  He's not a criminal lawyer?

11      PROSPECTIVE JUROR:  No.

12      THE COURT:  Okay, all right, thank you.

13      We're back to... who's the next one?

14      THE CLERK:  33, Mr. Pezzulo.

02:27:19  15      THE COURT:  Mr. Pezzulo.  All right.  You are -- let's

16  see.  Where do you live, sir?

17      PROSPECTIVE JUROR:  Montgomery.

18      THE COURT:  How old are you?

19      PROSPECTIVE JUROR:  43.

02:27:27  20      THE COURT:  What is your educational background?

21      PROSPECTIVE JUROR:  Some college.

22      THE COURT:  And what is your business or occupation?

23      PROSPECTIVE JUROR:  I'm a bar manager at Fox Bowl and

24  I'm a bowler.

02:27:37  25      THE COURT:  Are you married?

02:27:39  1    PROSPECTIVE JUROR:  Divorced.

2    THE COURT:  All right.  What does or did your wife do?

3    PROSPECTIVE JUROR:  She made games for a monopoly.

4    THE COURT:  All right.  Any of your family employed in

02:27:54  5  law enforcement?

6    PROSPECTIVE JUROR:  A cousin in Berwyn.

7    THE COURT:  All right.  Have you ever had any dealings

8  with the ATF or the Chicago Police Department?

9    PROSPECTIVE JUROR:  No.

02:28:01  10    THE COURT:  The case involves firearms.

11    Do you have any strong feelings that would prevent you

12  from being impartial?

13    PROSPECTIVE JUROR:  No.

14    THE COURT:  What about gang membership?

02:28:07  15    PROSPECTIVE JUROR:  I had a problem with a gang member

16  once.

17    THE COURT:  How long ago was that?

18    PROSPECTIVE JUROR:  About seven years ago at my work.

19    THE COURT:  Well, you know, I say I think you've been

02:28:19  20  here so you heard my --you know, a person has a right to be a

21  member of a gang.  He doesn't have the right to break the law

22  obviously.

23    And what we're concerned about is someone will say,

24  well, he's a gang -- there's charges or it's alleged he's a gang

02:28:43  25  member.  Therefore, it's a close case.  Normally we wouldn't

02:28:44  1   find him guilty, but he is -- because there's an allegation of

2   gang membership, we'll cut the government some slack.  That's

3   what we're concerned about.

4         So my question is, even though you might disagree, you

02:28:57  5   might have had a problem with a gang you remember, you might

6   disapprove of gang membership, would you -- would that cause you

7   to cut the government some slack, or would you insist that they

8   prove the case?

9         PROSPECTIVE JUROR:  I think I'm speaking more towards

02:29:09 10   the next question that you ask.

11         THE COURT:  What was the next?

12         PROSPECTIVE JUROR:  Where you ask if you've had some

13   issue with a gang member before.

14         THE COURT:  Yeah, you said you did.  What was your

02:29:20 15   issue?

16         PROSPECTIVE JUROR:  I had a person come into my bar and

17   he was intoxicated so he was trying to get served, and I denied

18   him service and he kicked in our front door and left.

19         I called 911, and the police came.  And as the police

02:29:42 20   were there, the guy came back in with a knife and charged at me

21   with a knife.  Now, the cops took him down and arrested him.

22         THE COURT:  All right.  Do you think that would affect

23   you so you could not --

24         PROSPECTIVE JUROR:  Well, I tend to side with the

02:29:56 25   police than with a gang for sure.

02:29:58  1    THE COURT:  Well, most people probably would.  But the
       2  question is, it's a question of proof.  You don't want to cut
       3  the government any slack because of an allegation of gang
       4  membership, and so but they still have to prove the charges
02:30:14  5  beyond a reasonable doubt.
       6    Now, this is what we're concerned about.  So I guess my
       7  question is can you guarantee that you will still -- even if
       8  there is an allegation of gang membership, that you would still
       9  require the government to prove the charges beyond a reasonable
02:30:31 10  doubt?
      11    PROSPECTIVE JUROR:  Yes, I understand that.  I guess
      12  I'm saying I'm more biased against them because of the incident.
      13    THE COURT:  Okay.  Do you think that would affect -- I
      14  guess I could just follow up again.  Would that affect your
02:30:41 15  ability to be fair?
      16    PROSPECTIVE JUROR:  It could, yes.
      17    THE COURT:  Okay.  I'll excuse you.  Thank you.
      18    THE CLERK:  Dustin Sladcik, S-L-A-D-C-I-K.
      19    THE COURT:  Good afternoon.  Are you -- is it Sladcik?
02:31:08 20    PROSPECTIVE JUROR:  Yep, that's correct, Sladcik.
      21    THE COURT:  Where do you live, sir?
      22    PROSPECTIVE JUROR:  New Lenox Illinois.
      23    THE COURT:  How old are you?
      24    PROSPECTIVE JUROR:  I'm going to be 46 on Wednesday.
02:31:20 25    THE COURT:  Almost happy birthday.

Jury Selection

02:31:22  1          PROSPECTIVE JUROR:   Yeah.

        2          THE COURT:   What is your education background, sir?

        3          PROSPECTIVE JUROR:   High school diploma.

        4          THE COURT:   And your occupation?

02:31:29  5          PROSPECTIVE JUROR:   I'm an electronics technician.

        6          THE COURT:   And are you married?

        7          PROSPECTIVE JUROR:   Yes, sir.

        8          THE COURT:   What does your spouse do?

        9          PROSPECTIVE JUROR:   She is a registered nurse.

02:31:38 10          THE COURT:   Any of your family employed in law

       11   enforcement?

       12          PROSPECTIVE JUROR:   No, sir.

       13          THE COURT:   Have you ever had any dealings with the ATF

       14   or the Chicago Police Department?

02:31:45 15          PROSPECTIVE JUROR:   No, I have not.

       16          THE COURT:   Having talking about firearms, do you have

       17   any strong feelings which would prevent you from being

       18   impartial?

       19          PROSPECTIVE JUROR:   No.

02:31:52 20          THE COURT:   What about gang membership?

       21          PROSPECTIVE JUROR:   Yeah.  I mean, probably like

       22   everybody else, I just -- you know...

       23          THE COURT:   Yeah, no one -- no one is in favor --

       24          PROSPECTIVE JUROR:   That's just it.  There's always a

02:32:12 25   negative that goes along with it.

02:32:17  1          THE COURT:  What we have to avoid is convicting someone

       2    without the government providing proof beyond a reasonable doubt

       3    because of the fact that the issue of gang membership was

       4    raised.

02:32:29  5          So I know it's, you know, the best we're looking for.

       6    Do you think you can do that?

       7          PROSPECTIVE JUROR:  I think I can.

       8          THE COURT:  All right.  That's good.

       9          Have you ever been affected by gang violence?

02:32:45  10         PROSPECTIVE JUROR:  No.

       11         THE COURT:  Now, the defendant has the right not to

       12   testify, and his silence can't be used against him, and the

       13   government's obligation to prove him guilty beyond a reasonable

       14   doubt and not his obligation to prove he is innocent.

02:32:56  15         Do you have any problem with those basic tenets of our

       16   system?

       17         PROSPECTIVE JUROR:  No, I do not.

       18         THE COURT:  Will you use the same tests in evaluating

       19   the law enforcement officials as you do lay witnesses?

02:33:10  20         PROSPECTIVE JUROR:  Yes, I will.

       21         THE COURT:  Have you or a family member ever been

       22   charged with or convicted with a serious crime?

       23         PROSPECTIVE JUROR:  No, sir.

       24         THE COURT:  Have you been a crime victim?

02:33:18  25         PROSPECTIVE JUROR:  Yes.

02:33:19  1      THE COURT:  When and where?

2      PROSPECTIVE JUROR:  I was 19 and I had my car stolen.

3      THE COURT:  Okay.  So that's long ago?

4      PROSPECTIVE JUROR:  Yep.

02:33:28  5      THE COURT:  Did they get the car back?

6      PROSPECTIVE JUROR:  I did.

7      THE COURT:  Have you been a party to a lawsuit either

8  as a plaintiff or a defendant?

9      PROSPECTIVE JUROR:  No, sir.

02:33:38  10      THE COURT:  Have you been on jury duty before?

11      PROSPECTIVE JUROR:  Yes, I have.

12      THE COURT:  When and where and what kind of case was

13  it?

14      PROSPECTIVE JUROR:  It was probably 2000, around 2000.

02:33:48  15  It was Cook County, and it was a murder case.

16      THE COURT:  All right.  And you actually sat and

17  decided it?

18      PROSPECTIVE JUROR:  Yes, I did.

19      THE COURT:  Did you recognize any of the names on the

02:34:00  20  list of witnesses?

21      PROSPECTIVE JUROR:  I went to high school with a Kevin

22  O'Neill.

23      THE COURT:  Let me take a look.  Can you tell us a

24  little about him, how old he would be, what he does now if you

02:34:14  25  know?

Jury Selection

02:34:15  1        PROSPECTIVE JUROR:  I don't know him, you know, beyond

      2    just going to high school with him, but he would be my age,

      3    probably 45, 46.

      4        MS. BABU:  I don't believe that's the same person.

02:34:25  5        THE COURT:  Pardon?

      6        MS. BABU:  I don't believe that's the same person.

      7        THE COURT:  Okay.  The government don't believe that is

      8    the same.  I'm sure it's kind of a typical Irish --

      9        PROSPECTIVE JUROR:  Yeah, it is.

02:34:40 10        THE COURT:  All right.  Where was I?  Do you have any

     11    religious, philosophical or moral briefs that would make it

     12    difficult for you to sit in judgment of another person?

     13        PROSPECTIVE JUROR:  No, I don't.

     14        THE COURT:  What is your news source?

02:34:55 15        PROSPECTIVE JUROR:  The major stations, CBS, NBC Fox.

     16        THE COURT:  Will you follow the law that I give to you

     17    even if you don't agree with it?

     18        PROSPECTIVE JUROR:  Yes, I will.

     19        THE COURT:  Any reason you couldn't be fair?

02:34:58 20        PROSPECTIVE JUROR:  Not that I can think of.

     21        THE COURT:  Okay.  Attorneys, would you give me your

     22    choices.

     23        MR. PISSETZKY:  Judge, can I have a sidebar?

     24        THE COURT:  Yeah.

02:35:08 25      (At sidebar outside the hearing of the venire.)

Jury Selection

02:35:18    1        MR. PISSETZKY:  Mr. Hammerschmidt is very disturbing

2    the way he was answering the question, the credibility issue

3    with the police officer, I think he is going to give a lot more

4    credence to police officers the way he answered.  Maybe you can

02:35:33    5    question him a little more.

6        MS. BABU:  Your Honor, I think he was clear you asked

7    him multiple times.

8        THE COURT:  I did.  I went over it pretty heavily.

9        MR. HYMAN:  However, I think his answers were that he

02:35:50   10    tended to lean towards that of law enforcement.

11        Maybe the Court could inquire as to whether or not he,

12    just because there is a policeman, an police agent, an officer

13    is going to testify in this case --

14        THE COURT:  And his brother was a criminal defense

02:36:05   15    lawyer.

16        MR. PISSETZKY:  No, he's at a major law firm.

17        And the way he answered when you asked him, he says, he

18    assured, yes.  I mean, he was not --

19        MS. BABU:  Your Honor, by the end of the questioning,

02:36:11   20    when you asked him, he answered he was sure, yes.

21        THE COURT:  Use a peremptory.  We can move along as

22    soon as we can.

23        (In open court in the hearing of the jury.)

24        (Court and clerk conferring.)

02:37:37   25        THE COURT:  Mr. Hammerschmidt and Mr. Sladcik will be

| | |
|---|---|
| 02:37:47 1 | excused, and swear in the other two. |
| 2 | (Jury members sworn.) |
| 3 | THE COURT:  They can go back to the jury room and call |
| 4 | two more in. |
| 02:38:22 5 | THE CLERK:  Wendy Courtney and Amy Sroden, S-R-O-D-E-N. |
| 6 | THE COURT:  You are Wendy Courtney? |
| 7 | PROSPECTIVE JUROR:  Yes, sir. |
| 8 | THE COURT:  Get the mic.  Make sure it's on.  I think |
| 9 | it's not on. |
| 02:39:06 10 | THE REPORTER:  Turn it on and then just wait a second. |
| 11 | PROSPECTIVE JUROR:  Good afternoon. |
| 12 | THE COURT:  You are Wendy Courtney? |
| 13 | PROSPECTIVE JUROR:  Yes. |
| 14 | THE COURT:  Where do you live? |
| 02:39:10 15 | PROSPECTIVE JUROR:  Barrington. |
| 16 | THE COURT:  How old are you? |
| 17 | PROSPECTIVE JUROR:  65. |
| 18 | THE COURT:  What is your educational background? |
| 19 | PROSPECTIVE JUROR:  Associate's degree in nursing. |
| 02:39:19 20 | THE COURT:  And what is your employment? |
| 21 | PROSPECTIVE JUROR:  I'm employed at Derek Dermatology. |
| 22 | THE COURT:  Are you married? |
| 23 | PROSPECTIVE JUROR:  No. |
| 24 | THE COURT:  Have you been married? |
| 02:39:30 25 | PROSPECTIVE JUROR:  Yes. |

02:39:31  1    THE COURT:  What did or does your former husband do --

2  former husband do?

3    PROSPECTIVE JUROR:  He was an investment counselor.

4    THE COURT:  Anybody in your family in law enforcement?

02:39:45  5    PROSPECTIVE JUROR:  No.

6    THE COURT:  Have you had any dealings with the ATF or

7  the Chicago Police Department?

8    PROSPECTIVE JUROR:  No.

9    THE COURT:  Now the case involves firearms.  Do you

02:39:49  10  have any feelings which would make it impossible for you to be

11  impartial?

12    PROSPECTIVE JUROR:  No.

13    THE COURT:  How about gang membership?

14    PROSPECTIVE JUROR:  I don't respect the choice that

02:39:59  15  someone makes to be a part of the gang, but I believe I could be

16  impartial.

17    THE COURT:  Okay, that's good.  In other words, again,

18  I've been over this.  We are concerned that an inference or an

19  allegation that a person may be a member of a gang would cause

02:40:21  20  the jury, because they don't think gangs are good, that they

21  would cut the prosecution some slack and not require the degree

22  of proof that they would require.

23    So you think you can do that; is that right?

24    PROSPECTIVE JUROR:  Yes.

02:40:38  25    THE COURT:  Very good, thank you.

Jury Selection

02:40:41 1    Have you ever been affected personally by gang
2    violence?
3         PROSPECTIVE JUROR:   No.
4         THE COURT:   Our defendant under our Constitution has
02:40:48 5    the right not to testify, and his silence can't be used against
6    him.   And it's the government's obligation to prove him guilty
7    beyond a reasonable doubt and not his obligation to prove his
8    innocence.
9         Do you have any problem with those basic tenets of our
02:41:05 10   system?
11        PROSPECTIVE JUROR:   No.
12        THE COURT:   In evaluating any witness' testimony, you
13   should use the same tests regardless of whether the witness is a
14   law enforcement official or a lay witness.   Can you do that?
02:41:15 15       PROSPECTIVE JUROR:   Yes.
16        THE COURT:   Have you or your family member ever been
17   charged with or convicted of a serious crime?
18        PROSPECTIVE JUROR:   No.
19        THE COURT:   Have you been a crime victim?
02:41:23 20       PROSPECTIVE JUROR:   No.
21        THE COURT:   Have you ever been a party to a lawsuit
22   either as a plaintiff or a defendant?
23        PROSPECTIVE JUROR:   No.
24        THE COURT:   Have you been on jury duty before?
02:41:32 25       PROSPECTIVE JUROR:   No.

02:41:33  1        THE COURT:  Did you recognize any of the names on the

2     list of witnesses?

3             PROSPECTIVE JUROR:  No.

4             THE COURT:  Do you have any religious, philosophical or

02:41:39  5   moral beliefs that would make it difficult for you to sit in

6     judgment of another person?

7             PROSPECTIVE JUROR:  No.

8             THE COURT:  What are your sources for news?

9             PROSPECTIVE JUROR:  Just the local news.

02:41:47  10       THE COURT:  Will you follow the law that I give to you

11    even if you might disagree with it?

12            PROSPECTIVE JUROR:  Yes.

13            THE COURT:  Any reason you couldn't be a fair and

14    impartial juror in this case?

02:42:00  15       PROSPECTIVE JUROR:  No.

16            THE COURT:  Thank you.

17            The next lady is Amy -- is it Srodon?

18            PROSPECTIVE JUROR:  Yes.

19            THE COURT:  Where do you live?

02:42:04  20       PROSPECTIVE JUROR:  Oak Park.

21            THE COURT:  How old are you?

22            PROSPECTIVE JUROR:  51.

23            THE CLERK:  What is your educational background?

24            PROSPECTIVE JUROR:  I have a bachelor's degree in

02:42:09  25   design.

02:42:10  1          THE COURT:  And what is your business or occupation?

          2          PROSPECTIVE JUROR:  I work at the University of Chicago

          3  as a marketing communications manager.

          4          THE COURT:  Are you married?

02:42:21  5          PROSPECTIVE JUROR:  Divorced.

          6          THE COURT:  What did or does your former husband do?

          7          PROSPECTIVE JUROR:  He was an attorney for the Cook

          8  County Public Guardian's Office.

          9          THE COURT:  Okay.  So he is an attorney; is that right?

02:42:31 10          PROSPECTIVE JUROR:  Yes.

         11          THE COURT:  But he didn't practice criminal law as far

         12  as you know; is that right?

         13          PROSPECTIVE JUROR:  No, he's a public guardian.

         14          THE COURT:  Anybody in your family employed in law

02:42:38 15  enforcement?

         16          PROSPECTIVE JUROR:  My uncle is a member -- or he is in

         17  the ATF.

         18          THE COURT:  Okay.  Where is he stationed?

         19          PROSPECTIVE JUROR:  Well, he lives in Mount Prospect.

02:42:49 20  I assume he's stationed somewhere in Chicago.

         21          THE COURT:  Do you see him often?

         22          PROSPECTIVE JUROR:  I see him at social events.

         23          THE COURT:  Did he ever talk about his work?

         24          PROSPECTIVE JUROR:  He's talked about his work before.

02:43:10 25          THE COURT:  Can I see the lawyers at sidebar.

Jury Selection

02:43:24  1        What is your uncle's name?

2        PROSPECTIVE JUROR:  William Franz.

3     (At sidebar outside the hearing of the venire.)

4        THE COURT:  Do you know anything about this?

02:43:36  5        MS. BABU:  I never heard his name, Your Honor.

6        MR. HYMAN:  I think Mr. Franz has been around a long

7   time.

8        MS. BABU:  I can ask that real quickly.

9        THE COURT:  Yeah.

02:44:00 10  (Ms. Babu exited the sidebar and returned.)

11        MS. BABU:  Your Honor, the case agent doesn't recognize

12   the name either.

13        THE COURT:  Pardon?

14        MS. BABU:  The case agent does not recognize the name

02:44:14 15   either.  We are intimately involved in the case, and he does

16   not -- is not involved in the case at all.

17        THE COURT:  Well, she'll be instructed not to discuss.

18        MR. HYMAN:  Well, I think I would like the Court to

19   inquire whether or not these ATF officers, so many of them,

02:44:37 20   whether testimony would make a difference.

21        THE COURT:  Yeah, I'll ask her.

22     (In open court in the hearing of the jury.)

23        THE COURT:  Let me ask you this.  Your uncle, the ATF

24   agent, there will be -- this is a -- one of the investigative

02:44:58 25   agencies is the ATF.  He is not involved in this particular case

02:45:05  1   is my understanding.

2   Would the fact -- would you tend to believe the ATF

3   witnesses because of your relationship?

4   PROSPECTIVE JUROR:  Probably.  I mean, I know, like,

02:45:17  5   they've got sliding metal shutters that cover the windows of

6   their home, and when I once asked him why, he said he has a

7   really dangerous job.

8   THE COURT:  I'll excuse you.  Thank you.

9   THE CLERK:  Heidi Habas, H-A-B-A-S.

02:45:48  10   THE COURT:  You are Heidi Habas?

11   PROSPECTIVE JUROR:  Habas.

12   THE COURT:  Habas?

13   PROSPECTIVE JUROR:  Uh-huh.

14   THE COURT:  Where do you live?

02:45:53  15   PROSPECTIVE JUROR:  Lockport.

16   THE COURT:  How old are you?

17   PROSPECTIVE JUROR:  43.

18   THE COURT:  What is your educational background?

19   PROSPECTIVE JUROR:  Masters in education.

02:46:00  20   THE COURT:  And your occupation?

21   PROSPECTIVE JUROR:  High school biology teacher.

22   THE COURT:  Are you married?

23   PROSPECTIVE JUROR:  Yes.

24   THE COURT:  What does your spouse do?

02:46:07  25   PROSPECTIVE JUROR:  High school physics teacher.

02:46:10  1      THE COURT:  Any members of your family employed in law
        2   enforcement?
        3      PROSPECTIVE JUROR:  No.
        4      THE COURT:  Did you ever have any dealings with the ATF
02:46:17  5   or the Chicago Police Department?
        6      PROSPECTIVE JUROR:  No.
        7      THE COURT:  You've been here .  We've talked about
        8   firearms.  Is there anything about that that prevents you from
        9   being impartial?
02:46:25 10      PROSPECTIVE JUROR:  No.
       11      THE COURT:  How about gang membership?
       12      PROSPECTIVE JUROR:  I can being be impartial.
       13      THE COURT:  Okay.  Have you ever been affected by gang
       14   violence?
02:46:34 15      PROSPECTIVE JUROR:  No.
       16      THE COURT:  Under the Constitution, the defendant need
       17   not testify and his silence can't be used against him.  The
       18   government has the obligation prove beyond a reasonable doubt.
       19   It's not the defendant's obligation to prove his innocence.
02:46:42 20      Can you accept those principles?
       21      PROSPECTIVE JUROR:  Yes.
       22      THE COURT:  Will you use the same tests in evaluating
       23   the testimony of law enforcement officials as you use when you
       24   evaluate lay witnesses and vice versa?
02:46:59 25      PROSPECTIVE JUROR:  Yes.

02:46:59  1      THE COURT:  Have you ever been charged with or

2   convicted of a serious crime?

3      PROSPECTIVE JUROR:  No.

4      THE COURT:  Have you been a crime victim?

02:47:07  5      PROSPECTIVE JUROR:  No.

6      THE COURT:  Have you ever been a party to a lawsuit

7   either as a plaintiff or defendant?

8      PROSPECTIVE JUROR:  No.

9      THE COURT:  Have you been on jury duty before?

02:47:15  10      PROSPECTIVE JUROR:  Yes.  About 20 years ago, it was a

11   civil case in a car accident.  I served.

12      THE COURT:  Okay.  Did you recognize any of the names

13   on the lists of witnesses?

14      PROSPECTIVE JUROR:  I worked with a man named Kevin

02:47:27  15   O'Neill.  He's probably mid 30s, lives in California right now.

16      THE COURT:  Okay.  I'm sure that's not -- we think we

17   mentioned that's kind of a common Irish type name.

18      PROSPECTIVE JUROR:  Yes.

19      THE COURT:  Do you have any religious, philosophical or

02:47:40  20   moral beliefs that make it difficult for you to sit in judgment

21   of another person?

22      PROSPECTIVE JUROR:  No.

23      THE COURT:  What is your source of news?

24      PROSPECTIVE JUROR:  ABC.

02:47:48  25      THE COURT:  Will you follow the law as I give to you

02:47:49  1  even if you don't agree with it?

2  PROSPECTIVE JUROR:  Yes.

3  THE COURT:  Any reason you can't be fair?

4  PROSPECTIVE JUROR:  No.

02:47:59  5  THE COURT:  Thank you.  Lawyers.

6  (Documents tendered to the Court.)

7  THE COURT:  Would you swear these two in, please.

8  (Jurors sworn.)

9  THE COURT:  Could you take them back, please.

02:49:11  10  (Jurors exit the courtroom.)

11  THE COURT:  We'll now select alternates.  We have two

12  left in our group, so if will you call the other two, the last

13  two, please.

14  THE CLERK:  Jasmin Schneyer, S-C-H-N-E-Y-E-R, and lace

02:49:40  15  set, Jasmin Schneyer and Pablo Rodriguez.

16  THE COURT:  Jasmin Schneyer?  Did I pronounce that

17  right?

18  PROSPECTIVE JUROR:  Close enough.

19  THE COURT:  Pardon?

02:49:57  20  PROSPECTIVE JUROR:  Close enough.

21  THE COURT:  Well, how do you -- how do you pronounce

22  it?

23  PROSPECTIVE JUROR:  Jasmin Schneyer.

24  THE COURT:  Schneyer?

02:50:06  25  PROSPECTIVE JUROR:  Schneyer, yeah.

Jury Selection

02:50:06  1          THE COURT:  Where do you live?

          2          PROSPECTIVE JUROR:  I live in Chicago.

          3          THE COURT:  How old are you?

          4          PROSPECTIVE JUROR:  37.

02:50:10  5          THE COURT:  What is your educational background?

          6          PROSPECTIVE JUROR:  I have a juris doctorate.

          7          THE COURT:  And you practice law?

          8          PROSPECTIVE JUROR:  I used to.  I used to be a

          9   litigator.

02:50:19 10          THE COURT:  Did you practice criminal law?

         11          PROSPECTIVE JUROR:  I didn't.

         12          THE COURT:  Okay.  So you were civil?

         13          PROSPECTIVE JUROR:  Civil.  I did intellectual

         14   property.

02:50:29 15          THE COURT:  Pardon?

         16          PROSPECTIVE JUROR:  Intellectual property --

         17          THE COURT:  Okay.

         18          PROSPECTIVE JUROR:  -- litigation.

         19          THE COURT:  When did you cease active practice?

02:50:34 20          PROSPECTIVE JUROR:  Four years ago.

         21          THE COURT:  All right.  Are you married?

         22          PROSPECTIVE JUROR:  No.

         23          THE COURT:  Have you ever been married or --

         24          PROSPECTIVE JUROR:  No.

02:50:39 25          THE COURT:  Anybody in your family in law enforcement?

02:50:42  1    PROSPECTIVE JUROR:  No.

2    THE COURT:  Have you ever had any dealings with the ATF

3    or the Chicago Police Department?

4    PROSPECTIVE JUROR:  I'm friends with a Chicago cop.

02:50:52  5    THE COURT:  Just friends?  I mean, I guess we're --

6    PROSPECTIVE JUROR:  That's it.

7    THE COURT:  Okay.  Have you ever had any dealings with

8    the ATF and the Chicago Police Department?

9    PROSPECTIVE JUROR:  Assuming that's not a dealing, then

02:51:05  10   no.

11   THE COURT:  Pardon?

12   PROSPECTIVE JUROR:  Assuming being friends is not a

13   deal, then no.

14   THE COURT:  Right.  Have you ever had any incidents

02:51:16  15   with the police or anything like that?

16   PROSPECTIVE JUROR:  No.

17   THE COURT:  Okay.  Okay.  Now, the case -- I'm sure

18   you've been hearing about use of firearm.

19   Do you have any feelings that would make it -- prevent

02:51:27  20   you from being impartial?

21   PROSPECTIVE JUROR:  I know -- I really don't like guns,

22   but I will follow the law.

23   THE COURT:  Okay.  And same with gang membership, can

24   you --

02:51:34  25   PROSPECTIVE JUROR:  I would find that very difficult.

02:51:36   1    THE COURT: Can you do it? I guess that's the

2    question. Again, I'm saying --

3    PROSPECTIVE JUROR: I would be concerned --

4    THE COURT: We're not asking --

02:51:41   5    PROSPECTIVE JUROR: -- that I couldn't.

6    THE COURT: We're not asking anybody to approve of gang

7    membership.

8    PROSPECTIVE JUROR: Yeah.

9    THE COURT: The question is we must be careful that the

02:51:51   10    mere mention of gang membership would cause the jury to cut the

11    government, I have been mentioning slack so they don't have

12    to -- in other words, if they -- if gang membership hadn't been

13    mentioned, the jury would have acquitted the guy, but they

14    convicted him now because -- merely because -- so we have to

02:52:20   15    make sure that the jurors will make sure that doesn't happen.

16    It doesn't mean that gang membership may not prove to

17    be relevant in the case. But if it turns out it's not relevant,

18    then the jurors shouldn't consider that by accepting lesser

19    burden of proof. Can you do that?

02:52:38   20    PROSPECTIVE JUROR: I understand that, but I'm just

21    saying that I can't -- I can't be sure that I wouldn't be biased

22    because it involved a gang member.

23    THE COURT: All right. I'll excuse --

24    PROSPECTIVE JUROR: Just be honest.

02:52:47   25    THE COURT: I'll excuse you. Thank you.

02:52:51  1          And you are Pablo Rodriguez?

2          PROSPECTIVE JUROR:  Correct.

3          THE COURT:  Where do you live, sir?

4          PROSPECTIVE JUROR:  In Chicago, but I'm currently

02:52:59  5  moving to Ohio.

6          THE COURT:  Not this week, I hope?

7          PROSPECTIVE JUROR:  No.  Like in 10 days.

8          THE COURT:  Okay.  How old are you?

9          PROSPECTIVE JUROR:  36.

02:53:13  10          THE COURT:  What's your educational background?

11          PROSPECTIVE JUROR:  I'm a bachelor -- bachelor degree

12  on computer science.

13          THE COURT:  And your occupation?

14          PROSPECTIVE JUROR:  I'm a web developer doing freelance

02:53:22  15  job right now.

16          THE COURT:  All right.  Are you married?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  What does your spouse do?

19          PROSPECTIVE JUROR:  She's a customer marketing manager.

02:53:30  20          THE COURT:  In what type of business?

21          PROSPECTIVE JUROR:  I think it's called S.C. Johnson.

22          THE COURT:  Okay.  That's a big multi-product company

23  in Wisconsin?  I think it is.

24          PROSPECTIVE JUROR:  Yeah.  They have, like, an office

02:53:43  25  here in Chicago.

Jury Selection

02:53:46  1    THE COURT:  I know, but I mean, I think their
        2  headquarters is.
        3    PROSPECTIVE JUROR:  Headquarters in Racine, Wisconsin,
        4  yes.
02:53:56  5    THE COURT:  Anybody in your family in the law
        6  enforcement business?
        7    PROSPECTIVE JUROR:  Yes, my brother.
        8    THE COURT:  What does he do?
        9    PROSPECTIVE JUROR:  I think he's a CBP on I think it's
02:54:05 10  on Miami.
       11    THE COURT:  He's a what again?
       12    PROSPECTIVE JUROR:  I think it's called CBP like a
       13  custom border patrol.
       14    THE COURT:  Oh, Chicago Police Department or police
02:54:14 15  department?
       16    PROSPECTIVE JUROR:  It's not a police department.  He
       17  works at the Air Force.
       18    THE COURT:  Oh, okay.
       19    PROSPECTIVE JUROR:  The airport, I'm sorry.
02:54:25 20    THE COURT:  Military, he's a military?
       21    PROSPECTIVE JUROR:  No, he's not in the military.
       22    THE COURT:  Okay.  Is he an attorney?
       23    PROSPECTIVE JUROR:  No.
       24    THE COURT:  Do you have any attorneys in your family?
02:54:32 25    PROSPECTIVE JUROR:  No, I don't believe so.

Jury Selection

02:54:33  1    THE COURT:  Okay.  Have you ever had any dealings with

2    the ATF or the Chicago Police Department?

3    PROSPECTIVE JUROR:  No.

4    THE COURT:  Now, the charges include the use of a

02:54:38  5    firearm.  Do you have any feelings which are so strong that

6    would prevent you from being fair?

7    PROSPECTIVE JUROR:  I think so.

8    THE COURT:  You don't think you could be?

9    PROSPECTIVE JUROR:  No.  I grew up in Puerto Rico, so

02:54:50  10   there's a lot of like gangs activities, and I was exposed to a

11   lot of that so...

12   THE COURT:  I'll excuse you.

13   Let's see the lawyers at sidebar.

14   (At sidebar outside the hearing of the venire.)

02:55:09  15   THE COURT:  We've run out of --

16   MR. HYMAN:  Is the gentleman who was chewing gum, is he

17   an agent?

18   THE COURT:  I don't know who he is, but he's not on

19   our -- he's not on our list.  So we'll have to send down -- can

02:55:25  20   we get help?  Can we get more?

21   THE CLERK:  Not till tomorrow.

22   THE COURT:  Not till tomorrow?

23   THE CLERK:  Everybody's gone home.

24   THE COURT:  All right.

02:55:34  25   MR. HYMAN:  Do you want to start a little earlier?

02:55:38  1          THE CLERK:  Let me call.

       2          THE COURT:  Call in the morning, yeah.

       3          MR. PISSETZKY:  It will take the whole hour.

       4       (Off-the-record discussion.)

02:56:40  5          THE CLERK:  How many jurors do you need, Judge?

       6          THE COURT:  See if they can get us 15.

       7          THE CLERK:  Tomorrow at 10:00, they will have 15.

       8          THE COURT:  Bring the jury back in.

       9       (Jury enters courtroom at 2:57 p.m.)

02:58:46 10          THE COURT:  Please be seated.  Members of the jury,

      11   we've completed selection for the jury, but we need to select

      12   some alternate jurors.  And the purpose of an alternate juror is

      13   because if for some reason one of the jurors cannot conclude

      14   service, then they will be replaced by an alternate because the

02:59:12 15   Constitution requires a verdict of 12.

      16          So we need to select alternate.  And unfortunately,

      17   we've run out of prospective jurors until tomorrow morning.  So

      18   I'm going to ask you to start at 10:30 tomorrow.  We will hope

      19   to be able to start the case with opening statements.  This is

02:59:27 20   not that big of a setback, so I think we can catch up with the

      21   time.  So you're excused till 10:30 tomorrow.

      22          COURT SECURITY OFFICER:  All rise.

      23          THE COURT:  Go to the jury room.  Oh, do not discuss

      24   your service, do not discuss the case.  And a couple of other

02:59:45 25   things.  Do not discuss an investigation, a private

02:59:47  1   investigation.

2   Do not get on the internet and Google names or whatever

3   and try to conduct any investigation.  All of the evidence that

4   you should consider will be what's produced here in court.  So

02:59:58  5   please don't -- and don't get on social media and then talk

6   about your -- your experiences.

7   When the case is over, you're free to do whatever you

8   want.  But up until then, I'm going to ask you not to discuss

9   the case with anybody.  And by all means, do not try and

03:00:20  10  investigate the case.  Have a nice evening.  I'll see you all at

11  10:30 tomorrow morning.

12  (Jury exits courtroom at 3:00 p.m.)

13  MR. HYMAN:  Your Honor?

14  THE COURT:  Yes.

03:00:51  15  MR. HYMAN:  May we approach?

16  THE COURT:  Yeah.  He's not on our list.

17  THE CLERK:  I'll take care of it.

18  THE COURT:  Sorry about that.

19  All right.  As soon as we complete jury selection,

03:01:05  20  we'll go right into the opening statements.  So immediately

21  you'll go into opening statements, and then the government will

22  start presenting evidence.  So make sure you're here at exactly

23  at 10:00 so we can get started.

24  Hopefully it won't take us too long to pick the

03:01:26  25  alternates.  You only get one challenge a side.

Jury Selection

03:01:37  1        MR. HYMAN:  Thank you, Judge.

       2        THE COURT:  Have a nice evening, everybody.

       3        MR. HYMAN:  You, too, Judge.

       4     (Adjourned at 3:01 p.m.)

01:32:36  5                 * * * * * * * * * *

       6               C E R T I F I C A T E

       7     I certify that the foregoing is a correct transcript of the

       8  record of proceedings in the above-entitled matter.

       9

01:32:36  10  /s/ LISA H. BREITER                    February 13, 2019
          LISA H. BREITER, CSR, RMR, CRR

       11

       12

       13

       14

       15

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25